JENNIFER LEE TAYLOR (CA SBN 161368)
JTaylor@mofo.com
Morrison & Foerster LLP
425 Market Street
San Francisco, California  94105-2482
Telephone:  415.268.7000
Facsimile:   415.268.7522

WENDY J. RAY (CA SBN 226269)
WRay@mofo.com
Morrison & Foerster LLP
707 Wilshire Boulevard
Los Angeles, California  90017-3543
Telephone:  213.892.5200
Facsimile:   213.892.5454

NICHOLAS E. HAM (CA SBN 294596)
NHam@mofo.com
Morrison & Foerster LLP
755 Page Mill Road
Palo Alto, California 94304-1018
Telephone: 650.813.5600
Facsimile: 650.494.0792

Attorneys for Defendant
DROPBOX, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IRONHAWK TECHNOLOGIES, INC., | Case No. 2:18-cv-01481 DDP (JEMx) |
| Plaintiff, | **DEFENDANT DROPBOX, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO EXCLUDE TESTIMONY FROM PLAINTIFF'S TRADEMARK LAW EXPERT WITNESS DANIEL M. CISLO** |
| v. | |
| DROPBOX, INC., | |
| Defendant. | Hearing Date:  July 15, 2019 |
| | Hearing Time:  10:00 a.m. |
| | Courtroom:  9C |
| | Trial Date: September 10, 2019 |
| | Pre-Trial Conference: August 12, 2019 |
| | Hon. Dean D. Pregerson |

# TABLE OF CONTENTS

I.    INTRODUCTION ..................................................................................... 1

II.   STATEMENT OF FACTS ...................................................................... 2

    A.   Cislo's Background ........................................................................ 2

    B.   Cislo's Report and Opinions.......................................................... 3

        1.   Cislo's opinion that Ironhawk's SMARTSYNC mark is not descriptive... 3

        2.   Discussion of Ironhawk's trademark application and the USPTO. ........... 4

        3.   Cislo's opinion that Dropbox used the phrase "Smart Sync" as a trademark and not descriptively. ........................................................ 5

        4.   Cislo's discussion of Dropbox's trademark search and clearance process. 5

        5.   Cislo's discussion of Dropbox's counsel's advice.................................... 6

III.  LEGAL STANDARD ............................................................................. 8

IV.   ARGUMENT........................................................................................... 9

    A.   The Court Should Exclude Cislo's Opinion that Ironhawk's Mark Is Not Descriptive ................................................................................. 9

        1.   Conclusory legal expert testimony is not required or helpful to assess descriptiveness ....................................................................... 9

        2.   Cislo's opinion on descriptiveness is baseless and contradicts settled facts. ......................................................................................... 9

    B.   The Court Should Exclude Cislo's Opinions Regarding USPTO Procedures and the Examination of the SMARTSYNC Mark........ 11

        1.   The USPTO's conduct is not being challenged and is not an issue in this case. ................................................................................ 11

        2.   Discussing the USPTO would inappropriately influence the jury........... 12

        3.   Cislo's opinions on the USPTO are pure speculation and hearsay.......... 14

    C.   The Court Should Exclude Cislo's Opinion that Dropbox Uses the Phrase "Smart Sync" as a Trademark.......................................... 15

        1.   Conclusory legal expert testimony is not required or helpful to answer the question of trademark use. .......................................... 16

        2.   Cislo's opinion on trademark use is improper lay opinion and relies on a baseless hypothetical. .................................................. 16

        3.   Cislo's subsidiary opinion regarding Dropbox's *subjective beliefs* on the alleged trademark use is baseless and inappropriate for expert testimony... 18

    D.   The Court Should Exclude Cislo's Irrelevant Attacks on the Trademark Clearance Process That Led to the Discovery of Ironhawk's Mark by Dropbox's In-House Trademark Counsel.................................... 20

        1.   Cislo's opinions about Dropbox's process for discovering Ironhawk's mark are irrelevant. ........................................................ 20

i

sf-4029154

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

E.   The Court Should Exclude Cislo's Discussion of Dropbox's Advice of
Counsel Defense to Willfulness..................................................21

1. Cislo misstates the law and invents new legal requirements for the opinion
of counsel defense. ..................................................21

2. Cislo's claim that Dropbox did not *follow* the advice of its counsel is
improper lay testimony. ..................................................24

3. Cislo's claim that Dropbox showed willful intent is inappropriate for
expert testimony. ..................................................25

V.   CONCLUSION..................................................25

ii

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

5

*Acad. of Motion Pictures Arts & Scis. v. Godaddy.com, Inc.*,
   2013 U.S. Dist. LEXIS 198591 (C.D. Cal. June 21, 2013) ................................... 9

6

7

*AMF Inc. v. Sleekcraft Boats*,
   599 F.2d 341 (9th Cir. 1979) ................................................................................ 9

8

*Applied Materials, Inc. v. Advanced Semiconductor Materials Am.,
   Inc.*,
   1995 WL 261407 (N.D. Cal. Apr. 25, 1995) ...................................................... 17

9

10

*Blockbuster Videos, Inc. v. City of Tempe*,
   141 F.3d 1295 (9th Cir. 1998) ............................................................................ 21

11

12

*Brighton Collectibles, LLC v. AIF Corp.*,
   No. BC526920, 2017 WL 8950307 (Cal. Super. Ct., Los Angeles
   Cty. Dec. 4, 2017) ........................................................................................ 3 n.2

13

14

*Carter-Wallace, Inc. v. Proctor & Gamble Co.*,
   434 F.2d 794 (9th Cir. 1970) .............................................................................. 14

15

16

*CytoSport, Inc. v. Vital Pharm., Inc.*,
   617 F. Supp. 2d 1051 (E.D. Cal. 2009) ........................................................ 13, 14

17

18

*Daubert v. Merrell Dow Pharm., Inc.*,
   509 U.S. 579 (1993) ............................................................................... 8, 15, 17

19

20

*Design Ideas, Ltd. v. Meijer, Inc.*,
   2018 WL 3539441 (C.D. Ill. Jul. 23, 2018) ...................................................... 15

21

22

*F.O.B. Instruments, Ltd. V. Krown Mfg., Inc.*,
   No. AW-06-1412, 2007 WL 7610320 (D. Md. Aug. 29, 2007) .................... 2 n.1

23

24

*Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*,
   618 F.3d 1025 (9th Cir. 2010) ............................................................................ 16

25

26

*Govino, LLC v. Goverre, Inc.*,
   2018 WL 7348849 (C.D. Cal. Nov. 20, 2018) .............................................. 22, 23

27

28

iii

sf-4029154

*Guidroz-Brault v. Mo. Pac. R.R. Co.*,
   254 F.3d 825 (9th Cir. 2001) ........................................................................ 8

*Icon Enters. Int'l v. Am. Prods. Co.*,
   2004 WL 5644805 (C.D. Cal. Oct. 7, 2004) ............................................... 8, 9

*Icon-IP Pty Ltd. v. Specialized Bicycle Components, Inc.*,
   87 F. Supp. 3d 928 (N.D. Cal. 2015) .......................................................... 17

*Ideal World Mktg, Inc. v. Duracell, Inc.*,
   15 F. Supp. 2d 239 (E.D.N.Y. 1998) ........................................................... 13

*Int'l Mkt. Brands v. Martin Int'l Corp.*,
   882 F. Supp. 2d 809 (W.D. Penn. 2012) ..................................................... 25

*Kern v. Mindsource, Inc.*,
   2000 WL 692199 (9th Cir. May 30, 2000) ................................................... 22

*Kerzner Int'l Ltd. v. Monarch Casino & Resort, Inc.*,
   2009 WL 5066908 (D. Nev. Dec. 14, 2009) ................................................. 12

