BROWNE GEORGE ROSS LLP
Keith J. Wesley (State Bar No. 229276)
kwesley@bgrfirm.com
Lori Sambol Brody (State Bar No. 150545)
lbrody@bgrfirm.com
Matthew L. Venezia (State Bar No. 313812)
mvenezia@bgrfirm.com
2121 Avenue of the Stars, Suite 2800
Los Angeles, California 90067
Telephone: (310) 274-7100
Facsimile: (310) 275-5697

Attorneys for Plaintiff and Counterdefendant
Ironhawk Technologies, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| IRONHAWK TECHNOLOGIES, INC., a Delaware Corporation,<br><br>Plaintiff and Counterdefendant,<br><br>vs.<br><br>DROPBOX, INC., a Delaware corporation,<br><br>Defendant and Counterclaimant. | Case No. 2:18-cv-01481-DDP-JEM<br><br>**PLAINTIFF IRONHAWK TECHNOLOGIES, INC.'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW [L.R. 16-4]**<br><br>Judge: Hon. Dean D. Pregerson<br>Trial Date: October 22, 2019<br>Final Pre-Trial Conf. : October 7, 2019 |

# TABLE OF CONTENTS


**Page**

II. CLAIMS AND DEFENSES [L.R.16-4.1] ..... 3

A. Summary Statement of Claims Ironhawk Plans to Pursue [L.R. 16-4.1(a)] ..... 3

1. First Claim for Relief – Violation of the Lanham Act (15 U.S.C. § 1051, et seq.) ..... 3

2. Second Claim for Relief – Common Law Unfair Competition Under California Law ..... 3

B. Elements Required to Establish Ironhawk's Claims [L.R. 16-4.1(b)] ..... 3

1. First Claim for Relief – Violation of the Lanham Act (15 U.S.C. § 1051, *et seq*.) ..... 3

2. Second Claim for Relief – Common Law Unfair Competition ..... 4

C. Brief Description of Key Evidence in Support of Ironhawk's Claims [L.R. 16-4.1(c)] ..... 4

1. First Claim for Relief – Violation of the Lanham Act (15 U.S.C. § 1051, *et seq*.) ..... 4

2. Second Claim for Relief – Common Law Unfair Competition Under California Law ..... 7

D. Summary of Counterclaims and Affirmative Defenses Dropbox Plans to Pursue at Trial [L.R. 16-4.1(d)] ..... 7

1. Counterclaims ..... 7

2. Affirmative Defenses ..... 7

a. Second Affirmative Defense – Fair Use ..... 8

b. Third Affirmative Defense – Unclean Hands ..... 8

c. Eleventh Affirmative Defense – Good Faith ..... 8

d. Thirteenth Affirmative Defense – Absence of Damages ..... 8

E. Elements Required to Establish Dropbox's Counterclaims and Affirmative Defenses [L.R. 16-4.1(e)] ..... 8

1. Counterclaims ..... 8

2. Affirmative Defenses ..... 8

**TABLE OF CONTENTS**
**(Continued)**

**Page**


a. Second Affirmative Defense – Fair Use ... 8

b. Third Affirmative Defense – Unclean Hands ... 9

c. Eleventh Affirmative Defense – Good Faith ... 9

d. Thirteenth Affirmative Defense – Absence of Damages ... 9

F. Key Evidence Relied on in Opposition to Each Counterclaim or Affirmative Defense [L.R. 16-4.1(f)] ... 10

1. Counterclaim ... 10

2. Affirmative Defenses ... 12

a. Second Affirmative Defense – Fair Use ... 12

b. Third Affirmative Defense – Unclean Hands ... 14

c. Eleventh Affirmative Defense – Good Faith ... 14

d. Thirteenth Affirmative Defense – Absence of Damages ... 16

G. Similar Statements for All Third Parties [L.R. 16-4.1(f)] ... 16

H. Anticipated Evidentiary Issues and Ironhawk's Position on Those Issues [L.R. 16-4.1(h)] ... 16

1. Irrelevant and Unsubstantiated Third-Party Use of "Smart Sync" ... 16

2. Improper Motive in Bringing Claims ... 17

3. Purported Fabrication of Evidence ... 18

4. Responses from Third Parties to Ironhawk's Cease and Desist Letters ... 18

5. Dropbox's Proposed Motions *in Limine* ... 19

I. Germaine Issues of Law and Ironhawk's Position on Those Issues [L.R. 16-4.1(i)] ... 21

III. BIFURCATION OF ISSUES [L.R. 16-4.3] ... 21

IV. JURY TRIAL [L.R. 16-4.4] ... 21

V. ATTORNEYS' FEES [L.R. 16-4.5] ... 21

# TABLE OF CONTENTS
**(Continued)**

**Page**

VI. ABANDONMENT OF ISSUES [L.R. 16-4.6] ... 21

# TABLE OF AUTHORITIES

Page

## FEDERAL CASES

*Adidas Am., Inc. v. TRB Acquisitions LLC*, 2017 WL 337983 (D. Or. Jan. 23, 2017) .......... 9

*Adidas-America, Inc. v. Payless Shoesource, Inc.*, 546 F. Supp. 2d 1029 (D. Or. 2008) .......... 9