*Lahoti v. Vericheck, Inc.*,
   586 F.3d 1190 (9th Cir. 2009) ..................................................................... 10

*Mukhtar v. Cal. State Univ., Hayward*,
   299 F.3d 1053 (9th Cir. 2002) ........................................................................ 8

*Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*,
   523 F.3d 1051 (9th Cir. 2008) ........................................................... 8, 14, 23

*Pandora Jewelers 1995, Inc. v. Pandora Jewelry, LLC*,
   2011 WL 2295269 (S.D. Fla. Jun. 8, 2011) ............................................ 18, 25

*Poquito Mas Licensing Corp. v. Taco Bell Corp.*,
   2014 WL 12772086 (C.D. Cal. Dec. 4, 2014) .............................................. 22

*Royal Palm Props., LLC v. Pink Palm Props., LLC*,
   2018 WL 2163946 (S.D. Fla. May 10, 2018) .................................................. 8

*YKK Corp. v. Jungwoo Zipper Co.*,
   213 F. Supp. 2d 1195 (C.D. Cal. 2002) ......................................................... 8

**Statutes**

15 U.S.C.

§ 1115(b)..................................................................................................12
§ 1119 ....................................................................................................13

**Other Authorities**

Fed. R. Evid.

702 ................................................................................................11, 18, 25
702(a)....................................................................................................18
702(c)....................................................................................................18

sf-4029154

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Ironhawk hired a "trademark law expert," attorney Daniel Cislo, to present its legal arguments in the guise of expert testimony.  Cislo's knowledge of the facts and issues in this case comes entirely from Ironhawk's counsel's spoon feeding. He spoke *only* with Ironhawk's counsel prior to preparing his opinion and reviewed *only* documents selected by Ironhawk's counsel, and the specific opinions that he offers are those that Ironhawk's counsel told him it wanted.  In other words, Cislo did no independent thinking prior to preparing his report.  And incredibly, Cislo did not speak with anyone at Ironhawk, read any of their deposition transcripts, or review a single Ironhawk document, yet he purports to offer an opinion on whether Ironhawk's SMARTSYNC trademark is descriptive of Ironhawk's software.  As a result, he opines (for example) that Ironhawk's SMARTSYNC mark does not describe its services because he claims Ironhawk's technology does not "sync" data.  However, Ironhawk's *own CTO* testified that its software *does* synchronize data.  Cislo was unaware of this testimony prior to forming his opinions, and testified it would not change his opinions after he became aware of it.  This is just one among a litany of other similarly unsupported and inappropriate opinions.

The Court should exclude the following opinions as they are not proper matters for legal expert testimony; are based on incorrect facts, unsupported speculation, and subjective beliefs; and are incorrect statements of law:

*First*, Cislo's opinion that Ironhawk's SMARTSYNC mark is not descriptive (Section IV(A)), and his related opinions regarding the USPTO's procedures, its examination of the SMARTSYNC mark, and its alleged "findings" on the descriptiveness of Ironhawk's mark (Section IV(B)).  Cislo analyzed no competent evidence to reach his opinion on descriptiveness, and (as mentioned above) failed to consider settled facts that contradict his opinion.  Instead, his only support is the hearsay and speculation he offers about the *thought* process of the USPTO's

examining attorney in reviewing Ironhawk's trademark application years ago.  This is contrary to the law of this circuit, pressures the jury to yield to the supposed thought processes of an authority figure, and is unhelpful because the jury is fully capable of analyzing the question of descriptiveness on its own.

*Second*, Cislo's opinion that Dropbox uses "Smart Sync" as a trademark (Section IV(C)).  This opinion requires only lay analysis that the jury is fully capable of performing on its own.  Unhelpful testimony from a trademark attorney—particularly one who consistently misstates the law and facts—would unfairly influence the jury and taint its analysis.

*Third*, Cislo's discussion of Dropbox's trademark search process *leading up to* its discovery of Ironhawk's mark (Section IV(D)) and the advice of Dropbox's counsel *after* she discovered the mark (Section IV(E)) because they are irrelevant, misstate the law, and are lay testimony that would improperly influence the jury.

## II.     STATEMENT OF FACTS

### A.     Cislo's Background

Cislo is an attorney and the managing partner of Cislo & Thomas, LLP, a small intellectual property firm in Southern California that was founded by his father.  (Declaration of Nicholas Herrera, filed concurrently ("Herrera Decl.") Ex. 2 at 18:25-19:5, 41:4-7.)  He has practiced in a variety of areas of intellectual property law since 1986.  (*Id*. Ex. 1 at ¶ 2.2.)  He seeks to testify here as an expert on trademark law.  (*Id*. Ex. 2 at 98:11-13.)  This is not the first time Cislo has sought to offer inadmissible legal opinions when testifying as an expert in intellectual property cases.  In *F.O.B. Instruments, Ltd. V. Krown Manufacturing, Inc.*, Case No. 06-cv-1412-AW (D. Md.), Cislo attempted to opine on the validity of numerous patents by offering a hybrid of attorney and technical expert testimony.  His declaration was struck in full.[1]  And two years ago, in *Brighton*

---

[1] (Herrera Decl. Ex. 12, *F.O.B. Instruments, Ltd. V. Krown Mfg., Inc.*, No. AW-06-1412, 2007 WL 7610320 (D. Md. Aug. 29, 2007) (order excluding testimony); Herrera Decl. Ex. 13,

1  *Collectibles, LLC v. AIF Corp.*, Cislo was excluded in part after the opposing party

2  argued that he inappropriately opined on legal issues and attempted to offer his own

3  statutory analysis as an expert witness.[2]

4  ### B.  Cislo's Report and Opinions

5  Cislo offers a number of opinions regarding Ironhawk's SMARTSYNC

6  trademark, Dropbox's use of "Smart Sync," and Dropbox's trademark search and

7  clearance process.  He provided a written report on May 10, 2019, and testified at

8  deposition on June 3, 2019.  (*See* Herrera Decl. Ex. 1, Expert Declaration and

9  Report of Daniel M. Cislo ("Cislo Rpt."); Herrera Decl. Ex. 2, June 3, 2019

10  Deposition of Daniel M. Cislo ("Cislo Dep.").)

11
12  ### 1.  Cislo's opinion that Ironhawk's SMARTSYNC mark is not descriptive.

13  Cislo's understanding of Ironhawk's software is limited to "Ironhawk's

14  description in their trademark registration."  (Cislo Dep. 124:15-19.)  He made *no*

15  effort to learn what the software actually does.  He never met or spoke with anyone

16  at Ironhawk about its products and services or this case;[3] he did not review any

17  Ironhawk documents produced in this matter[4] or deposition transcripts of any

18  Ironhawk witnesses;[5] and while he claims that he looked at Ironhawk's website, he

19  could not remember what (if anything) he learned from the website to inform his

20
21  *F.O.B. Instruments, Ltd. V. Krown Mfg., Inc.*, No. 06-cv-1412-AW, ECF No. 79 at 12 n.9 (D. Md. Aug. 29, 2007) (detailing reasons for striking Cislo testimony).)

22
23  [2] (Herrera Decl. Ex. 14, *Brighton Collectibles, LLC v. AIF Corp.*, No. BC526920 ("*Brighton Collectibles*"), 2017 WL 8950307 (Cal. Super. Ct., Los Angeles Cty. Dec. 4, 2017) (order granting in part motion in limine to exclude Mr. Cislo's testimony); *see also* Herrera Decl. Ex. 15 (*Brighton Collectibles*, Defendant AIF Corporation's Notice of Motion and Motion In Limine to Exclude the Expert Testimony of Daniel M. Cislo (includes Cislo Report as Exhibit A).)

24
25
26  [3] (Cislo Dep. 51:23-52:3, 53:18-21.)

27  [4] (Cislo Dep. 94:16-19.)