*Chiron Corp. v. Genentech, Inc.*, 268 F. Supp. 2d 1117 (E.D. Cal. 2002) .......... 9

*Coach, Inc. v. Kmart Corps.*, 756 F. Supp. 2d 421 (S.D.N.Y. 2010) .......... 9

*Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182 (Fed. Cir. 1998) .......... 9

*Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger, U.S.A., Inc.*, 80 F.3d 749 (2d Cir. 1996) .......... 9

*International Order of Job's Daughters v. Lindbeburg & Co.*, 633 F.2d 912 (9th Cir. 1980) .......... 4

*Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628 (9th Cir. 2007) .......... 4

*Monster Energy Co. v. Thunder Beast LLC*, 2018 WL 6431010 (C.D. Cal. Oct. 22, 2018) .......... 9

*POM Wonderful LLC v. Coca Cola Co.*, 166 F. Supp. 3d 1085 (C.D. Cal. 2016) .......... 9

*Yurman Design, Inc. v. Golden Treasure Imports, Inc.*, 275 F.Supp.2d 506, *recon. denied*, 218 F.R.D. 396 (S.D.N.Y. 2003) .......... 9

## FEDERAL STATUTES

15 U.S.C. § 1117(a) .......... 21

Lanham Act (15 U.S.C. § 1051, et seq.) .......... 3, 4, 21

## I. INTRODUCTION

Dropbox chose to move forward with the Smart Sync name for its data management software with full knowledge that Ironhawk had sold its competing data management software under the SmartSync® mark for nearly 15 years. Dropbox's actions establish it as a trademark bully with all the hubris of a large company used to getting its way. Nonetheless, Dropbox is unwavering, and has contended that it—not Ironhawk—is the victim here.

But as one might expect, given the similarity of Dropbox's product name and the relevant industries, the majority of Dropbox's defenses fail and should be dismissed as mere sideshows. Thus, the main decisions the Court has to make as to the impending trial is to what extent Dropbox will be allowed to obfuscate and paint Ironhawk as a bad actor, instead of focusing on the material issues to be tried, likelihood of confusion, the amount of damages resulting from Dropbox's infringement, and Dropbox's level of intent. None of Dropbox's theories have merit:

- Dropbox asserts that third-party use of the SmartSync® mark is widespread, weakening the mark. But notably, Dropbox did not serve discovery requests to nor depose a single representative from any purported third-party user of the mark. Dropbox is thus left unable to establish the relevance of any such use. And this is no mistake. The third-party uses cited by Dropbox include adjustable beds, waterfall lighting systems, and music-related software, among other clearly unrelated uses, and Dropbox's theory would crumble under questioning of a party with personal knowledge as to the use.

- Dropbox asserts that Ironhawk has an improper motive in filing this lawsuit, that it is seeking to extort Dropbox as another revenue source because Ironhawk is arguably a failing company. But this argument misses the obvious—it is Dropbox that necessitated this action by adopting Ironhawk's long-standing SmartSync® mark with knowledge of Ironhawk's ownership of the same, and the large majority of civil lawsuits are brought seeking either injunctive relief or

monetary redress for harm suffered. There is nothing untoward in Ironhawk doing the same here.

- Similarly, Dropbox asserts that Ironhawk's "dishonest" motives are somehow evidenced by its CEO, Mr. Gomes, penning draft e-mails documenting actual confusion after Dropbox's release of Smart Sync. Again, third-party testimony confirms that Ironhawk's business partners requested such concerns be confirmed in writing, and there is nothing untoward about documenting genuine actual confusion when one's intellectual property has been infringed. Nonetheless, Ironhawk does not even intend to offer such e-mails as evidence in trial. It will instead offer testimony of third-party witnesses with personal knowledge of actual confusion.

- Dropbox takes issue with every measure of damage for Ironhawk's injury. Ironhawk seeks a reasonable royalty, disgorgement of profits, and punitive damages and attorneys' fees should the facts ultimately presented at trial support awarding the same. Dropbox has already filed a motion challenging Ironhawk's damages expert, and apparently intends to file further motions to preclude Ironhawk from seeking a reasonable royalty, disgorgement of profits, and punitive damages. Dropbox's position is clear—even if the jury finds that it has infringed Ironhawk's mark, Dropbox does not believe it should have to pay a penny for the damage it has caused to Ironhawk. Ironhawk disagrees.

As set forth in Ironhawk's Motions *in Limine*, the majority of the evidence cited in support of these arguments is inadmissible. And Dropbox's failure to establish a foundation for the greatly overstated third-party use of SmartSync® renders such evidence inadmissible.

Ironhawk respectfully puts forward that the Court should not allow Dropbox to turn the impending trial into a circus with its numerous sideshow arguments. Instead, the trial should focus on the key factual issues in dispute, likelihood of confusion, the amount of damages resulting from Dropbox's infringement, and

Dropbox's level of intent. Given the similarity of the marks, the relevant industries, and evidence showing Dropbox's ill-intent towards Ironhawk, Ironhawk eagerly awaits trial for this matter and the jury's verdict.

## II. CLAIMS AND DEFENSES [L.R.16-4.1]

Ironhawk has sued Dropbox for (a) trademark infringement under the Lanham Act, and (b) unfair competition under California common law.