28  [5] (Cislo Dep. 52:4-15, 53:22-54:8.)

sf-4029154

opinion[6] and did not include it in his materials considered.  Based upon his review of the trademark application, Cislo opined that Ironhawk's SMARTSYNC software *does not* perform a synchronization function.  Remarkably, he testified that the prior testimony of Ironhawk's CTO that the software *does* synchronize "doesn't affect my opinion at all" that it does not.  (Cislo Dep. 215:12216:6, 216:17-217:1.)  Cislo also claims that SMARTSYNC has acquired distinctiveness[7] without citing any evidence showing substantially exclusive use, which is required to prove acquired distinctiveness.[8]

### 2. Discussion of Ironhawk's trademark application and the USPTO.

Cislo discusses at length the examination process for the SMARTSYNC trademark (Cislo Rpt. ¶¶ 4.3-4.5, 5.1-6.5), and claims that because "the USPTO did not *reject* the mark" for being descriptive, and because the mark was registered on the Principal Register rather than the Supplemental Register, the mark *cannot* be descriptive (*id.* ¶¶ 4.3, 6.5 (emphasis added)).[9]  He states that he approves and agrees with the USPTO's process and what he claims are its "findings,"[10] even

---

[6] (Cislo Dep. 94:20-95:6; 128:18-129:21.)

[7] (Cislo Rpt. ¶ 6.14 ("[E]ven if [the SMARTSYNC mark] was descriptive, Ironhawk could establish that the mark has acquired distinctiveness based upon its substantially exclusive and continuous use for five years."); *see also id.* ¶ 10.3.)

[8] Indeed, Cislo ignores the significant volume of evidence that *disproves* Ironhawk's exclusive and continuous use, including that numerous third parties have used variations of the phrase "SmartSync" in recent years.  (Declaration of (Michel) Tuan Pham in Support of Dropbox's Motion to Exclude the Testimony of Plaintiff's Trademark Law Expert Daniel M. Cislo ("Pham Decl.") ¶¶ 10-15.)

[9] (Cislo Dep. 100:15-24 ("[Q.] How do you understand the sync portion of the SmartSync mark, or what do you understand it to mean?  A. I can only opine as to what the trademark office concluded . . . .").)

[10] Cislo's specific opinions on the USPTO include that "the prosecution of Ironhawk's SMARTSYNC registration was in accordance with the standard procedures of the USPTO" (Cislo Rpt. ¶ 10.1), "that there was nothing out of the ordinary as to how the trademark application was handled in this situation on behalf of Ironhawk or the USPTO during prosecution

---

4

though Dropbox is not challenging Ironhawk's trademark registration.

### 3. Cislo's opinion that Dropbox used the phrase "Smart Sync" as a trademark and not descriptively.

Cislo puts himself in the shoes of a typical consumer viewing examples of Dropbox's use of "Smart Sync" and states, in a conclusory fashion, that Dropbox's use of the phrase "is sufficient to display the mark so prominently such that consumers would recognize it as a trademark." (Cislo Rep. ¶¶ 6.9-6.10.)  Cislo also imagines what *might* happen if Dropbox filed a trademark application for its use of "Smart Sync." (*Id*. ¶¶ 6.7-6.8.)  He speculates on the *thought* process of an imaginary USPTO Examining Attorney viewing the theoretical application, and concludes that "[i]f Dropbox were to submit screen shots of its use of SMART SYNC to the Examining Attorney, it is likely that the screen shots would be acceptable specimens of use . . . ." (*Id*. ¶¶ 6.8, 6.10.)  Cislo cites no expert methodology or specialized knowledge to reach these conclusions.

### 4. Cislo's discussion of Dropbox's trademark search and clearance process.

Cislo describes at length the methods *his* firm uses to clear trademark (Cislo Rpt. ¶ 7.4-7.9), and opines that Dropbox's search process was insufficient because it did not comport with *his* practices and preferences.  (*E.g.*, *Id.* ¶ 7.12 ("Such an evaluation by me or our firm would take several hours or days" and "we would use outside resources such as conducting a third party comprehensive search."); *id.* ¶¶ 7.18-7.19 (███████████████████████████████████); *id.* ¶ 7.20 (███████████████████████████████████ not "customary in my practice").)  In forming his opinion, he also ███████████████████████████ ███████████████████████████████, Dropbox's in-house trademark counsel

---

of the applications" (*id.* ¶¶ 4.3, 10.2), and that "it is likely that the USPTO would arrive at the same conclusion" if Ironhawk were to apply for the same mark today (*id.* ¶ 6.14).

1  Nina Han.  (Cislo Dep. 321:4-5 ████████████████████████████████

2  ██).) ████████████████████████████████████████████████████

3  ███████████████████████████████████████████████████████████

4  ███████████████████  (*id.* at 320:24-321:3; *see also* Cislo Rpt. ¶ 7.20), ████

5  █████████████████  (Cislo Dep. 319:11-16).

### 5.    Cislo's discussion of Dropbox's counsel's advice.

Cislo does not cite to any standard, legal or otherwise, regarding what constitutes an opinion of counsel, but offers a list of procedural and stylistic criteria he believes must be present for advice to constitute a valid opinion of counsel. (Cislo Dep. 114:2-4 ("And there is definitely criteria that must be met for something to rise to the level of opinion letter, and this is not it.").)  He cites no legal authority to justify his criteria beyond his personal experience.  (*Id.* at 113:15-114:4.)  His criteria include: a minimum hours requirement;[11] formal document formatting,[12] word choice,[13] and particular phrasing elements;[14] *length*

---

[11] (Cislo Rpt. ¶ 7.12 ████████████████████████████████████████████ Such an evaluation by me or my firm would take several hours or days . . . .") (citation omitted).)

[12] (Cislo Dep. 113:22-115:4 (discussing preference for "opinion letters"; "usually is formal, it's signed, and usually there's background and it's something that's substantive . . .").)  Cislo also ████████████████████████████████████ (Cislo Rpt. ¶¶ 7.18-7.19).)  However, Cislo admitted that he *did not even review the spreadsheet*—which listed multiple third party uses of the phrase "Smart Sync"—other than to note that Ironhawk's registration *was* listed on it.  And while he claimed his failure to review the spreadsheet was due to his inability to read it, he also admitted that he made no effort to remedy this, including by asking for a clearer copy of the spreadsheet.  (Cislo Dep. 244:25-247:3.)

[13] (Cislo Rpt. ¶ 7.14 ██████████████████████████████████████.)  When confronted with Ms. Han's sworn testimony that "tldr" is commonly used within Dropbox to indicate a summary, and not an instruction not to read, Cislo testified that he did not recall that testimony (Cislo Dep. 297:20-22, 302:11-25), but instead relied on the meaning that Ironhawk's counsel ascribed to "tldr" in forming his opinions in this case.  (Cislo Dep. 297:11-16.)

[14] (Cislo Dep. 118:22-119:3 (opinion letter "would say this is not infringing and here is why and here's all the details[,] [t]hat this is descriptive and here's all the reasons"); *see also* Cislo Rpt. ¶ 7.15 (alleging failure to explicitly "note the high business risk involved" in adopting the phrase "Smart Sync").)

---

6

requirements;[15] certain aspects of the reasoning must appear in writing;[16] and a recommendation to engage outside counsel.[17]  Applying these criteria, Cislo concludes ███████████████████████████████████████████████ ████████████████████████████████████████ (Cislo Dep. 112:18.)

Cislo even comments on the issue of ████████████ ██ ████████████████████████████████████ ████████████████████████████ ██ ██████████████████████ ██ ████████████████████████

(*Id.* at 115:5-11.)  When asked for his basis to judge the admissibility of an opinion of counsel, Cislo referenced only unspecified "case law that I've read," and could not identify a single occasion where he has actually dealt with the issue of admissibility of advice of counsel in a trademark case.  (Cislo Dep. 115:21-116:17.)