### A. Summary Statement of Claims Ironhawk Plans to Pursue [L.R. 16-4.1(a)]

#### 1. First Claim for Relief – Violation of the Lanham Act (15 U.S.C. § 1051, et seq.)

Ironhawk alleges that Dropbox's use of Smart Sync as a name for its data management software infringes upon Ironhawk's SmartSync® trademark under which Ironhawk markets its own data management software, in violation of the Lanham Act, 15 U.S.C. § 1051, et seq.

#### 2. Second Claim for Relief – Common Law Unfair Competition Under California Law

Ironhawk alleges that Dropbox's infringing use of Smart Sync further constitutes unfair competition under California common law.

### B. Elements Required to Establish Ironhawk's Claims [L.R. 16-4.1(b)]

#### 1. First Claim for Relief – Violation of the Lanham Act (15 U.S.C. § 1051, *et seq.*)

To establish a claim for trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1051, et seq., Ironhawk must demonstrate the following:

1. SmartSync® is a valid, protectable trademark;

2. the plaintiff owns SmartSync® as a trademark; and

3. the defendant used Smart Sync without the consent of the plaintiff in a manner that is likely to cause confusion among ordinary consumers as to the source, sponsorship, affiliation, or approval of the goods.

*See* 9th Cir. Civ. Jury Inst. (2017) Instr. No. 15.6.

**2. Second Claim for Relief – Common Law Unfair Competition**

To establish a claim for common law unfair competition under California law, Ironhawk must satisfy the same elements as required to establish a claim for trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1051, et seq. *Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 632 (9th Cir. 2007) ("All of Mattel's infringement claims are subject to the same test"); *International Order of Job's Daughters v. Lindbeburg & Co.*, 633 F.2d 912, 916 (9th Cir. 1980) (elements of state law unfair competition and unfair competition under federal Lanham Act are "substantially congruent").

**C. Brief Description of Key Evidence in Support of Ironhawk's Claims [L.R. 16-4.1(c)]**

**1. First Claim for Relief – Violation of the Lanham Act (15 U.S.C. § 1051, *et seq.*)**

The key evidence that Ironhawk will introduce in support of its claim for trademark infringement includes, without limitation:

- Evidence, including e-mails, correspondence, documents, and testimony demonstrating the history of Ironhawk and the SmartSync® software, including but not limited to SmartSync®'s technical characteristics and the historical and current sales, marketing, and customers of SmartSync®.
- Evidence, including e-mails, correspondence, documents, and testimony showing Ironhawk has marketed its data management software under the SmartSync trademark continuously since 2004.
- Evidence, including e-mails, correspondence, documents, and testimony demonstrating Ironhawk's process in creating the SmartSync name.
- Evidence, including e-mails, correspondence, documents, and

testimony demonstrating Ironhawk applied for and received a federal trademark registration for SmartSync®, without proof of secondary meaning.

- Evidence, including e-mails, correspondence, documents, and testimony demonstrating the name recognition and value of the SmartSync® mark.
- Evidence, including e-mails, correspondence, documents, and testimony demonstrating that Oppenheimer & Co. ("Oppenheimer") introduced Ironhawk to Dropbox as a potential acquisition target, that there was a pitch call with representatives of Ironhawk and Dropbox, and Dropbox thereafter internally discussed and considered an acquisition of Ironhawk and SmartSync®.
- Evidence, including e-mails, correspondence, documents, and testimony demonstrating that Dropbox destroyed key evidence concerning such deliberations.
- Evidence, including e-mails, correspondence, documents, and testimony concerning Dropbox's internal process in selecting the Smart Sync name, including but not limited to the actions of Dropbox's in-house legal team and Dropbox's prior knowledge of Ironhawk's SmartSync® mark.
- Evidence, including e-mails, correspondence, documents, and testimony demonstrating Dropbox's intent when selecting the Smart Sync name.
- Evidence, including e-mails, correspondence, documents, and testimony concerning the technical characteristics and nature of Dropbox's Smart Sync feature.
- Evidence, including e-mails, correspondence, documents, and testimony demonstrating the nature and extent Dropbox's use of Smart

Sync in the marketplace.

- Evidence, including e-mails, correspondence, documents, and testimony demonstrating the nature and extent of Dropbox's advertising and marketing of its Smart Sync, including but not limited to SEO and SEM.
- Evidence, including e-mails, correspondence, documents, expert reports, and testimony demonstrating the strength of the Dropbox mark and the strength of the association between "Dropbox" and "Smart Sync."
- Evidence, including e-mails, correspondence, documents, expert reports, and testimony demonstrating the strength of the Dropbox's Smart Sync mark.
- Evidence, including e-mails, correspondence, documents, and testimony showing instances of actual confusion between Ironhawk's SmartSync® and Dropbox's Smart Sync.
- Evidence, including e-mails, correspondence, documents, and testimony concerning Ironhawk's attempts to market SmartSync® in the commercial sector and demonstrating that Dropbox's use of Smart Sync has devastated those efforts.
- Evidence, including e-mails, correspondence, documents, and testimony showing that Dropbox's use of Smart Sync has damaged the value of Ironhawk's SmartSync® mark.
- Evidence, including e-mails, correspondence, documents, reports and testimony concerning the importance of the Smart Sync feature to Dropbox's sales.
- Evidence, including e-mails, correspondence, documents, reports and testimony demonstrating Dropbox's revenues, amount of paid users by plan, and feature offerings by plan, particularly which plans offer Smart

Sync.