Cislo also opines that █████████████████████████████ ████████████████████████ (Cislo Rpt. ¶ 7.23), but identifies no expert methodology or specialized knowledge for this opinion (*id.*).  Finally, he opines on ██████████████████████████████████████████████████

----

[15] (Cislo Dep. 132:7-10 ("And usually it's about, oh, about three or four inches think as an opinion.  And the reason why it's got to be that way, it's got to be reasonably relied upon by the client.").)

[16] (Cislo Rpt. ¶ 7.20 (acknowledging that █████████████████████████████████ but complaining ████████████████████████████████████████████, and as is customary in my practice") (emphasis added); *see also id.* ¶ 7.22.)

[17] (Cislo Rpt. ¶ 7.15 (Ms. Han did "████████████████████████████████████ ████████████, as would be customary"); *see also id.* ¶ 7.22.)  While Cislo ████████████ he has no basis to evaluate this decision as he himself has never served as in-house counsel—except for a company *he* founded, where he hired his *own* firm, Cislo & Thomas, for trademark matters.  (Cislo Dep. 257:7-21, 259:3-7.)

1   ████████████████████████████████████████████████ (*Id.* ¶¶

2   10.5, 7.24.)

3   ### III.   LEGAL STANDARD

4       The district court serves as the "gatekeep[er]" to "ensur[e] that an expert's

5   testimony both rests on a reliable foundation and is relevant to the task at hand."

6   *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993).  An expert's

7   testimony must "relate to scientific, technical, or other specialized knowledge,

8   which does not include unsupported speculation and subjective beliefs." *Guidroz-*

9   *Brault v. Mo. Pac. R.R. Co.*, 254 F.3d 825, 829 (9th Cir. 2001).  If a layperson

10  would be qualified to determine an issue "without enlightenment from those having

11  a specialized understanding of the subject involved in the dispute," an expert's

12  testimony would not "assist the trier of fact."  *Icon Enters. Int'l v. Am. Prods. Co.*,

13  2004 WL 5644805, at *5 (C.D. Cal. Oct. 7, 2004) (quoting Fed. R. Evid. 702

14  advisory committee's note).

15      An expert is not permitted to "merely tell the jury what result to reach"; such

16  conduct "is even further problematic" when the expert "is a practicing lawyer."

17  *Royal Palm Props., LLC v. Pink Palm Props., LLC*, 2018 WL 2163946 at *1 (S.D.

18  Fla. May 10, 2018) (citation omitted) (excluding testifying attorney's opinion

19  regarding the USPTO.  Further, "instructing the jury as to the applicable law is the

20  distinct and exclusive province of the court."  *Nationwide Transp. Fin. v. Cass Info.*

21  *Sys., Inc.*, 523 F.3d 1051, 1058 (9th Cir. 2008) (citation omitted).  "[T]estimony

22  about a legal conclusion, or the legal implications of evidence is inadmissible under

23  Rule 704." *YKK Corp. v. Jungwoo Zipper Co.*, 213 F. Supp. 2d 1195, 1203 (C.D.

24  Cal. 2002) (citation omitted); *see also Mukhtar v. Cal. State Univ., Hayward*, 299

25  F.3d 1053, 1065 n.10 (9th Cir. 2002).

26      Exclusion of testimony is the only remedy sufficient to protect against

27  unfounded, unreliable expert testimony, which can be "quite misleading because of

28  the difficulty in evaluating it."  *Daubert*, 509 U.S. at 595 (citation omitted).  The

party offering the challenged testimony must establish its admissibility by a preponderance of the evidence.  *Acad. of Motion Pictures Arts & Scis. v. Godaddy.com, Inc.*, 2013 U.S. Dist. LEXIS 198591, at *6 (C.D. Cal. June 21, 2013).

## IV.   ARGUMENT

### A.   The Court Should Exclude Cislo's Opinion that Ironhawk's Mark Is Not Descriptive

Cislo's opinion that the SMARTSYNC mark is not descriptive of Ironhawk's software is not a proper subject of legal expert testimony and is unsupported by evidence or analysis.

#### 1.   Conclusory legal expert testimony is not required or helpful to assess descriptiveness

To analyze the strength of the SMARTSYNC mark, the jury will need to determine whether the mark is descriptive of the goods it is used to sell.  *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 349-50 (9th Cir. 1979).  Conclusory statements from a trademark law attorney about his view of the ultimate answer are not necessary or helpful for this task.  Because "distinctiveness is judged from the perspective of the purchasing public," the jury is eminently qualified to conduct this inquiry on its own, and courts are skeptical that expert testimony can assist the trier of fact as to this inquiry.  *Icon Enters.*, 2004 WL 5644805, at *5 (excluding testimony on distinctiveness as unhelpful to the trier of fact).  Cislo's testimony on descriptiveness—which does not show the jury how to reach its own answer, but instead *tells* the jury his preferred answer—should be excluded as a matter of law.

#### 2.   Cislo's opinion on descriptiveness is baseless and contradicts settled facts.

Even if expert testimony were appropriate under the law, Cislo's testimony fails because his views are unsupported and uninformed.  The distinctiveness inquiry asks the factfinder to determine "whether, when the mark is seen on the

9

goods and services, it immediately conveys information about their nature." *Lahoti v. Vericheck, Inc.*, 586 F.3d 1190, 1201 (9th Cir. 2009) (citation omitted).  The jury does not make this determination in the abstract, but rather by examining how the mark is *actually used* on the goods and services in commerce.  *Id.*

Cislo cannot help the jury understand whether the SMARTSYNC mark is descriptive of Ironhawk's goods because he has no understanding of what those goods are.  He made no effort to analyze Ironhawk's *use* of the SMARTSYNC mark, instead relying only on Ironhawk's description of its *proposed* use of the mark in its 2005 application.[18]  He relied on *no* information from Ironhawk in forming his opinion—no Ironhawk documents, no deposition transcripts, and no conversations with any Ironhawk employees.  Critically, his opinion contradicts that of *Ironhawk's own CTO*, who testified that Ironhawk's SMARTSYNC software includes "synchronizing" functionality:

> "SMARTSYNC is designed for one sole purpose which is to efficiently replicate all variety of data, to replicate and *synchronize*, distribute all variety of data across challenged networks, which include satellite networks, cellular networks, dial-ups, even broadband when you may have intermittent issues and so forth."

(Herrera Decl. Ex. 11, Deposition of Rupinder Gill ("Gill Dep.") at 97:24-98:6 (emphasis added).)

When Cislo was asked at deposition about the CTO's description of the Ironhawk software, his response was incoherent,[19] and he went on to testify—

---

[18] He also announces his own completely unsupported and uncited definition of the term "SYNC"-ing, and concludes that Ironhawk's technology does not perform a synchronization function because "replicating files" is "not 'SYNC'-ing or harmonizing data."  (Cislo Rpt. ¶ 6.4.)

[19] "You have got to be careful with the language, he's a -- you say chief technology officer.  You know, he might be using nomenclature and definitions that are not what the general public would be using," and "'[S]ynchronize' is probably a different -- seems like a different term than everything else that's going on."  (Cislo Dep. 215:12-19, 216:1-3.)

astoundingly—that Ironhawk's CTO's testimony that the software performs a synchronization function "doesn't affect my opinion at all" that the software does *not* synchronize.  (Cislo Dep. 216:17-217:1.)  Cislo's failure to seek basic information *from the party that engaged him* shows that his opinion is uninformed and would obstruct the jury from reaching an accurate conclusion about the strength of the SMARTSYNC mark.  (Fed. R. Evid. 702 (expert testimony must be "based on sufficient facts or data").)  Accordingly, the Court should exclude his opinion on this issue.