- Daniel Cislo's expert testimony concerning Ironhawk's registration process for its Smart Sync® mark, Dropbox's clearance process, and Dropbox's commercial use of Smart Sync as a mark.
- Jessie Stricchiola's expert testimony concerning the online presence of Dropbox's Smart Sync and exposure to those looking for SmartSync® online.
- Robert Wunderlich's expert testimony concerning the reasonable royalty and amount of disgorged profits required to compensate Ironhawk for the injury caused by Dropbox's actions.
- Hal Poret's expert report and testimony that survey respondents strongly link "Smart Sync" to Dropbox.
- Dr. Pham's expert report and testimony that consumers are likely to associate "Smart Sync" with Dropbox.

**2. Second Claim for Relief – Common Law Unfair Competition Under California Law**

The key evidence that Ironhawk will introduce in support of its claim for common law unfair competition under California law is the same as the evidence it will introduce in support of its claim for trademark infringement.

**D. Summary of Counterclaims and Affirmative Defenses Dropbox Plans to Pursue at Trial [L.R. 16-4.1(d)]**

Dropbox alleged the following counterclaims and affirmative defenses.

**1. Counterclaims**

Dropbox seeks declaratory relief that its use of Smart Sync is descriptive.

**2. Affirmative Defenses**

Although Dropbox alleged a number of purported affirmative defenses, Dropbox's interrogatory responses discuss only the below affirmative defenses, and Ironhawk presumes the remaining affirmative defenses (many of which are not even

actual affirmative defenses) have been abandoned.

**a. Second Affirmative Defense – Fair Use**

Dropbox asserted that the claims of the Complaint are barred, in whole or in part, by the doctrine of fair use because Dropbox does not use the phrase "Smart Sync" as a trademark but rather as a descriptive term.

**b. Third Affirmative Defense – Unclean Hands**

Dropbox asserted that the claims of the Complaint are barred, in whole or in part, by the doctrine of unclean hands.

**c. Eleventh Affirmative Defense – Good Faith**

Dropbox asserted that the claims of the Complaint are barred, in whole or in part, by the doctrine of good faith because Dropbox acted reasonably and in good faith at all times relevant to the acts complained of in the Complaint.

**d. Thirteenth Affirmative Defense – Absence of Damages**

Dropbox asserted that the claims of the Complaint are barred, in whole or in part, because Ironhawk has not suffered any loss or damages as a result of the alleged acts or omissions of Dropbox.

**E. Elements Required to Establish Dropbox's Counterclaims and Affirmative Defenses [L.R. 16-4.1(e)]**

**1. Counterclaims**

For Dropbox to establish that its use of Smart Sync is descriptive (i.e. fair use), Dropbox must demonstrate that it:

1. used Smart Sync other than as a trademark;
2. used Smart Sync fairly and in good faith; and
3. used Smart Sync only to describe Dropbox's goods or services.

9th Cir. Civ. Jury Inst. (2017) Instr. No. 15.24.

**2. Affirmative Defenses**

**a. Second Affirmative Defense – Fair Use**

Dropbox must show that it: (1) used Smart Sync other than as a trademark;

(2) used Smart Sync fairly and in good faith; and (3) used Smart Sync only to describe Dropbox's goods or services. 9th Cir. Civ. Jury Inst. (2017) Instr. No. 15.24.

**b. Third Affirmative Defense – Unclean Hands**

Dropbox must show that: (1) Ironhawk's conduct is inequitable; and (2) the conduct relates to the subject matter of Ironhawk's claims. *See POM Wonderful LLC v. Coca Cola Co.*, 166 F. Supp. 3d 1085, 1092 (C.D. Cal. 2016). The manner in which Ironhawk has pursued its claim or filed this lawsuit cannot form the basis of an unclean hands defense. *Monster Energy Co. v. Thunder Beast LLC*, 2018 WL 6431010, *3 (C.D. Cal. Oct. 22, 2018); *Adidas Am., Inc. v. TRB Acquisitions LLC*, 2017 WL 337983, at *8 (D. Or. Jan. 23, 2017); *Coach, Inc. v. Kmart Corps.*, 756 F. Supp. 2d 421, 429 (S.D.N.Y. 2010); *Yurman Design, Inc. v. Golden Treasure Imports, Inc.*, 275 F.Supp.2d 506, 518, *recon. denied*, 218 F.R.D. 396 (S.D.N.Y. 2003).