### B.    The Court Should Exclude Cislo's Opinions Regarding USPTO Procedures and the Examination of the SMARTSYNC Mark

Cislo's only other basis for opining that Ironhawk's mark is not descriptive is that the USPTO granted a registration for that mark.  However, this reasoning misrepresents the law.  Registered marks are regularly found to be descriptive.  Cislo's exclusive reliance on the USPTO would confuse and inappropriately pressure the jury.

### 1.    The USPTO's conduct is not being challenged and is not an issue in this case.

To start, Cislo's opinions on the USPTO[20] wrongly suggest that the USPTO's conduct is at issue in this case, when it is not.  The opposite is true: his proffered opinions are entirely redundant of the statutory presumptions that Ironhawk already enjoys as a registrant.  Permitting Cislo to discuss USPTO processes would lead to confusion and (as discussed in sections to follow) the chance for Ironhawk to pressure the jury to defer to what it claims are the views of the USPTO, rather than

---

[20] Dropbox seeks to exclude three main opinions on the USPTO: Cislo's claims that (1) "the prosecution of Ironhawk's SMARTSYNC registration was in accordance with the standard procedures of the USPTO" (Cislo Rpt. ¶ 10.1), (2) "that there was nothing out of the ordinary as to how the trademark application was handled in this situation on behalf of Ironhawk or the USPTO during prosecution of the applications" (*id.* ¶¶ 4.3, 10.2), and (3) that "it is likely that the USPTO would arrive at the same conclusion" if Ironhawk were to again apply for the same mark (*id.* ¶ 6.14).

sf-4029154

1   permit the jury to conduct its own analysis free from undue influence.

2        Dropbox does not dispute that Ironhawk obtained a registration for its

3   SMARTSYNC mark, or that the registration is incontestable.  (ECF No. 1 ¶ 18.)

4   Because it is incontestable, Ironhawk's registration serves as "conclusive evidence

5   of the validity of the registered trademark."  15 U.S.C. § 1115(b).  Accordingly,

6   Dropbox could not—and has not—sought to cancel the registration on the basis that

7   SMARTSYNC is merely descriptive.  *Id.*  Thus, Cislo's testimony that the USPTO

8   properly examined Ironhawk's application to register the SMARTSYNC mark for

9   descriptiveness confuses the issues and is irrelevant because the USPTO's conduct

10  is *not* an issue in this case.  *See Kerzner Int'l Ltd. v. Monarch Casino & Resort,*

11  *Inc.*, 2009 WL 5066908, at *3-4 (D. Nev. Dec. 14, 2009) (excluding legal expert

12  testimony on "[t]he legal effect—or lack thereof, on some issues—of a federal

13  trademark registration," which "[a]t best . . . would be repetitious of [the Court's]

14  jury instructions, and at worse would confusingly conflict with them").

15               **2.      Discussing the USPTO would inappropriately**
16                        **influence the jury.**

17        Insofar as Cislo attempts to use the USPTO proceedings to tell the jury how

18  it should evaluate the descriptiveness of Ironhawk's mark, this is improper.  Cislo

19  repeatedly claims that the USPTO made "findings" about the SMARTSYNC mark:

20  namely that in declining to reject Ironhawk's application for descriptiveness, that

21  the USPTO affirmatively found that Ironhawk's SMARTSYNC mark was *not*

22  descriptive.[21]  However, the USPTO made no such "findings," and if Cislo were

23

24  _____

25  [21] (Cislo Dep. 101:12-22 ("Q. You just said ['] the trademark office's opinion.[']  Where in
    the file history is there an opinion that the mark is not misdescriptive and not descriptive?  A. **The**
26  **conclusion that the trademark office reached was that [it] was not,** otherwise there would
    have been a rejection based upon either misdescriptive or descriptive, and that was not the case.")
27  (emphasis added); Cislo Dep. 105:17-106:3 ("[Q.] So what I'm focused on here is how you know
    that [the USPTO] concluded it imparts an incongruous meaning and therefore was deemed
28  registrable.  *You don't know that, in fact,* all you know is they didn't reject is as descriptive,
    correct? . . . [A.] I do know that they do reject as descriptive.  And I do know they applied their --

                                        12
sf-4029154

1    permitted to testify, his testimony would improperly pressure the jury to accept his

2    inaccurate assertions as to what the USPTO "found," rather than help the jury reach

3    its own reasoned decision on the strength of the SMARTSYNC mark.

4         The Ninth Circuit understands this danger, which is why *ex parte* trademark

5    proceedings before the USPTO are entitled to little weight.  A USPTO examining

6    attorney's registrability determinations "must be regarded as inconclusive" because

7    they are made at the USPTO's "lowest administrative level," without "the great

8    mass of evidence" that parties put forth in litigation, and only "based upon the mark

9    as it is presented for registration, regardless of how the mark is *used* in the

10   marketplace." *CytoSport, Inc. v. Vital Pharm., Inc.*, 617 F. Supp. 2d 1051, 1068

11   (E.D. Cal. 2009) (emphasis added) (quoting *Carter-Wallace, Inc. v. Proctor &*

12   *Gamble Co.*, 434 F.2d 794, 801-02 (9th Cir. 1970)).[22]  Moreover, courts often

13   determine that the USPTO was incorrect in registering a mark that is actually

14   descriptive.  *Ideal World Mktg.*, 15 F. Supp. 2d at 244, 246 (citing cases and

15   determining registered mark at issue to be descriptive); *see generally* 15 U.S.C.

16   § 1119 (statutory power to cancel marks granted by the USPTO).  In other words:

17   courts and juries are in a better position than the USPTO to decide the strength of a

18   mark because they have far more evidence with which to make a decision.

19        If Cislo is permitted to offer his views on the USPTO process, his testimony

20   would elevate the importance of the USPTO's limited analysis in the eyes of the

21   jury beyond what is permissible in this circuit, and would exert undue pressure on

22   the jury to follow those alleged findings by concluding that the SMARTSYNC

23   mark is not descriptive and therefore is a strong mark.  Invoking the USPTO as an

24   _____

25   their own internal analysis to draw that conclusion, and **that's the conclusion that they would
     draw in order to provide the result they did**." (emphasis added)).)

26        [22] And in other courts where the USPTO's findings do receive consideration, the courts
27   are careful to make clear that the factfinder is not bound by the USPTO's determination, which
     was made with less evidence than is now before the court. *Ideal World Mktg, Inc. v. Duracell,*
     *Inc.*, 15 F. Supp. 2d 239, 244 (E.D.N.Y. 1998).

28

unseen expert in trademark law (and one that Dropbox cannot cross-examine) creates the mistaken impression that the jury is bound by those findings or must give them significant weight, even though that is contrary to law. *CytoSport*, 617 F. Supp. 2d at 1068; *Carter-Wallace*, 434 F.2d at 801-02. Cislo also creates the mistaken impression that the question before the jury on the strength of the mark today is the same as the question before the USPTO in 2005, without the "great mass of evidence" now available to the jury. *Carter-Wallace*, 434 F.2d at 801-02. Cislo's testimony on the USPTO thus "merely tells the jury what result to reach" by telling them what supposed result the USPTO reached. *Nationwide Transp. Fin.*, 523 F.3d at 1060 (citation omitted).

### 3.     Cislo's opinions on the USPTO are pure speculation and hearsay.

To support his conclusion that she actually assessed the descriptiveness of Ironhawk's SMARTSYNC mark and understood Ironhawk's technology (as it existed in 2005), Cislo speculates at length about what the USPTO's examining attorney must have thought and done in 2005.[23] He claims, for example, that the examining attorney visited Ironhawk's website—notwithstanding that there is nothing in the case file to suggest this—because he *thinks* it was recommended that she do so and because he *believes* most examining attorneys do so "*now*."[24] He

---

[23] (Cislo Dep. 104:23-105:10 ("Q. How do you know that that is what the examining attorney was *thinking* when she examined the application? A. Because there's no rejection based on descriptiveness. . . . And so because I know the policies and the practices of the trademark office, if the trademark examining attorney had thought that, then we would have seen a rejection based upon descriptiveness and that's why I was able to say that.") (emphasis added).)