**c. Eleventh Affirmative Defense – Good Faith**

Good faith is not a defense to liability for trademark infringement. However, to the extent that Dropbox refers to its asserted reliance on advice of counsel as a defense to a finding of willfulness, Dropbox must show that: (1) Dropbox disclosed all material facts to its lawyer before the advice was given; (2) what the lawyer's advice was, (3) that the lawyer's advice was communicated to someone within Dropbox that had decision-making authority to rely upon the advice; and (4) that Dropbox in fact followed the advice in good faith. *Chiron Corp. v. Genentech, Inc.*, 268 F. Supp. 2d 1117, 1121–25 (E.D. Cal. 2002); *Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1191 (Fed. Cir. 1998); *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger, U.S.A., Inc.*, 80 F.3d 749, 754 (2d Cir. 1996); *adidas-America, Inc. v. Payless Shoesource, Inc.*, 546 F. Supp. 2d 1029, 1047 (D. Or. 2008).

**d. Thirteenth Affirmative Defense – Absence of Damages**

This is not in fact an affirmative defense such that it has any elements, but

instead an element of Ironhawk's affirmative claim for damages.

**F. Key Evidence Relied on in Opposition to Each Counterclaim or Affirmative Defense [L.R. 16-4.1(f)]**

**1. Counterclaim**

The key evidence that Ironhawk will introduce in opposition to Dropbox's counterclaim that its use of Smart Sync is descriptive fair use is, without limitation:

- Evidence, including e-mails, correspondence, documents, and testimony demonstrating that Oppenheimer & Co. ("Oppenheimer") introduced Ironhawk to Dropbox as a potential acquisition target, that there was a pitch call with representatives of Ironhawk and Dropbox, and Dropbox thereafter internally discussed and considered an acquisition of Ironhawk and SmartSync®.
- Evidence, including e-mails, correspondence, documents, and testimony demonstrating that Dropbox destroyed key evidence concerning such deliberations.
- Evidence, including e-mails, correspondence, documents, and testimony concerning Dropbox's internal process in selecting the Smart Sync name, including but not limited to the actions of Dropbox's in-house legal team and Dropbox's prior knowledge of Ironhawk's SmartSync® mark.
- Evidence, including e-mails, correspondence, documents, and testimony demonstrating Dropbox's intent when selecting the Smart Sync name.
- Evidence, including e-mails, correspondence, documents, and testimony concerning the technical characteristics and nature of Dropbox's Smart Sync feature.
- Evidence, including e-mails, correspondence, documents, and testimony demonstrating the nature and extent Dropbox's use of Smart

Sync in the marketplace.

- Evidence, including e-mails, correspondence, documents, and testimony demonstrating the nature and extent of Dropbox's advertising and marketing of its Smart Sync, including but not limited to SEO and SEM.
- Evidence, including e-mails, correspondence, documents, expert reports, and testimony demonstrating the strength of the Dropbox mark and the strength of the association between "Dropbox" and "Smart Sync."
- Evidence, including e-mails, correspondence, documents, expert reports, and testimony demonstrating the strength of the Dropbox's Smart Sync mark.
- Evidence, including e-mails, correspondence, documents, and testimony showing instances of actual confusion between Ironhawk's SmartSync® and Dropbox's Smart Sync.
- Evidence, including e-mails, correspondence, documents, and testimony concerning Ironhawk's attempts to market SmartSync® in the commercial sector and demonstrating that Dropbox's use of Smart Sync has devastated those efforts.
- Evidence, including e-mails, correspondence, documents, and testimony showing that Dropbox's use of Smart Sync has damaged the value of Ironhawk's SmartSync® mark.
- Evidence, including e-mails, correspondence, documents, reports and testimony concerning the importance of the Smart Sync feature to Dropbox's sales.
- Daniel Cislo's expert testimony concerning Dropbox's commercial use of Smart Sync as a mark.
- Jessie Stricchiola's expert testimony concerning the online presence of

Dropbox's Smart Sync and exposure to those looking for SmartSync® online.

**2. <u>Affirmative Defenses</u>**

**a. <u>Second Affirmative Defense – Fair Use</u>**

The key evidence that Ironhawk will introduce in opposition to Dropbox's affirmative defense for fair use, without limitation:

- Evidence, including e-mails, correspondence, documents, and testimony demonstrating that Oppenheimer & Co. ("Oppenheimer") introduced Ironhawk to Dropbox as a potential acquisition target, that there was a pitch call with representatives of Ironhawk and Dropbox, and Dropbox thereafter internally discussed and considered an acquisition of Ironhawk and SmartSync®.
- Evidence, including e-mails, correspondence, documents, and testimony demonstrating that Dropbox destroyed key evidence concerning such deliberations.
- Evidence, including e-mails, correspondence, documents, and testimony concerning Dropbox's internal process in selecting the Smart Sync name, including but not limited to the actions of Dropbox's in-house legal team and Dropbox's prior knowledge of Ironhawk's SmartSync® mark.
- Evidence, including e-mails, correspondence, documents, and testimony demonstrating Dropbox's intent when selecting the Smart Sync name.
- Evidence, including e-mails, correspondence, documents, and testimony concerning the technical characteristics and nature of Dropbox's Smart Sync feature.
- Evidence, including e-mails, correspondence, documents, and testimony demonstrating the nature and extent Dropbox's use of Smart

Sync in the marketplace.