[24] (Cislo Dep. 138:12-20 ("So I have no doubt that this examining attorney probably did go to Ironhawk's website and looked at how the mark was being used and then made her decision based on her knowledge and understanding. . . . I have a strong reason to believe because I find that that's what they're doing now.").)

Cislo later backtracked, all but admitting that his earlier statements that the examining attorney looked at Ironhawk's website were speculation. (Cislo Dep. 167:12-18 ("[A.] There's nothing to indicate that she did not look at the Ironhawk website, but there's also *nothing to indicate that she did*.") (emphasis added); *id.* at 163:22-164:5 ("Q. You said you're confident that the examining attorney looked at the Ironhawk website and you know that -- A. I said they *may*

---

14

also claims that the examining attorney must have considered whether the mark was

descriptive, but when asked for evidence in the file history that the attorney actually

considered this question, he could point to nothing, relying only on the fact that the

mark was not rejected.[25]  Cislo's guesswork is based on nothing more than what

USPTO rules indicate examining attorneys should do, but Cislo (like the rest of us)

cannot know what the examining attorney actually thought and did, and the attorney

herself will not appear at trial for cross examination.

For these reasons, courts do not permit experts to offer this type of testimony.

*See Design Ideas, Ltd. v. Meijer, Inc.*, 2018 WL 3539441, at \*6 (C.D. Ill. Jul. 23,

2018) (excluding testimony of attorney expert "regarding his interpretation of the

PTO's handling of Plaintiff's trademark application" as unhelpful to the trier of

fact).  Given the significance of these flaws and the inherent power of expert

testimony to influence the jury, exclusion is the only remedy.  *Daubert*, 509 U.S. at

595 (expert testimony can be "quite misleading because of the difficulty in

evaluating it" (citation omitted)).

### C.    The Court Should Exclude Cislo's Opinion that Dropbox Uses the Phrase "Smart Sync" as a Trademark

Cislo's opinion that Dropbox's use of "Smart Sync" constitutes trademark

use is unhelpful to the jury and based on flawed data and methods.

---

*have.*  Q. Oh, I thought you said you were confident that they did.  A. *I'm confident that they may have looked at it*, because that's what they typically have done for all of my case with clients.").)

[25] (Cislo Dep. 101:12-22 ("Q. You just said [']the trademark office's opinion.[']  *Where in the file history is there an opinion* that the mark is not misdescriptive and not descriptive?  A. The conclusion that the trademark office reached was that [it] was not, otherwise there would have been a rejection based upon either misdescriptive or descriptive, and that was not the case." (emphasis added)); *id.* at 105:17-106:3 ("[Q.] So what I'm focused on here is how you know that [the USPTO] concluded it imparts an incongruous meaning and therefore was deemed registrable. *You don't know that, in fact*, all you know is they didn't reject is as descriptive, correct? . . . [A.] I do know that they do reject as descriptive.  And I do know they applied their -- their own internal analysis to draw that conclusion, and that's the conclusion that they would draw in order to provide the result they did." (emphasis added)).

15

### 1. Conclusory legal expert testimony is not required or helpful to answer the question of trademark use.

To determine whether a term is being used as a mark, the trier of fact must "look for indications that the term is being used to 'associate it with a manufacturer,'" including "whether the term is used as a 'symbol to attract public attention'" (in terms of size, lettering, and so on), and whether the user took "precautionary measures . . . designed to minimize the risk that the term will be understood in its trademark sense." *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1040 (9th Cir. 2010) (citation omitted). The Ninth Circuit has held that expert opinion on the issue of trademark use "does not 'assist' the jury because the jury is well equipped 'to determine intelligently and to the best possible degree' the issue of trademark usage 'without enlightenment from those having a specialized understanding of the subject involved in the dispute.'" *Id.* at 1040-41 (quoting Fed. R. Evid. 702 advisory committee's note). *Lawyer* testimony on trademark use will not help the jury in any way. Cislo's testimony on this issue should be excluded as a matter of law.

### 2. Cislo's opinion on trademark use is improper lay opinion and relies on a baseless hypothetical.

Cislo relies on two points to support his opinion that Dropbox uses "Smart Sync" as a trademark: his belief that Dropbox's "use of the mark is prominently displayed such that consumers would recognize it as a trademark," and his speculation that screenshots of Dropbox's use "would be acceptable specimens" of use for the USPTO. (Cislo Rpt. ¶ 6.10.) Neither is valid support for his opinion.

Cislo's visual review of some examples of Dropbox's use of "Smart Sync" (*Id.* ¶ 6.9), is precisely the task that the Ninth Circuit found the jury capable of doing on its own. *See Fortune Dynamic*, 618 F.3d at 1040-41. Thus, Cislo's opinion that Dropbox's use of "Smart Sync" "is sufficient to display the mark so prominently such that consumers would recognize it as a trademark" (Cislo Rpt.

¶ 6.9-6.10), is mere lay analysis that invades the province of the jury.  Cislo's opinion is not only unhelpful on this point, it could also unduly influence the jury.

Furthermore, Cislo's counterfactual speculation as to what might happen "*[i]f* Dropbox were to submit screen shots of its use of SMART SYNC to the [USPTO]" (Cislo Rpt. ¶ 6.8 (emphasis added)) is irrelevant because the scenario he imagines has never happened.  Dropbox does not view its usage of "Smart Sync" as trademark usage, has never applied to register it as trademark, and therefore has never submitted a specimen of its "Smart Sync" feature in a trademark application—which Cislo knew from Dropbox documents he included in his appendix.  (*E.g.*, Herrera Decl. Ex. 7, Dep. Ex. 101 (████████████████████████ ████████████████████████████████████████████████ (emphasis added) (included in Cislo Rpt. Appendix D)).)

Counterfactual speculation that contradicts established facts would only confuse and unduly prejudice the jury.  *Daubert*, 509 U.S. at 599 (requiring more than "subjective belief or unsupported speculation" from expert testimony).  This "opinion" is especially harmful because Cislo conjures an *imaginary* USPTO Examining Attorney and then attributes beliefs and legal conclusions to her.  It goes without saying that Dropbox has no ability to respond to or cross-examine an imaginary witness invented to support Cislo's opinion.  This testimony should be excluded.  *Icon-IP Pty Ltd. v. Specialized Bicycle Components, Inc.*, 87 F. Supp. 3d 928, 947 (N.D. Cal. 2015) (expert "may not speculate about what the PTO would have done" had additional information "been brought to the examiner's attention"); *Applied Materials, Inc. v. Advanced Semiconductor Materials Am., Inc.*, 1995 WL 261407, at *3 (N.D. Cal. Apr. 25, 1995) (excluding as "irrelevant speculation" attorney expert's testimony on "what the [USPTO] examiner would have done . . . if the examiner had different information" in patent case).

### 3.   Cislo's subsidiary opinion regarding Dropbox's *subjective beliefs* on the alleged trademark use is baseless and inappropriate for expert testimony.