- Evidence, including e-mails, correspondence, documents, and testimony demonstrating the nature and extent of Dropbox's advertising and marketing of its Smart Sync, including but not limited to SEO and SEM.
- Evidence, including e-mails, correspondence, documents, expert reports, and testimony demonstrating the strength of the Dropbox mark and the strength of the association between "Dropbox" and "Smart Sync."
- Evidence, including e-mails, correspondence, documents, expert reports, and testimony demonstrating the strength of the Dropbox's Smart Sync mark.
- Evidence, including e-mails, correspondence, documents, and testimony showing instances of actual confusion between Ironhawk's SmartSync® and Dropbox's Smart Sync.
- Evidence, including e-mails, correspondence, documents, and testimony concerning Ironhawk's attempts to market SmartSync® in the commercial sector and demonstrating that Dropbox's use of Smart Sync has devastated those efforts.
- Evidence, including e-mails, correspondence, documents, and testimony showing that Dropbox's use of Smart Sync has damaged the value of Ironhawk's SmartSync® mark.
- Evidence, including e-mails, correspondence, documents, reports and testimony concerning the importance of the Smart Sync feature to Dropbox's sales.
- Daniel Cislo's expert testimony concerning Dropbox's commercial use of Smart Sync as a mark.
- Jessie Stricchiola's expert testimony concerning the online presence of

Dropbox's Smart Sync and exposure to those looking for SmartSync® online.

**b. <u>Third Affirmative Defense – Unclean Hands</u>**

As a threshold matter, Dropbox has zero evidence to even arguably support an unclean hands defense, which is Dropbox's burden. Nonetheless, the following is the key evidence that Ironhawk will introduce in opposition to Dropbox's affirmative defense for unclean hands, without limitation:

- Evidence, including e-mails, correspondence, documents, and testimony demonstrating the history of Ironhawk and the SmartSync® software, including but not limited to SmartSync®'s technical characteristics and the historical and current sales, marketing, and customers of SmartSync®.
- Evidence, including e-mails, correspondence, documents, and testimony showing Ironhawk has marketed its data management software under the SmartSync trademark continuously since 2004.
- Evidence, including e-mails, correspondence, documents, and testimony demonstrating Ironhawk's process in creating the SmartSync name.
- Evidence, including e-mails, correspondence, documents, and testimony demonstrating Ironhawk applied for and received a federal trademark registration for SmartSync®, without proof of secondary meaning.

**c. <u>Eleventh Affirmative Defense – Good Faith</u>**

The key evidence that Ironhawk will introduce in opposition to Dropbox's affirmative defense for good faith, without limitation, is as follows:

- Evidence, including e-mails, correspondence, documents, and testimony demonstrating the history of Ironhawk and the SmartSync® software, including but not limited to SmartSync®'s technical

characteristics and the historical and current sales, marketing, and customers of SmartSync®.

- Evidence, including e-mails, correspondence, documents, and testimony showing Ironhawk has marketed its data management software under the SmartSync trademark continuously since 2004.
- Evidence, including e-mails, correspondence, documents, and testimony demonstrating Ironhawk applied for and received a federal trademark registration for SmartSync®, without proof of secondary meaning.
- Evidence, including e-mails, correspondence, documents, and testimony demonstrating the name recognition and value of the SmartSync® mark.
- Evidence, including e-mails, correspondence, documents, and testimony demonstrating that Oppenheimer & Co. ("Oppenheimer") introduced Ironhawk to Dropbox as a potential acquisition target, that there was a pitch call with representatives of Ironhawk and Dropbox, and Dropbox thereafter internally discussed and considered an acquisition of Ironhawk and SmartSync®.
- Evidence, including e-mails, correspondence, documents, and testimony demonstrating that Dropbox destroyed key evidence concerning such deliberations.
- Evidence, including e-mails, correspondence, documents, and testimony concerning Dropbox's internal process in selecting the Smart Sync name, including but not limited to the actions of Dropbox's in-house legal team and Dropbox's prior knowledge of Ironhawk's SmartSync® mark.
- Evidence, including e-mails, correspondence, documents, and testimony demonstrating Dropbox's intent when selecting the Smart

Sync name.

- Evidence, including e-mails, correspondence, documents, and testimony concerning the technical characteristics and nature of Dropbox's Smart Sync feature.
- Evidence, including e-mails, correspondence, documents, and testimony demonstrating the nature and extent Dropbox's use of Smart Sync in the marketplace.
- Evidence, including e-mails, correspondence, documents, and testimony demonstrating the nature and extent of Dropbox's advertising and marketing of its Smart Sync, including but not limited to SEO and SEM.
- Daniel Cislo's expert testimony concerning Dropbox's clearance process, and Dropbox's commercial use of Smart Sync as a mark.

**d. Thirteenth Affirmative Defense – Absence of Damages**

Because this is not in fact an affirmative defense, Ironhawk will not introduce evidence in opposition, but rely on the evidence presented in support of its affirmative claims, referenced above.

**G. Similar Statements for All Third Parties [L.R. 16-4.1(f)]**

Not applicable.