Cislo also offers an unsupported conclusion about Dropbox's *mindset* and *subjective beliefs* as to whether it uses the phrase Smart Sync as a trademark, claiming that "[i]t would be reasonable to conclude . . . that Dropbox admitted that it does not consider ["Smart Sync"] descriptive of the goods and services."  (Cislo Rpt.. ¶ 6.11.)  This claim is improper for expert testimony, because questions of intent and subjective belief are "classic jury question[s]" for which expert conclusions are not helpful.  *Pandora Jewelers 1995, Inc. v. Pandora Jewelry, LLC*, 2011 WL 2295269, at *1 (S.D. Fla. Jun. 8, 2011) (precluding expert testimony on party's intent in adopting trademark).  Tellingly, Cislo employs no expert analysis or specialized knowledge to come to his stated conclusion, as would be required for him to testify.  Fed. R. Evid. 702(a), (c).  Instead, he simply cites ███████████ ████████████████████████████████████████████████—all of which the jury is capable of reviewing "intelligently and to the best possible degree" on its own (Fed. R. Evid. 702 advisory committee's note)—and then appends an opinion about Dropbox's state of mind.  Cislo's lay commentary is unhelpful and should be excluded as a matter of law.

But worse, Cislo's claim is entirely baseless.  He cherry-picks partial quotes from ██████████████████████████████████, and then claims those statements represent the company's beliefs on trademark use, even though ██████████████████████████████████████████████.[26]  Cislo ignores this testimony refuting his opinion, despite claiming to have

---

[26] (Dep. Ex. 93 (Herrera Decl. Ex. 3) (also marked as Dep. Ex. 8); *Compare* Cislo Rpt. ¶ 6.11 (██████████████████████████████████████) *with* Herrera Decl. Ex. 9, Deposition of Patrick Rowell ("Rowell Dep.") 67:12-69:9 ████████████████████████████████ ████████████████████████████████████████████

sf-4029154

1  considered the relevant deposition.[27]  He also blatantly misrepresents the deposition

2  testimony of another Dropbox witness,[28] draws incorrect inferences from what the

3  documents do *not* say,[29] and *omits material portions of the same documents*

4  *disproving his point*,[30] repeatedly ignoring proof that ███████████████████

5  ████████████████████████████████████████████████████████████████

6  ███████████████████████████████ (Herrera Decl. Ex. 5, Dep. Ex. 95.)

7  Cislo's misleading attempt to elevate these ████ scattered statements into a narrative

8  about the *intent* of the company is pure attorney argument, and not appropriate for a

9  legal expert to opine.

10

_____

11  [27] (Cislo Rpt. Section 3 (identifying deposition of Patrick Rowell among documents

12  considered).)

13  [28] Misrepresenting deposition testimony, Cislo claims that ████████████████ (Cislo

14  Rpt. ¶ 6.11 (emphasis added).)  In fact, Dropbox's Director of Product Management Genevieve Sheehan testified that ████████████████████████████████████

15  ████████████████████████████████████████████████████████████

16  ████████████████████████████████████████ (Herrera Decl. Ex. 10, Deposition of Genevieve Sheehan ("Sheehan Decl.") 40:10-21.)

17  [29] Cislo claims that ██████████████████████████████████████████████

18  ████████ (Cislo Rpt. ¶ 6.11.)  But it is an obvious logical fallacy and strawman for *Cislo himself* (or Ironhawk's counsel) to select a group of documents, allege that they fully represent Dropbox's views, and then criticize those documents for what they allegedly *omit*.

19

20  [30] (Dep. Ex. 94 (Herrera Decl. Ex. 4): Dropbox strategy lead Patrick Rowell states that ████████████████████████████████████████

21  ████████████████ Cislo omits the bolded portion of this statement from his report with an ellipses. (*Cf.* Cislo Rpt. ¶ 6.11.)

22  (Dep. Ex. 95 (Herrera Decl. Ex. 5): ████████████████████████████

23  ████████████████████████████ Cislo omits this quote from consideration, even though it immediately follows the bullet point he does quote.  (*Cf.* Cislo Rpt. ¶ 6.11.)

24

25  (Dep. Ex. 97 (Herrera Decl. Ex. 6) (also marked as Dep. Ex. 5): market research summary ████████████████████████████ (Herrera Decl. Ex. 9, Rowell Dep. 46:8-17.)  The document states, █████████████████

26  ████████████████████████████████████████████████████████████████

27  ████████████████████████ (Herrera Decl. Ex. 6, Dep. Ex. 97 at 1) (emphasis added).)  Cislo ignores this document summary and cites only a specific bullet point about ████

28  █████████████████████████████████ (*Cf.* Cislo Rpt. ¶ 6.11.)

sf-4029154

**D.    The Court Should Exclude Cislo's Irrelevant Attacks on the Trademark Clearance Process That Led to the Discovery of Ironhawk's Mark by Dropbox's In-House Trademark Counsel**

Cislo's opinions regarding Dropbox's trademark search and clearance process can be divided into two groups: (1) opinions about actions *leading up to* the discovery of Ironhawk's SMARTSYNC mark by Dropbox's counsel, and (2) opinions about Dropbox's analysis and counsel's advice *after* Dropbox discovered the mark.  The first set (addressed in this section) is irrelevant; the second set (addressed in Section IV(E), *infra*) misrepresents the law; and both would confuse and mislead the jury.

**1.    Cislo's opinions about Dropbox's process for discovering Ironhawk's mark are irrelevant.**

Cislo impugns the quality of Dropbox's trademark clearance process at length.  Many of his complaints relate to aspects of Dropbox's process *leading up to* its discovery of the Ironhawk SMARTSYNC mark, including ███████████ █████████████████,[31] ████████████████ ████████████████,[32] and ███████████████████████████████████[33] or ████████████████[34]

These complaints are entirely mooted by the fact that ████████████

---

[31] (Cislo Rpt. ¶ 7.11, 7.13 ██████████████████████████████ *id.* ¶ 7.12 ("Such an evaluation by me or our firm would take several hours or days").)

[32] (Cislo Rpt. ¶¶ 7.18-7.19 ████████████████████████████████); Herrera Decl. Ex. 8, Dep. Ex. 104 ███████████████████████) (cited in Cislo Appendix F).)

[33] (Cislo Rpt. ¶ 7.12 (Cislo's firm "would use outside resources such as conducting a third party comprehensive search").)

[34] (Cislo Rpt. ¶ 7.22 ██████████████████

---

20

1 ███████████████████████████████████   The purpose of a trademark clearance

2 search is to discover potentially relevant trademarks in the market.  ██████████

3 █████████████████████████████████████████████████████████████████

4 █████████████████████████████████████████████████████████████████

5 ███████████████████████████████████████████████.[35]  Cislo's

6 enumerated complaints are thus wholly irrelevant.  But given Cislo's status as a

7 trademark expert, if he is allowed to suggest any impropriety in the search

8 process—even on issues that have *no* impact on any claim or defense—it could lead

9 to confusion and undue influence over the jury.  Cislo must be excluded from

10 testifying about ████████████████████████████████████████████████

**E.   The Court Should Exclude Cislo's Discussion of Dropbox's Advice of Counsel Defense to Willfulness**

13 As to Dropbox's analysis process *after* it discovered Ironhawk's mark, Cislo

14 announces an unsupported test for what constitutes reasonable reliance on advice of

15 counsel, and claims Dropbox fails to meet his made-up test.  His views are

16 demonstrably at odds with the law.  Allowing him to testify regarding Ms. Han's

17 advice would undermine the Court's instruction on willfulness.

**1.   Cislo misstates the law and invents new legal requirements for the opinion of counsel defense.**

20 "Infringement is not willful if the defendant 'might have reasonably thought

21 that its proposed usage was not barred by the statute.'"  *Blockbuster Videos, Inc. v.*

22 *City of Tempe*, 141 F.3d 1295, 1300 (9th Cir. 1998) (quoting *Int'l Olympic Comm.*

23 *v. S.F. Arts & Athletics*, 781 F.2d 733, 738-39 (9th Cir. 1986)).  "[G]ood faith can

24 be found if the defendant has selected a mark that reflects the product's

25 characteristics, has requested a trademark search or has relied on the advice of

26 _____

27 [35] Indeed, when Cislo was asked ████████████████████████████████████  he could

point to nothing.  (Cislo Dep. 233:10-235:7.)