**H. Anticipated Evidentiary Issues and Ironhawk's Position on Those Issues [L.R. 16-4.1(h)]**

**1. Irrelevant and Unsubstantiated Third-Party Use of "Smart Sync"**

Based on a review of Dropbox's exhibit list and witness list, it is clear that Dropbox will attempt to introduce numerous examples of irrelevant and unsubstantiated third-party use of "smart sync" variants. This issue is briefed in full in Ironhawk's Motions *in Limine* Nos. 1 and 2, but Ironhawk provides a summary of the issue here:

Such evidence is irrelevant and inadmissible without foundation demonstrating the nature and extent of the third-party use, particularly that the use is in the same industry as Ironhawk's SmartSync®. Ironhawk further understands that Dropbox will attempt to use its marketing expert witness, Dr. Pham, as an end-run around to this evidence's inadmissibility by arguing that Dr. Pham reviewed such evidence in forming his opinions, and must disclose it to the jury. That argument is without merit.

Dropbox failed to depose, serve discovery upon, or identify in its witness list a single purported third-party user of "smart sync." This is no accident—there are few if any even arguable third-party uses of "smart sync" variants within Ironhawk's industry, and Dropbox's purported third-party uses—e.g., adjustable beds and clock synchronization programs—crumble under examination. Thus, it would be highly prejudicial to allow to allow Dropbox to introduce such evidence without foundation and as hearsay through unrelated witnesses, depriving Ironhawk any ability to cross-examine those with actual knowledge on the issue. And allowing Dropbox's expert to review and then parrot such hearsay evidence to the jury would only exacerbate such prejudice.

**2. <u>Improper Motive in Bringing Claims</u>**

Based on a review of Dropbox's exhibit list and witness list, it is further apparent that Dropbox will seek to introduce evidence, testimony, and argument that Ironhawk had an improper motive in bringing this lawsuit—that, despite Ironhawk's registration of the SmartSync® mark and Dropbox's knowing use of the same name for a similar product, Dropbox intends to claim that Ironhawk, a failing or struggling business with sagging revenues (according to Dropbox), has only brought this action as part of a pattern of extortion, to obtain a "windfall" or make money, or as a "revenue source." This issue is briefed in full in Ironhawk's Motion *in Limine* No. 3, but Ironhawk provides a summary of the issue here:

Ironhawk's motive in bringing this action is wholly irrelevant, as motive or

plaintiff's intent not an element of its claims for trademark infringement and common law unfair competition. Nor it is probative to Dropbox's unclean hands defense. As discussed *supra*, the manner in which Ironhawk has pursued its claim or filed this lawsuit cannot form the basis of an unclean hands defense. And allowing Dropbox to present this evidence would be highly prejudicial and misleading to the jury.

**3. <u>Purported Fabrication of Evidence</u>**

Based on a review of Dropbox's exhibit list, Dropbox also intends to introduce evidence, argument, and testimony that forwards a false narrative that Ironhawk has fabricated evidence—*e.g.*, certain e-mails expressing actual confusion. This issue is briefed in full in Ironhawk's Motion *in Limine* No. 4, but Ironhawk provides a summary of the issue here:

This too is not relevant to this action. It is false and not supported by the facts, and thus is not probative. Nor does Ironhawk even intend to introduce the e-mails into evidence at trial, rather intending to rely on witness testimony. In addition, as discussed *supra*, the matter the manner in which Ironhawk has pursued its claim or filed this lawsuit cannot form the basis of an unclean hands defense. Lastly, there is no doubt that this false narrative would be highly prejudicial to Ironhawk, would mislead the jury, and would be time consuming—a veritable mini-trial would need to be conducted as to the manner of drafting the emails and their truthfulness.

**4. <u>Responses from Third Parties to Ironhawk's Cease and Desist Letters</u>**

Lastly, based on a review of Dropbox's exhibit list, it appears that Dropbox may attempt to introduce responses from third parties to cease and desist letters, including attorney argument made by third parties in defense of allegations that such third parties infringe upon the SmartSync® mark. This issue is briefed in full in Ironhawk's Motion *in Limine* Nos. 5, but Ironhawk provides a summary of the issue here:

Statements made by third parties in response to cease and desist letters sent by Ironhawk would be offered for the truth of the matter asserted, and thus are inadmissible hearsay. That is, the responses include, *e.g.*, out-of-court statements that the SmartSync® mark is weak, or that use of Ironhawk's mark for a product that is not sold in a standalone manner does not constitute infringement. Dropbox makes both arguments and would thus be offering said statements for the truth of those propositions. Notably, the declarants for these statements do not appear on Dropbox's witness list.

Further, these responses to Ironhawk's cease and desist letters should be excluded pursuant to Rule 403. That is, the responses would confuse the jury into thinking that Ironhawk's disputes with third parties are relevant to this case, mislead and confuse the jury where the statements misstate the law, thus invading the province of the Judge, and lead to undue delay and waste of time.

### 5. <u>Dropbox's Proposed Motions *in Limine*</u>

Dropbox has alluded to at least six motions *in limine* in meet and confer communications, despite having already filed two of its five allowed motions to exclude, moving to exclude the expert testimony of Mr. Cislo and Dr. Wunderlich. Because those motions have not been filed, and Ironhawk is only vaguely informed of their subject matter, Ironhawk addresses them in summary manner:

- Dropbox argues that Ironhawk has waived its ability to seek punitive damages based upon an alleged failure to raise such damages in a pre-trial meet and confer conference and had somehow waived punitive damages in discovery. Ironhawk disputes that it has ever waived its right to seek punitive damages, sought such damages in its Complaint, and will brief such issue should Dropbox file such a motion *in limine*.
- Dropbox argues that testimony from Ironhawk officers David Gomes and Rupinder Gill concerning actual confusion is hearsay. Ironhawk cannot fully respond without reference to particular statements, but

believes that such testimony can be offered as non-hearsay, and to the extent any such testimony constitutes hearsay, will fit into an applicable hearsay exception.