28

21

sf-4029154

counsel." *Kern v. Mindsource, Inc.*, 2000 WL 692199, at *3 (9th Cir. May 30, 2000) (affirming lower court's grant of summary judgment on willfulness in favor of defendant where defendant reasonably relied on advice of counsel). "[O]btaining the advice of counsel generally negates a finding of willfulness unless the advice is ignored or is found to be incompetent." *Poquito Mas Licensing Corp. v. Taco Bell Corp.*, 2014 WL 12772086, at *3 (C.D. Cal. Dec. 4, 2014). Competence is evaluated under the "totality of the circumstances." *Id.* (citation omitted). Judge Staton recently relied on the following factors to guide the analysis: (1) background research done by attorney; (2) whether opinion was oral or written; (3) objectivity of opinions; (4) whether attorney rendering opinion is trademark lawyer; (5) whether opinion is detailed or merely conclusory; and (6) whether material information was withheld from attorney. *Govino, LLC v. Goverre, Inc.*, 2018 WL 7348849, at *5 (C.D. Cal. Nov. 20, 2018).

Cislo does not cite to the reasonableness standard, nor does he cite to criteria courts have used to determine if advice of counsel is competent. Instead, he makes ups his own standard—"criteria that must be met for something to rise to the level of opinion letter" (Cislo Dep. 114:2-4)—which do not track the established legal standard and are largely comprised of superficial elements that prize style over substance. *Supra* II(B)(5) (distilling Cislo's apparent standard for advice of counsel, which includes a minimum hours requirement; formal document formatting, word choice, and particular phrasing elements; length requirements; certain aspects of the reasoning must appear in writing; and a recommendation to engage outside counsel). Cislo's views are incompatible with the law and therefore unhelpful to the jury.

Allowing Cislo to testify regarding advice of counsel amounts to letting him instruct the jury—incorrectly—on what the law is. If admitted, Cislo's willfulness opinion could lead the jury to believe that Dropbox must satisfy extra requirements that do not exist at law and instead merely reflect his personal preferences. For

example, the test used to determine competency in *Govino* and other cases does not include stylistic requirements like those Cislo focuses much of his attention on: formal phrasing, the length of the document and whether it is formatted as a letter or in another form, and so on as listed above.  Further, Cislo opines repeatedly that ███████████████████████████████████████████████████████████████ ████████████████████████████.[36]  (Cislo Rpt. ¶ 7.20, 10.5.)  No such requirement exists: courts consider whether an opinion is written down as part of the totality-of-the-circumstances analysis, and ███████████████████████ ████; but Cislo's claim ███████████████████████████████████████ ████████████████████████████ is not the law.  This is precisely why it is the "distinct and exclusive province of the court" to instruct the jury as to the applicable law.  *Nationwide Transp. Fin.*, 523 F.3d at 1058 (citation omitted).

In addition to misstating the law, Cislo also conceded that he had little or no information on two of the factors identified in the *Govino* case—Ms. Han's experience as a trademark lawyer[37] and the extent of Ms. Han's background research[38]—even though he claims to have read Ms. Han's deposition transcript where she testified to her experience, and he could have further evaluated Ms. Han's background research, ███████████████████████████████████ ████████████████████████.  (Herrera Decl. Ex. 8, Dep. Ex. 104 (included in Cislo

_____

[36] Ms. Han testified ███████████████████████████████ (Herrera Decl. Ex. 16 at 51:21-24). ███████████ (Cislo Dep. 320:24-321:5 ███████████████████████████████████████████ ██████████████████████████████████████████████).)

[37] (Cislo Dep. 346:13-347:16 ██████████████████████████████████ ████████████████████").)

[38] (Cislo Dep. 244:19-24 ███████████████████████████████████████ █████████████████████████████████████████████████████████ ███████████; *id.* at 245:7-14 ███████████████████████████████ ████).)

1    Rpt. Appendix F).)  When asked ████████████████████████████████

2    ████████████████████ Cislo testified ████████████████████████

3    ███████████████████████████████████████████████████████

4    ██████████████████████████████████████████████████████████

5    ██████████████████████████████████████████████████████████████

6    ████████    (Cislo Dep. 246:20-247:3 (emphasis added).)  Once again: Cislo's

7    personal preferences are not the law, and he cannot simply ignore evidence that

8    conflicts with his opinion.

9         Because Cislo would misrepresent the law, and because he ignored and failed

10   to investigate key factors that *are* the law, his opinion on advice of counsel should

11   be excluded.

12                    **2.    Cislo's claim that Dropbox did not *follow* the advice of
                              its counsel is improper lay testimony.**

13

14        Cislo concludes that Dropbox did not follow the advice of its counsel

15   because, in his view, Dropbox ████████████████████████████████

16   █████████████████████████████████████████████████████████████

17   ████████████████████████    (Cislo Rpt. ¶ 7.23.)  As an initial matter, Cislo

18   misstates ██████████████████████████████████████████

19   ███████████████████████████ but instead ████████████████████

20   █████████████████████████████████████████████████

21   ██████████████████████ (Herrera Decl. Ex. 7, Dep. Ex. 101 ███████████████

22   █████████████████████████████████████████████████

23        Moreover, Cislo's analysis here is nothing more than lay visual analysis,

24   which mirrors his lay analysis with respect to trademark use (*see supra* IV(C)).  His

25   views on non-compliance should thus be excluded for the same reasons as his

26   views on trademark use—namely, that he offers unhelpful lay testimony on this

27   topic with no expert analysis, and that his views would unduly pressure the jury

28   when coming from a supposed expert on trademark law.  (*Id.*)  The task of the jury

1   is the same in both instances, and the jury is more than capable of considering

2   Dropbox's actions and determining whether, in its view, Dropbox complied with its

3   counsel's advice, including whether it used the term "Dropbox" alongside the

4   phrase "SmartSync" or took steps to avoid "Smart Sync" being perceived as a

5   source identifier.  This is a "common sense inquiry" where Cislo adds nothing

6   helpful.  (Fed. R. Evid. 702 advisory committee's note).

### 3. Cislo's claim that Dropbox showed willful intent is inappropriate for expert testimony.

9   Finally, Cislo again relies only on assumptions to opine on Dropbox's intent

10  as related to the *Sleekcraft* inquiry, claiming that ███████████████████

11  ████████████████████████████████████████████████████ (Cislo Rpt. ¶

12  10.5; *see also id.* ¶ 7.24.)

13  Opining on intent is not the proper purview of an expert in trademark law and

14  amounts to improper legal conclusions.  *Int'l Mkt. Brands v. Martin Int'l Corp.*, 882

15  F. Supp. 2d 809, 818 (W.D. Penn. 2012) (precluding trademark attorney expert

16  from testifying to intent element of likelihood of confusion analysis).  Expert

17  testimony on intent further invades the province of the jury because the expert is no

18  better suited than the jury to evaluate intent and motives, which again are "classic

19  jury question[s]."  *Pandora Jewelers 1995, Inc.*, 2011 WL 2295269, at *1 (citation

20  omitted).  Cislo should not be permitted to testify on intent.

### V. CONCLUSION

22  For the foregoing reasons, the Court should exclude Cislo from offering the

23  opinions described above at trial.

sf-4029154

Dated:    June 17, 2019

JENNIFER LEE TAYLOR
WENDY J. RAY
MORRISON & FOERSTER LLP

By:   /s/ Nicholas Herrera
          Nicholas Herrera

Attorneys for Defendant
DROPBOX, INC.

DROPBOX, INC.'S MPA ISO MOTION TO EXCLUDE DANIEL M. CISLO

sf-4029154