- Dropbox argues that its financial information and any argument that Dropbox should pay Ironhawk because it can afford to do so as a large corporation should be excluded. Ironhawk must reserve any final position until it has seen Dropbox's papers, but would initially respond that while it does not intend to argue "Dropbox should pay simply because it can," that the size, revenue, and brand recognition of Dropbox and its Smart Sync is highly relevant to Ironhawk's reverse confusion theory.
- Dropbox argues that Ironhawk's argument that it is entitled to a reasonable royalty should be excluded. From Ironhawk's understanding of this motion, it appears to be duplicative of Ironhawk's motion to exclude Dr. Wunderlich's testimony on this point, already briefed before the Court.
- Dropbox argues that Ironhawk's screenshots from the GSA website showing that third parties sell Dropbox's paid plans to government purchasers lack foundation. Ironhawk submits that it will lay appropriate foundation for such exhibits at trial—Ironhawk affiliated witnesses have knowledge of the creation of such screenshots and the actual sale of Dropbox to the government through third parties, and Dropbox witnesses presumably have knowledge of its relationship with third party resellers.
- Dropbox argues that any exhibits or witnesses not previously disclosed in discovery must be excluded. Ironhawk is not aware what exhibits or witnesses Dropbox believes are objectionable, but any limited additions by Ironhawk have been for newly discovered/created evidence or do

not prejudice Dropbox in any way.

**I. Germaine Issues of Law and Ironhawk's Position on Those Issues [L.R. 16-4.1(i)]**

The key legal disputes regarding the claims of the parties are set forth in the pleadings and briefings on the parties' respective motions for summary judgment, which are to be heard by the Court on September 23, 2019. Accordingly, Ironhawk refers to and incorporates by reference the legal arguments set forth in the parties' motions for summary judgment and briefing thereon.

## III. BIFURCATION OF ISSUES [L.R. 16-4.3]

Ironhawk does not request the bifurcation of any issues.

## IV. JURY TRIAL [L.R. 16-4.4]

Both parties timely requested a jury trial in their pleadings.

The remaining non-jury issues are: (1) Ironhawk's request for injunctive relief; (2) Ironhawk's equitable affirmative defenses to Dropbox's counterclaim; and (3) any equitable affirmative defenses that Dropbox may pursue.

## V. ATTORNEYS' FEES [L.R. 16-4.5]

Ironhawk believes that it will be entitled to attorneys' fees, as this shall prove to be an "exceptional case" under the Lanham Act, given the brazenness of Dropbox's conduct in infringing upon Ironhawk's SmartSync® mark. 15 U.S.C. § 1117(a).

## VI. ABANDONMENT OF ISSUES [L.R. 16-4.6]

Ironhawk has not abandoned any claims or affirmative defenses.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

Dated: September 16, 2019

BROWNE GEORGE ROSS LLP
Keith J. Wesley
Lori Sambol Brody
Matthew L. Venezia

By: */s/ Matthew L. Venezia*
Matthew L. Venezia
Attorneys for Plaintiff and Counterdefendant Ironhawk Technologies, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of September, 2019, I electronically filed the foregoing **PLAINTIFF IRONHAWK TECHNOLOGIES, INC.'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW [L.R. 16-4]** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

## SERVICE LIST

***Ironhawk Technologies, Inc. vs. Dropbox, Inc.***
**USDC CD CA Case No. 2:18-cv-01481-DDP(JEMx)**

Jennifer Lee Taylor
Sabrina A. Larson
Esther Kim Chang
Nicolas T. Herrera
Joyce Liou
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105
Telephone: 415.268.7000
Facsimile: 415.268.7522
Email: jtaylor@mofo.com
slarson@mofo.com
echang@mofo.com
nherrera@mofo.com
jliou@mofo.com
Dropbox_MoFo@mofo.com

Attorneys for Defendant and Counterclaimant Dropbox, Inc.

Wendy J. Ray
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, California 90017
Telephone: 213.892.5200
Facsimile: 213.892.5454
Email: wray@mofo.com

Nicholas Ham
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, California 94304
Telephone: 650.813.5600
Facsimile: 650.494.0792
E-mail: nham@mofo.com

Attorney for Third Parties

Jeffrey M. Davidson
Matthew Q. Verdin
Rebecca A. Jacobs
Clara J. Shin
COVINGTON & BURLING LLP
415 Mission Street, Suite 5400
San Francisco, California 94105
Telephone: 415-591-6000
Facsimile: 415-591-6091
E-mail: jdavidson@cov.com
rjacobs@cov.com
cshin@cov.com
mverdin@cov.com

Attorneys for Defendant and Counterclaimant Dropbox, Inc.

Andrea A. Augustine