BROWNE GEORGE ROSS LLP
Keith J. Wesley (State Bar No. 229276)
  kwesley@bgrfirm.com
Lori Sambol Brody (State Bar No. 150545)
  lbrody@bgrfirm.com
Matthew L. Venezia (State Bar No. 313812)
  mvenezia@bgrfirm.com
2121 Avenue of the Stars, Suite 2800
Los Angeles, California 90067
Telephone: (310) 274-7100
Facsimile: (310) 275-5697

Attorneys for Plaintiff and Counterdefendant
Ironhawk Technologies, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| IRONHAWK TECHNOLOGIES, INC., a Delaware Corporation,<br><br>    Plaintiff and Counterdefendant,<br><br>  vs.<br><br>DROPBOX, INC., a Delaware corporation,<br><br>    Defendant and Counterclaimant. | Case No. 2:18-cv-01481-DDP-JEM<br>Hon. Dean D. Pregerson<br><br>**PLAINTIFF AND COUNTER-DEFENDANT IRONHAWK TECHNOLOGIES, INC. [PROPOSED] JURY INSTRUCTIONS**<br><br><br>Trial Date:  October 22, 2019<br>Final Pre-Trial Conf. :  October 7, 2019 |

1347943.1

# INDEX

| Inst. No. | Title | Source | Page |
|---|---|---|---|
| 1. | CLAIMS AND DEFENSES | 9th Cir. CJI 1.5 (2017) | 1 |
| 2. | PRELIMINARY INSTRUCTION—TRADEMARK | 9th Cir. CJI 15.1 (2017) | 5 |
| 3. | DEFINITION—TRADEMARK (15 U.S.C. § 1127) | 9th Cir. CJI 15.2 (2017) | 9 |
| 4. | INFRINGEMENT—ELEMENTS AND BURDEN OF PROOF—TRADEMARK (15 U.S.C. § 1114(1)) | 9th Cir. CJI 15.6 (2017) | 12 |
| 5. | INFRINGEMENT—LIKELIHOOD OF CONFUSION—FACTORS—SLEEKCRAFT TEST (15 U.S.C. §§ 1114(1) and 1125(a)) | 9th Cir. CJI 15.18 (2017) | 15 |
| 6. | STRENGTH OF TRADEMARK IN RELATION TO REVERSE CONFUSION | Specially prepared | 19 |
| 7. | THIRD-PARTY USE | Specially prepared | 23 |
| 8. | COMMON LAW UNFAIR COMPETITION | Specially prepared | 28 |
| 9. | TRADEMARK DAMAGES—PLAINTIFF'S ACTUAL DAMAGES (15 U.S.C. § 1117(a)) | 9th Cir. CJI 15.27 (2017) (Modified) | 32 |
| 10. | TRADEMARK DEMAGES—DEFENDANT'S PROFITS (15 U.S.C. § 1117(a)) | 9th Cir. CJI 15.29 (2017) | 36 |
| 11. | ADVICE OF COUNSEL | Specially prepared | 39 |
| 12. | PUNITIVE DAMAGES | 9th Cir. CJI 5.5 (2017) | 43 |
| 13. | INFRINGEMENT – ELEMENTS – LIKELIHOOD OF CONFUSION – SOURCE, AFFILIATION, OR SPONSORSHIP | Specially prepared | 47 |
| 14. | TRADEMARK DAMAGES – DEFENDANT'S PROFITS - | Specially prepared | 50 |

1347943.1

| Inst. No. | Title | Source | Page |
|---|---|---|---|
| | WILLFULNESS | | |
| 15. | INFRINGEMENT – ELEMENTS – PRESUMED VALIDITY AND OWNERHSHIP – REGISTERED TRADEMARK (15 U.S.C §§ 1057, 1065 and 1115) | 9th Cir. CJI 15.8 (2017) | 54 |
| 16. | INFRINGEMENT – LIKELIHOOD OF CONFUSION – FACTOR – STRENGTH OF TRADEMARK | 9th Cir. CJI 15.19 (2017) | 58 |
| 17. | INFRINGEMENT – ELEMENTS – VALIDITY – DISTRINCTIVENESS – SECONDARY MEANING | 9th Cir. CJI 15.11 (2017) | 63 |

PLAINTIFF AND COUNTER-DEFENDANT IRONHAWK TECHNOLOGIES, INC.
[PROPOSED] JURY INSTRUCTIONS

## IRONHAWK'S PROPOSED JURY INSTRUCTION NO. 1.
### CLAIMS AND DEFENSES

To help you follow the evidence, I will give you a brief summary of the positions of the parties:

The plaintiff asserts that defendant's use of the name Smart Sync for its data management software infringes upon plaintiff's federally registered SmartSync® trademark, under which plaintiff sells its competing data management software. The plaintiff further asserts that defendant's conduct was and continues to be willful because defendant chose the name Smart Sync for its software with full knowledge that Ironhawk already owned the trademark for SmartSync®, having sold its software under that name for nearly fifteen years. Plaintiff further asserts that defendant intended to take advantage of the good will associated with the SmartSync® mark and/or put plaintiff out of business, or at minimum, acted with complete indifference to the harm it would cause to plaintiff by infringing upon its federally registered SmartSync® trademark. Lastly, plaintiff asserts that defendant's conduct constituted unfair competition and was malicious, oppressive or in reckless disregard of the plaintiff's rights. The plaintiff has the burden of proving these claims.

The defendant denies those claims and also seeks declaratory relief that its use of Smart Sync as the name for its data management software constitutes descriptive, non-trademark use. The defendant has the burden of proof on this counterclaim.

The plaintiff denies that defendant's use of Smart Sync as the name for its data management software constitutes descriptive, non-trademark use.

1347943.1

-1-

## <u>Ironhawk's Authority in Support of Instruction</u>

1,     This instruction is based upon the Ninth Circuit's model jury instruction, 9th Cir. Civ. Jury Inst. (2017) Instr. No. 1.5. This instruction thus comports with the Court's standing order to use Ninth Circuit model instructions where available.

2.     Ironhawk has only modified the instruction to insert relevant descriptions where called for in the model instruction. Dropbox's claims that Ironhawk's description of its claims is incorrect is unavailing, the model instruction calls for a description what Ironhawk asserts, and if the parties agreed as to the relevant facts, the impending trial may not have been necessary.

**<u>Dropbox's Objections to the Instruction</u>**

Dropbox objects to Ironhawk's Proposed Jury Instruction No. 1, which modifies Ninth Circuit Model Civil Jury Instruction § 1.5.  Dropbox's Proposed Jury Instruction No. 1, which is based on the same model jury instruction, should be given instead.  Dropbox's specific objections are as follows:

1.      The Instruction claims that Dropbox's conduct was "malicious, oppressive or in reckless disregard" of Ironhawk's rights.  This language is only conceivably pertinent to punitive damages.  However, Ironhawk should be precluded from seeking punitive damages at trial.  *See* Dkt. 190 (Dropbox's Motion in Limine No. 1).  This portion of the Instruction is improper.

2.      The Instruction also misstates the law by suggesting that "reckless disregard" is sufficient to obtain such damages.  Only Ironhawk's California claim permits an award of punitive damages.  *Duncan v. Stuetzle*, 76 F.3d 1480, 1490 (9th Cir. 1996) (holding that "punitive damages are not available under the Lanham Act").  "'[R]eckless disregard' is no longer sufficient to sustain a punitive damage award under California law."  *In re Moore*, 186 B.R. 962, 973 (Bankr. N.D. Cal. 1995); *see, e.g.*, *Laurel v. Allstate Ins. Co.*, No. CV 09-3990 SVW (CTX), 2010 WL 11235326, at *14 (C.D. Cal. Feb. 3, 2010) (holding that "'reckless disregard' falls short of the 'conscious disregard' required for punitive damages under California law).  California's punitive damages statute expressly requires "conscious disregard" of the rights of others.  Cal. Civ. Code § 3294.

3.      The Instruction wrongly states that Dropbox "has the burden of proof on this counterclaim."  Dropbox's counterclaim is that its use of the "Smart Sync" phrase does not infringe.  Ironhawk still has the burden on Dropbox's counterclaim to prove infringement.  *Cf. Medtronic, Inc. v. Mirowski Family Ventures, LLC*, 571 U.S. 191, 198–201 (2014) (holding that the owner of a patent retains the burden of proof to establish that a patent has been infringed in a declaratory judgment action seeking a declaration of noninfringement); *Classic Liquor Importers, Ltd. v. Spirits*

*Int'l B.V.*, 201 F. Supp. 3d 428, 440 (S.D.N.Y. 2016) (extending *Medtronic* to the trademark context).

4.     The Instruction wrongly states that the federally registered trademark at issue is "SmartSync," when it is in fact "SMARTSYNC" (in all caps).

5.     The Instruction uses the "®" symbol, which is not relevant to any of the facts at issue and misplaced in a jury instruction.  Ironhawk's display of its SMARTSYNC trademark with the letter "R" enclosed only serves to confuse the jury as to the facts at issue and unfairly prejudice Dropbox.

6.     The Instruction improperly characterizes of Dropbox's Smart Sync feature and Ironhawk's SMARTSYNC product as "competing data management software."  This characterization is argumentative, misleading, and not supported by the evidence, which shows that Dropbox's feature and Ironhawk's product do not compete.

7.     The Instruction wrongly describes Dropbox's Smart Sync feature as "data management software."  It is not.  The Smart Sync feature is allows users to choose which files and folders are stored on their local computers or online only.

8.     Ironhawk failed to use the parties' names in place of "plaintiff" and "defendant" in compliance with the Court's Standing Order to "modif[y] and supplement[]" applicable jury instructions "to fit the circumstances of this case." Standing Order at 5.

## **IRONHAWK'S PROPOSED JURY INSTRUCTION NO. 2.**

## **PRELIMINARY INSTRUCTION—TRADEMARK**

The plaintiff, Ironhawk Technologies, Inc., seeks damages against the defendant, Dropbox, Inc., for trademark infringement. The defendant denies infringing the trademark. To help you understand the evidence that will be presented in this case, I will explain some of the legal terms you will hear during this trial.

### DEFINITION AND FUNCTION OF A TRADEMARK

A trademark is a word, name, symbol, or device, or any combination of these items that indicates the source of goods. The owner of a trademark has the right to exclude others from using that trademark or a similar mark that is likely to cause confusion in the marketplace. The main function of a trademark is to identify and distinguish goods or services as the product of a particular manufacturer or merchant and to protect its goodwill.

### HOW A TRADEMARK IS OBTAINED

A person acquires the right to exclude others from using the same mark or a similar mark that is likely to cause confusion in the marketplace by being the first to use it in the marketplace, or by using it before the alleged infringer. Rights in a trademark are obtained only through commercial use of the mark.

A trademark owner may enforce the right to exclude others in an action for infringement.

### TRADEMARK REGISTRATION

After the owner of a trademark has obtained the right to exclude others from using the trademark, the owner may obtain a certificate of registration issued by the United States Patent and Trademark Office. Thereafter, when the owner brings an action for infringement, the owner may rely solely on the registration certificate to prove that the owner has the right to exclude others from using the trademark or a similar mark that is likely to cause confusion in the marketplace in connection with the type of goods specified in the certificate.

## LIKELIHOOD OF CONFUSION

To prove infringement, the plaintiff must prove, by a preponderance of the evidence, that the defendant, without the plaintiff's consent, used in commerce a reproduction, copy, counterfeit or colorable imitation of plaintiff's mark in connection with the distribution or advertisement of goods, such that the defendant's use of the mark is likely to cause confusion as to the source of the goods. It is not necessary that the mark used by the defendant be an exact copy of the plaintiff's mark. Rather, the plaintiff must demonstrate that, viewed in its entirety, the mark used by the defendant is likely to cause confusion in the minds of reasonably prudent purchasers or users as to the source of the product in question.

## THE PLAINTIFF'S BURDEN OF PROOF

In this case, the plaintiff, Ironhawk Technologies, Inc., contends that the defendant, Dropbox, Inc., has infringed the plaintiff's trademark. The plaintiff has the burden of proving by a preponderance of the evidence that the plaintiff is the owner of a valid trademark and that the defendant infringed that trademark. Preponderance of the evidence means that you must be persuaded by the evidence that it is more probably true than not true that the defendant infringed the plaintiff's trademark.

## __Ironhawk's Authority in Support of Instruction__

1,       This instruction is the applicable Ninth Circuit model jury instruction, 9th Cir. Civ. Jury Inst. (2017) Instr. No. 15.1. This instruction thus comports with the Court's standing order to use Ninth Circuit model instructions where available.

2.       Dropbox agrees that such an instruction should be given, only proposing its own prejudicial revisions to the form instruction. The Court should simply give the form instruction.

**<u>Dropbox's Objections to the Instruction</u>**

Dropbox objects to Ironhawk's Proposed Jury Instruction No. 2.  Dropbox's Proposed Jury Instruction No. 2, which is based on the same model jury instructions, should be given instead.  Dropbox's specific objections are as follows:

1.	The Instruction fails to state that Ironhawk bears the burden of proof on Dropbox's counterclaim that it did not infringe Ironhawk's trademark.  *Medtronic, Inc. v. Mirowski Family Ventures, LLC*, 571 U.S. 191, 198–201 (2014) (holding that the owner of a patent retains the burden of proof to establish that a patent has been infringed in a declaratory judgment action seeking a declaration of noninfringement); *Classic Liquor Importers, Ltd. v. Spirits Int'l B.V.*, 201 F. Supp. 3d 428, 440 (S.D.N.Y. 2016) (extending *Medtronic* to the trademark context).

2.	The Instruction is unfairly prejudicial regarding the effect of a registration certificate in the circumstances of this case.  The instruction should be modified to clarify that a registration certificate does not indicate that there is a likelihood of confusion between the trademark and other marks.  *Chesebrough-Pond's, Inc. v. Faberge, Inc.*, 666 F.2d 393, 397 (9th Cir. 1982) (registration "not . . . determinative" in infringement suit).

## **IRONHAWK'S PROPOSED JURY INSTRUCTION NO. 3.**

## **DEFINITION—TRADEMARK**

### **(15 U.S.C. § 1127)**

A trademark is any word, name, symbol, device, or any combination thereof, used by a person to identify and distinguish that person's goods from those of others and to indicate the source of the goods, even if that source is generally unknown.

A person who uses the trademark of another may be liable for damages.

1347943.1

PLAINTIFF AND COUNTER-DEFENDANT IRONHAWK TECHNOLOGIES, INC.
[PROPOSED] JURY INSTRUCTIONS

## <u>Ironhawk's Authority in Support of Instruction</u>

1,      This instruction is the applicable Ninth Circuit model jury instruction, 9th Cir. Civ. Jury Inst. (2017) Instr. No. 15.2. This instruction thus comports with the Court's standing order to use Ninth Circuit model instructions where available.

2.      Dropbox agrees that such an instruction should be given, only proposing that the following bracketed language be omitted:  "A person who uses the trademark of another may be liable for damages." But that language applies in this case, and should not be removed simply because Dropbox does not want to pay damages.

1347943.1

PLAINTIFF AND COUNTER-DEFENDANT IRONHAWK TECHNOLOGIES, INC.
[PROPOSED] JURY INSTRUCTIONS

## **<u>Dropbox's Objections to the Instruction</u>**

Dropbox objects to Ironhawk's Proposed Jury Instruction No. 3.  Dropbox's Proposed Jury Instruction No. 3, which is based on the same model jury instructions, should be given instead.

## <u>IRONHAWK'S PROPOSED JURY INSTRUCTION NO. 4.</u>

## INFRINGEMENT—ELEMENTS AND BURDEN OF PROOF— TRADEMARK

## (15 U.S.C. § 1114(1))

On the plaintiff's claim for trademark infringement, the plaintiff has the burden of proving each of the following elements by a preponderance of the evidence:

1. SmartSync® is a valid, protectable trademark;

2. the plaintiff owns SmartSync® as a trademark; and

3. the defendant used Smart Sync without the consent of the plaintiff in a manner that is likely to cause confusion among ordinary consumers as to the source, sponsorship, affiliation, or approval of the goods.

If you find that each of the elements on which the plaintiff has the burden of proof has been proved, your verdict should be for the plaintiff. If, on the other hand, the plaintiff has failed to prove any of these elements, your verdict should be for the defendant.

## Ironhawk's Authority in Support of Instruction

1,      This instruction is the applicable Ninth Circuit model jury instruction, 9th Cir. Civ. Jury Inst. (2017) Instr. No. 15.6. This instruction thus comports with the Court's standing order to use Ninth Circuit model instructions where available.

2.      Ironhawk does not agree that this instruction modifies the model instruction, it has only filled in the bracketed language.

3.      Dropbox agrees that such an instruction should be given, only proposing that a version with its own prejudicial revisions be given. The Court should give the model instruction instead.

4.      Ironhawk would however submit to revising "defendant used Smart Sync" to read "defendant named its product Smart Sync."

**<u>Dropbox's Objections to the Instruction</u>**

Dropbox objects to Ironhawk's Proposed Jury Instruction No. 4, which modifies Ninth Circuit Model Civil Jury Instruction § 15.6. Dropbox's Proposed Jury Instruction No. 4, which is based on the same model jury instruction, should be given instead. Dropbox's specific objections are as follows:

1.  The Instruction is confusing and misleading insofar as it states that "defendant used Smart Sync." Dropbox named a feature of its cloud-based services "Smart Sync"; it did not "use" Smart Sync.

2.  The Instruction omits Dropbox's counterclaim that it did not infringe on Ironhawk's SMARTSYNC trademark. Dropbox reincorporates by reference its objection to Ironhawk's Proposed Jury Instruction No. 1 regarding the same.

3.  The Instruction wrongly states that the federally registered trademark at issue is "SmartSync," when it is in fact "SMARTSYNC" (in all caps). Dropbox incorporates by reference its objection to Ironhawk's Proposed Jury Instruction No. 1 regarding the same.

4.  The Instruction improperly uses the "®" symbol. Dropbox reincorporates by reference its objection to Ironhawk's Proposed Jury Instruction No. 1 regarding the same.

5.  The Instruction fails to use the parties' names in place of "plaintiff" and "defendant" and reincorporates by reference its objection to Ironhawk's Proposed Jury Instruction No. 1 regarding the same.

**IRONHAWK'S PROPOSED JURY INSTRUCTION NO. 5.**

**INFRINGEMENT—LIKELIHOOD OF CONFUSION—FACTORS—**

**SLEEKCRAFT TEST**

**(15 U.S.C. §§ 1114(1) and 1125(a))**

You must consider whether the defendant's use of the trademark is likely to cause confusion about the source of the plaintiff's or the defendant's goods.

I will suggest some factors you should consider in deciding this. The presence or absence of any particular factor that I suggest should not necessarily resolve whether there was a likelihood of confusion, because you must consider all relevant evidence in determining this. As you consider the likelihood of confusion you should examine the following:

(1) Strength or Weakness of the Plaintiff's Mark. The more the consuming public recognizes the plaintiff's trademark as an indication of origin of the plaintiff's goods, the more likely it is that consumers would be confused about the source of the defendant's goods if the defendant uses a similar mark.

(2) Defendant's Use of the Mark. If the defendant and plaintiff use their trademarks on the same, related, or complementary kinds of goods there may be a greater likelihood of confusion about the source of the goods than otherwise.

(3) Similarity of Plaintiff's and Defendant's Marks. If the overall impression created by the plaintiff's trademark in the marketplace is similar to that created by the defendant's trademark in appearance, sound, or meaning there is a greater chance that consumers are likely to be confused by defendant's use of a mark and of likelihood of confusion. Similarities in appearance, sound or meaning weigh more heavily than differences in finding the marks are similar.

(4) Actual Confusion. If use by the defendant of the plaintiff's trademark has led to instances of actual confusion, this strongly suggests a likelihood of confusion. However actual confusion is not required for a finding of likelihood of confusion. Even if actual confusion did not occur, the defendant's use of the trademark may

still be likely to cause confusion. As you consider whether the trademark used by the defendant creates for consumers a likelihood of confusion with the plaintiff's trademark, you should weigh any instances of actual confusion against the opportunities for such confusion. If the instances of actual confusion have been relatively frequent, you may find that there has been substantial actual confusion. If, by contrast, there is a very large volume of sales, but only a few isolated instances of actual confusion you may find that there has not been substantial actual confusion.

(5) Defendant's Intent. Knowing use by defendant of the plaintiff's trademark to identify similar goods may strongly show an intent to derive benefit from the reputation of the plaintiff's mark, suggesting an intent to cause a likelihood of confusion. On the other hand, even in the absence of proof that the defendant acted knowingly, the use of plaintiff's trademark to identify similar goods may indicate a likelihood of confusion.

(6) Marketing/Advertising Channels. If the plaintiff's and defendant's goods are likely to be sold in the same or similar stores or outlets, or advertised in similar media, this may increase the likelihood of confusion.

(7) Consumer's Degree of Care. The more sophisticated the potential buyers of the goods or the more costly the goods, the more careful and discriminating the reasonably prudent purchaser exercising ordinary caution may be. They may be less likely to be confused by similarities in the plaintiff's and defendant's trademarks.

(8) Product Line Expansion. When the parties' products differ, you may consider how likely the plaintiff is to begin selling the products for which the defendant is using the plaintiff's trademark. If there is a strong possibility of expanding into the other party's market, there is a greater likelihood of confusion.

## Ironhawk's Authority in Support of Instruction

1,      This instruction is the applicable Ninth Circuit model jury instruction, 9th Cir. Civ. Jury Inst. (2017) Instr. No. 15.18. This instruction thus comports with the Court's standing order to use Ninth Circuit model instructions where available.

2.      Dropbox agrees that such an instruction should be given, only proposing that a version with its own prejudicial revisions be given. The Court should give the model instruction instead.

## **<u>Dropbox's Objections to the Instruction</u>**

Dropbox objects to Ironhawk's Proposed Jury Instruction No. 5, and Dropbox's corresponding Proposed Jury Instruction No. 7, which is based on the same model jury instruction, should be given instead.  Dropbox's specific objections are as follows:

1.      The Instruction fails to use the parties' names in place of "plaintiff" and "defendant."  Dropbox reincorporates by reference its objection to Ironhawk's Proposed Jury Instruction No. 1 regarding the same.

2.      The Instruction was not "modified and supplemented to fit the circumstances of this case."  Standing Order at 5.  For example, Ironhawk fails to identify Ironhawk's SMARTSYNC product and Dropbox's Smart Sync feature in its proposed instruction regarding actual confusion.

1347943.1

PLAINTIFF AND COUNTER-DEFENDANT IRONHAWK TECHNOLOGIES, INC.
[PROPOSED] JURY INSTRUCTIONS

# IRONHAWK'S PROPOSED JURY INSTRUCTION NO. 6.

## STRENGTH OF TRADEMARK IN RELATION TO REVERSE CONFUSION

The law recognizes that trademark infringement also occurs when a larger, more powerful company usurps the business identity of a smaller senior user of a trademark. This is called reverse confusion. When considering reverse confusion, you should consider whether Dropbox's use of Smart Sync has been so extensive as to saturate the market and overwhelm Ironhawk's SmartSync® trademark. If it has, such a finding weighs strongly in favor of a finding that Dropbox's use of Smart Sync has created a likelihood of confusion.

## Ironhawk's Authority in Support of Instruction

1.      A special instruction is required to explain the concept of reverse confusion, because model 9th Cir. Civ. Jury Inst. (2017) Instr. No. 15.18 does not accurately describe how the strength of the mark factor is to be applied in reverse confusion cases.

2.      *Dreamwerks Prod. Grp., Inc. v. SKG Studio*, 142 F.3d 1127, 1130 (9th Cir. 1998) explains that, "In a reverse infringement case, like ours, there is no question of palming off, since neither junior nor senior user wishes to siphon off the other's goodwill. The question in such cases is whether consumers doing business with the senior user might mistakenly believe that they are dealing with the junior user." Thus, "[i]n a reverse confusion case . . . the inquiry focuses on the strength of the junior mark because the issue is whether the junior mark is so strong as to overtake the senior mark." *Walter v. Mattel, Inc.*, 210 F.3d 1108, 1111 n. 2 (9th Cir. 2000).

3.      In such cases, "the junior user saturates the market with a similar trademark and overwhelms the senior user." *Commerce Nat. Ins. Servs., Inc. v. Commerce Ins. Agency, Inc.*, 214 F.3d 432, 444 (3d Cir. 2000), *quoting Ameritech, Inc. v. Am. Info. Techs. Corp.*, 811 F.2d 960, 964 (6th Cir.1987); *see also* 4 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 23:10 (5th ed.) ("In a reverse confusion situation, rather than trying to profit from the senior user's mark, the junior user saturates the market and 'overwhelms the senior user.'"). Ironhawk recognizes that this particular language is from the Third Circuit and Sixth Circuit, as well as a leading treatise in the area, however, it is consistent with Ninth Circuit law, and is helpful to the jury in understanding the concept of reverse confusion.

4.      Dropbox apparently agrees that a specially prepared instruction is appropriate, providing its own alternative. However, Ironhawk's instruction more accurately describes the law.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>Dropbox's Objections to the Instruction</u>**

Dropbox objects to Ironhawk's Proposed Jury Instruction No. 6, which was specially prepared.  Dropbox's Proposed Jury Instruction No. 8, which is based Ninth Circuit Model Civil Jury Instruction § 15.19, should be given instead. Dropbox's specific objections are as follows.

1.     The Instruction violates the Court's Standing Order to use applicable Ninth Circuit Model Civil Jury Instructions.  Standing Order at 5.  Reverse confusion is addressed in Ninth Circuit Model Civil Jury Instruction § 15.18, which addresses "confusion about the source of the plaintiff's . . . goods."  Indeed, the instruction's comments make clear that the instruction applies to reverse confusion allegations, stating that "[r]everse confusion is not a separate trademark claim."

2.     The Instruction misstates the law by stating that a finding that Dropbox saturated the market with its use of the "Smart Sync" phrase weighs "strongly" in favor of a likelihood of confusion.  None of Ironhawk's cited cases support that proposition; saturation is simply one factor considered out of many.  Moreover, any saturation would be "offset" by Ironhawk's conceptually weak mark.  *Stonefire Grill, Inc. v. FGF Brands, Inc.*, 987 F. Supp. 2d 1023, 1049 (C.D. Cal. 2013) (holding that the strength of the mark factor favored a defendant under reverse confusion theory where the plaintiff's mark was conceptually weak).

3.     The Instruction wrongly states that reverse confusion occurs "when a larger, more powerful company usurps the business identity of a smaller senior user of a mark."  This language is unfairly prejudicial and was taken from an out-of-circuit decision.  It contradicts the Ninth Circuit's definition of when reverse confusion occurs: "when consumers dealing with the senior mark holder believe that they are doing business with the junior one."  *Marketquest Grp., Inc. v. BIC Corp.*, 862 F.3d 927, 932 (9th Cir. 2017).

4.     The Instruction is confusing and misleading insofar as it states that "Dropbox's use of Smart Sync."  Dropbox named a feature of its cloud-based services "Smart Sync"; it did not "use" Smart Sync.

5.     The Instruction wrongly states that Ironhawk's trademark is "SmartSync," as opposed to "SMARTSYNC" (in all caps).  Dropbox reincorporates by reference its objection to Ironhawk's Proposed Jury Instruction No. 1 regarding the same.

6.     The Instruction improperly uses of the "®" symbol.  Dropbox reincorporates by reference its objection to Ironhawk's Proposed Jury Instruction No. 1 regarding the same use.

1

## IRONHAWK'S PROPOSED JURY INSTRUCTION NO. 7.

2

### THIRD-PARTY USE

3    A third party's prior use of a trademark is not a defense in an infringement

4    action. In other words, so long as Ironhawk proves a superior right in the

5    SmartSync® mark than Dropbox, Dropbox may not argue that some other third

6    party has a superior right than Ironhawk as a defense.

7    Further, where Dropbox alleges that third-party use of SmartSync® has

8    weakened the strength of the trademark, you may only consider third-party use in

9    the same or related industry as an Ironhawk. By way of illustration, a tech company

10   accused of infringing upon the Apple computer company's trade name cannot cite to

11   the marketing efforts of the travel company Apple Vacations as evidence that Apple

12   computer's mark is weak.

13   For this purpose, the significance of third-party trademarks depends entirely

14   on the scope and nature of their usage, including, for example, whether the mark

15   was actually used by third parties and whether consumers recognized the third

16   parties through the mark.

17   Contrarily, evidence that SmartSync® or similar marks are used by third

18   parties to describe goods or services unrelated to Ironhawk's supports a finding that

19   SmartSync® does not suggest any particular meaning to the reasonable consumer,

20   and is thus an inherently distinctive trademark deserving of broad protection.

21   Accordingly, if confronted with evidence of third-party use of SmartSync®,

22   you must first consider whether that use is in the same or a related industry as

23   Ironhawk. If it is, you must consider whether the extent of any such use is sufficient

24   to weaken the SmartSync® trademark. If the use is not in the same or related

25   industry, you must consider whether the third-party use demonstrates that

26   SmartSync® is used as a name for multiple unrelated products, thus indicating that

27   the mark is inherently distinctive.

28

1347943.1

PLAINTIFF AND COUNTER-DEFENDANT IRONHAWK TECHNOLOGIES, INC.
[PROPOSED] JURY INSTRUCTIONS

### Ironhawk's Authority in Support of Instruction

1.      A special instruction is required to explain the relevance of third-party use of a trademark where Dropbox intends to put forward third-party use of the SmartSync® as a primary defense, and no model instruction directly addresses the topic.

2.      As a threshold matter, it is black letter law that "a third party's prior use of a trademark is not a defense in an infringement action." *Comm. for Idaho's High Desert, Inc.*, 92 F.3d at 820. This instruction is necessary where Dropbox will attempt to reference prior third-party use of "smart sync." The jury should be instructed that such use is not a defense if Dropbox is allowed to make reference to prior third-party use.

3.      Third-party use is only relevant to the strength of a mark where it is in the same or a similar industry. *Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190, 1211 (9th Cir. 2012); *M2 Software, Inc. v. Madacy Ent.*, 421 F.3d 1073, 1087-88 (9th Cir. 2005); *Eclipse Assocs., Ltd. v. Data Gen. Corp.*, 894 F.2d 1114, 1119 (9th Cir. 1990); *Rebelution, LLC v. Perez*, 732 F. Supp. 2d 883, 891–92 (N.D. Cal. 2010).

4.      Dropbox's purported distinction regarding distinctiveness fails, even when solely considering where a mark falls on the distinctiveness spectrum, only related third-party use may be probative that a mark is used in a descriptive manner. 2 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 11:69 (5th ed.) ("A useful way to test whether a designation is descriptive or suggestive is to determine the extent to which other sellers have used the designation on similar goods and services.").

5.      In fact, when considering distinctiveness, use of a mark on unrelated goods demonstrates that the mark is inherently distinctive and deserving of broad protection. *Dreamwerks Prod. Grp., Inc. v. SKG Studio*, 142 F.3d 1127, 1130–31 (9th Cir.1998); (Dreamwerks mark is not merely suggestive because "'Dream' is

used in too many different ways to suggest any particular meaning to the reasonable consumer[,]" e.g., by a basketball team, an electric blanket manufacturer, a Broadway show, and a promotion by an airline, among others); *West & Co., Inc. v. Arica Institute, Inc.*, 557 F.2d 338, 342 (2d Cir. 1977) (use of the same term to describe "two very different programs undercuts the claim that the term is merely descriptive"). Where Dropbox intends to introduce evidence of the use of "smart sync" as a name for products entirely unrelated to SmartSync®, the jury must be instructed that such evidence is probative that SmartSync® is inherently distinctive.

7.    *Spin Master, Ltd. v. Zobmondo Entm't, LLC*, 2012 WL 8134012, *17 (C.D. Cal. Apr. 27, 2012) provides no support for Dropbox's objection. In *Spin Master*, third-party use was offered to demonstrate that the "Would You Rather ... ?" concept the board game at issue was based upon existed prior to the registration of the mark. *See Zobmondo Entm't, LLC v. Falls Media, LLC*, 602 F.3d 1108, 1118–19 (9th Cir. 2010). Thus, while the third-party use was not "competitive," to demonstrate that "Would You Rather ... ?" had an understood meaning as used in the board game, the third-party use would necessarily be related to the board game.

8.    Similarly, In *In re Merrill Lynch, Pierce, Fenner, and Smith, Inc.*, 828 F.2d 1567 (Fed. Cir. 1987) ("*Merrill Lynch*"), the Trademark Trial and Appeal Board ("Board") reviewed several well-known publications' use of the term "cash management account," such as Newsweek and Businessweek, in reaching its determination that the term is descriptive or generic. But the Board acknowledged the related use requirement where it stated that "there is no question that [the publications] refer to financial services of the same general nature as [appellant's]." *Id.* at 1570.[1]

---

[1] Such analysis was not that of the Federal Circuit, but the Federal Circuit's recap of the Board proceedings below. Indeed, the *Merrill Lynch* Court reversed the Board's determination that "cash management account" was descriptive or generic as clearly erroneous. 828 F.2d at 1571.

## **Dropbox's Objections to the Instruction**

Dropbox objects to Ironhawk's Proposed Jury Instruction No. 7, which was specially prepared, as follows:

1.      The Instruction's first paragraph is unnecessary and will confuse the jury as to the issues in dispute because Dropbox does not assert that a third party's prior use of a trademark is a "defense" to an infringement action.

2.      The Instruction's remaining paragraphs violate the Court's Standing Order because Ninth Circuit Model Civil Jury Instruction § 15.19 already addresses the strength-of-a-trademark *Sleekcraft* factor discussed in those paragraphs. Standing Order at 5 ("When the *Manual of Model Jury Instructions for the Ninth Circuit* provides an applicable jury instruction, the parties should submit the most recent version, modified and supplemented.").

3.      The Instruction's second paragraph misstates the law by stating that the jury "may only consider third-party use" of "smart sync" variants "in the same or related industry as an [sic] Ironhawk" when evaluating the strength of the mark *Sleekcraft* factor.  The factor entails two considerations: (1) "where the mark falls on the distinctiveness scale," and (2) its strength "'in the marketplace,' *i.e.*, 'its degree of recognition in the minds of the relevant consumers.'" *Spin Master, Ltd. v. Zobmondo Entm't, LLC*, No. CV 06-3459 ABC, 2012 WL 8134012, at *17 (C.D. Cal. Apr. 27, 2012) (quoting *Miss World (UK) Ltd. v. Mrs. Am. Pageants, Inc.*, 856 F.2d 1445, 1449 (9th Cir. 1988)).  Ironhawk's authority addresses relevance solely under the second consideration, but *all* uses of the mark are relevant under the first consideration.  *Id.* ("In the Ninth Circuit, non-competitive third party uses are relevant to demonstrate whether a mark is distinctive and protectable."); *see also Zobmondo Entm't, LLC v. Falls Media, LLC*, 602 F.3d 1108, 1118–19 (9th Cir. 2010) (considering unrelated uses as evidence that a mark is descriptive); *In re Merrill Lynch, Pierce, Fenner, & Smith, Inc.*, 828 F.2d 1567, 1570 (Fed. Cir. 1987) ("Evidence of the public's understanding of the term may be obtained from any

competent source, such as purchaser testimony, consumer surveys, listings in dictionaries, trade journals, newspapers, and other publications.").

4.      The Instruction's "Apple" example in the second paragraph and the Instruction's third paragraph discussing factors on which "the significance of third-party trademarks depends" also misstates the law for the same reasons stated in Dropbox's Objection No. 3.

5.      The Instruction's fourth paragraph misstates the law by stating that unrelated third-party uses of "smart sync" variants "supports a finding that" SMARTSYNC is "inherently distinctive."  None of Ironhawk's authority cited in support of the Instruction supports that proposition.

6.      The Instruction's fifth paragraph restates the misstatements of law in the previous paragraphs and is therefore also improper.

## IRONHAWK'S PROPOSED JURY INSTRUCTION NO. 8.

## COMMON LAW UNFAIR COMPETITION

The elements and law governing plaintiff's trademark infringement claim under federal law are the same as the elements and law governing plaintiff's claim for common law unfair competition. Should you find that defendant infringed plaintiff's SmartSync® trademark, you should also find that defendant engaged in common law unfair competition.

1347943.1

PLAINTIFF AND COUNTER-DEFENDANT IRONHAWK TECHNOLOGIES, INC.
[PROPOSED] JURY INSTRUCTIONS

**<u>Ironhawk's Authority in Support of Instruction</u>**

1,      A specially prepared instruction is required for Ironhawk's common law unfair competition claim because there is no Ninth Circuit model instruction.

2.      The elements for Ironhawk's unfair competition claim are the same as for its Lanham Act infringement claim. *Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 632 (9th Cir. 2007) ("All of Mattel's infringement claims are subject to the same test"); *International Order of Job's Daughters v. Lindbeburg & Co.*, 633 F.2d 912, 916 (9th Cir. 1980) (elements of state law unfair competition and unfair competition under federal Lanham Act are "substantially congruent").

## **Dropbox's Objections to the Instruction**

Dropbox objects to Ironhawk's Proposed Jury Instruction No. 8, which was specially prepared, and Dropbox's Proposed Jury Instruction No. 14 should be given instead.  Dropbox's specific objections are as follows:

1.      The Instruction wrongly states that the "elements and law" of Ironhawk's federal law and state law claims are the same.  The Ninth Circuit decisions Ironhawk cites do not state that the elements of the two claims are identical; they merely hold that the elements are "substantially congruent" and that the "same" *Sleekcraft* factor test also applies to California unfair competition claims. *International Order of Job's Daughters v. Lindbeburg & Co.*, 633 F.2d 912, 916 (9th Cir. 1980) (federal and state claims are "substantially congruent"); *Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 632 (9th Cir. 2008) (the "same" *Sleekcraft* factor test applies and noting that a likelihood of confusion "might" constitute "palming off" under state law).

In addition to the elements under Ironhawk's federal trademark infringement and unfair competition claims, Ironhawk must also prove by a preponderance of the evidence that: (1) Ironhawk and Dropbox are currently business competitors; (2) Dropbox intended to "pass off" its Smart Sync feature as if it were Ironhawk's product; and (3) Dropbox's conduct in passing off its feature as Ironhawk's product has caused Ironhawk competitive injury.  *Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1153 (9th Cir. 2008) ("The common law tort of unfair competition is generally thought to be synonymous with the act of 'passing off' one's goods as those of another." (quoting *Bank of the W. v. Superior Court*, 2 Cal. 4th 1254, 1263–64 (1992) (holding that the claim extends only to "business competitors" and requires "a showing of competitive injury"); *Aquawood, LLC v. Toys "R" Us-Delaware, Inc.*, 2016 WL 10576620, at *2 (C.D. Cal. Mar. 10, 2016) ("California district courts have followed *Sybersound* in limiting common law unfair competition to allegations of "passing off" or analogous acts.").

2.      The Instruction wrongly states that the trademark at issue is "SmartSync," as opposed to "SMARTSYNC" (in all caps).  Dropbox reincorporates by reference its objection to Ironhawk's Proposed Jury Instruction No. 1 regarding the same.

3.      The Instruction improperly uses the "®" symbol.  Dropbox reincorporates by reference its objection to Ironhawk's Proposed Jury Instruction No. 1 regarding the same.

4.      The Instruction fails to use the parties' names in place of "plaintiff" and "defendant."  Dropbox reincorporates its objection to Ironhawk's Proposed Jury Instruction No. 1 regarding the same.

### IRONHAWK'S PROPOSED JURY INSTRUCTION NO. 9.

### TRADEMARK DAMAGES—PLAINTIFF'S ACTUAL DAMAGES

### (15 U.S.C. § 1117(a))

If you find for the plaintiff on the plaintiff's infringement, you must determine the plaintiff's actual damages.

The plaintiff has the burden of proving actual damages by a preponderance of the evidence. Damages means the amount of money which will reasonably and fairly compensate the plaintiff for any injury and/or property damage you find was caused by the defendant's infringement of the plaintiff's registered trademark.

You should consider the following:

(1) The injury to or loss of the plaintiff's reputation;

(2) The injury to or loss of plaintiff's goodwill, including injury to the plaintiff's general business reputation; and

(3) the reasonable royalty to which plaintiff would have been entitled for defendant's use of the SmartSync® trademark.

## **Ironhawk's Authority in Support of Instruction**

1.      This instruction is the applicable Ninth Circuit model jury instruction, 9th Cir. Civ. Jury Inst. (2017) Instr. No. 15.27, but modification was required to make clear that Ironhawk may recover a reasoable royalty.

2.      Ironhawk's ability to recover a reasonable royalty is the subject of two motions currently pending before the Court, but the availability of such a remedy is well established. *Oracle Corp v. SAP AG,* 765 F.3d 1081, 1087–88 (9th Cir. 2014); *Active Sports Lifestyle USA LLC v. Old Navy, LLC,* 2013 WL 11239385 (C.D. Cal. Nov. 21, 2013); *Memory Lane, Inc. v. Classmates International, Inc.,* 2014 WL 6734820, *6 (C.D. Cal. May 8, 2014); *QS Wholesale, Inc. v. World Marketing, Inc.*, 2013 WL 1953719, *4 (C.D. Cal. May 9, 2013) (collecting cases); *Monster Energy Co. v. Integrated Supply Network, LLC,* 2018 WL 3361062 (C.D. Cal. June 4, 2018); *adidas America, Inc. v. Skechers USA, Inc.,* 2017 WL 3319190, *29 (D. Or. Aug. 3, 2017); *Gucci America, Inc. v. Guess?, Inc.,* 858 F.Supp.2d 250, at 253–256 (S.D.N.Y. 2012).

## **Dropbox's Objections to the Instruction**

Dropbox objects to Ironhawk's Proposed Jury Instruction No. 9, which modifies Ninth Circuit Model Civil Jury Instruction § 15.27. Dropbox's specific objections are as follows:

1. Ironhawk should be precluded from offering evidence in support of a reasonable royalty. *See* Dkt. 193 (Dropbox's Motion in Limine No. 4). Should the Court grant Dropbox's Motion, the jury would not consider any damages request for a reasonable royalty. If the Court were to deny this Motion, Dropbox's Proposed Jury Instruction No. 12 should be given instead.

2. The Instruction improperly tells the jury to consider "injury to or loss of the plaintiff's reputation," "goodwill," and "general business reputation." Ironhawk has not disclosed these damages theories, and they are not at issue at trial. Ironhawk seeks damages only in the form of a reasonable royalty. *See* Dkt. 190 (Dropbox's Motion in Limine No. 1) (seeking exclusion of request for punitive damages because Ironhawk only timely disclosed requests for a reasonable royalty and profit disgorgement).

3. The Instruction's reference to a reasonable royalty to which Ironhawk "would have been entitled" is confusing, misleading, and misstates the law. To be "entitled" to a reasonable royalty, Ironhawk must first prove that (1) Ironhawk was willing to license the SMARTSYNC trademark during the period of alleged infringement; (2) Dropbox was willing to pay for a license to use the "Smart Sync" feature name during the period of alleged infringement; and (3) Ironhawk has presented evidence that permits a juror to calculate the royalty amount that the parties would have agreed upon with reasonable certainty. *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1407 (9th Cir. 1993) (holding that damages for trademark infringement "must be established with reasonable certainty"); *Trovan, Ltd. v. Pfizer, Inc.*, 2000 WL 709149, at *16 (C.D. Cal. May 24, 2000) (royalty award permitted only "when the parties ha[ve] shown a willingness to license the mark").

4.      The Instruction wrongly states that the trademark at issue is "SmartSync," as opposed to "SMARTSYNC" (in all caps).  Dropbox reincorporates by reference its objection to Ironhawk's Proposed Jury Instruction No. 1 regarding the same.

5.      The Instruction improperly uses the "®" symbol.  Dropbox reincorporates by reference its objection to Ironhawk's Proposed Jury Instruction No. 1 regarding the same.

6.      The Instructions fails to use the parties' names in place of "plaintiff" and "defendant."  Dropbox reincorporates by reference its objection to Ironhawk's Proposed Jury Instruction No. 1 regarding the same.

## IRONHAWK'S PROPOSED JURY INSTRUCTION NO. 10.

## TRADEMARK DAMAGES—DEFENDANT'S PROFITS

### (15 U.S.C. § 1117(a))

In addition to actual damages, the plaintiff is entitled to any profits earned by the defendant that are attributable to the infringement, which the plaintiff proves by a preponderance of the evidence. You may not, however, include in any award of profits any amount that you took into account in determining actual damages.

Profit is determined by deducting all expenses from gross revenue.

Gross revenue is all of defendant's receipts from using the trademark in the sale of a product. The plaintiff has the burden of proving a defendant's gross revenue by a preponderance of the evidence.

Expenses are all operating or overhead and production costs incurred in producing the gross revenue. The defendant has the burden of proving the expenses and the portion of the profit attributable to factors other than use of the infringed trademark by a preponderance of the evidence.

Unless you find that a portion of the profit from the sale of the defendant's Smart Sync product using the trademark is attributable to factors other than use of the trademark, you should find that the total profit is attributable to the infringement.

1

## **Ironhawk's Authority in Support of Instruction**

2          1,      This instruction is the applicable Ninth Circuit model jury instruction,

3    9th Cir. Civ. Jury Inst. (2017) Instr. No. 15.29. This instruction thus comports with

4    the Court's standing order to use Ninth Circuit model instructions where available.

5          2.      Ironhawk acknowledges that disgorgement is ultimately an equitable

6    issue, but the jury should provide an advisory ruling on disgorgement in the first

7    instance, which can be affirmed or modified as the Court deems appropriate.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## __Dropbox's Objections to the Instruction__

Dropbox objects to Ironhawk's Proposed Jury Instruction No. 10.  Ironhawk's request for disgorgement of profits is equitable and will be decided (if at all) by the Court after trial, not the jury.  *See* Dkt. 192 (Dropbox's Motion in Limine No. 3) (moving to exclude evidence of profits because profit disgorgement will not be decided by the jury).

## IRONHAWK'S PROPOSED JURY INSTRUCTION NO. 11.

### ADVICE OF COUNSEL

Defendant asserts that it did not willfully infringe upon plaintiff's SmartSync® trademark because it relied on the advice of its attorney. To be clear, reliance upon the advice of counsel is not a defense to trademark infringement, but instead can weigh against a finding of willfulness. To demonstrate that defendant reasonably relied up the advice of counsel, defendant must demonstrate the following:

1.      That defendant disclosed all material facts to its lawyer before the advice was given,

2.      What the lawyer's advice was,

3.      That the lawyer's advice was communicated to someone within the defendant's company that had decision-making authority to rely upon the advice; and

4.      That defendant in fact followed the advice in good faith.

1347943.1

PLAINTIFF AND COUNTER-DEFENDANT IRONHAWK TECHNOLOGIES, INC.
[PROPOSED] JURY INSTRUCTIONS

## <u>Ironhawk's Authority in Support of Instruction</u>

1.     A special instruction regarding Dropbox's advice of counsel defense should be given, if it survives summary judgment. There is no Ninth Circuit model instruction, and the jury must be instructed as to the law and under what circumstances Dropbox's reliance on advice of counsel may serve as a defense.

2.     The elements provided in this instruction by Ironhawk are pulled directly from the relevant case law. *See Chiron Corp. v. Genentech, Inc.*, 268 F. Supp. 2d 1117, 1121–25 (E.D. Cal. 2002); *Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1191 (Fed. Cir. 1998); *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger, U.S.A., Inc.*, 80 F.3d 749, 754 (2d Cir. 1996); *adidas-America, Inc. v. Payless Shoesource, Inc.*, 546 F. Supp. 2d 1029, 1047 (D. Or. 2008).

3. This legal issue is briefed in full on Ironhawk's Motion for Partial Summary Judgment on Dropbox's Advice of Counsel Defense.

## **Dropbox's Objections to the Instruction**

Dropbox objects to Ironhawk's Proposed Jury Instruction No. 11, which is specially prepared.  Dropbox's Proposed Jury Instruction No. 11 should be given instead.  Dropbox's specific objections are as follows:

1.      The Instruction wrongly states that Dropbox "must demonstrate" various matters relating to advice of counsel and inaccurately implies that Dropbox bears the relevant burden.  "Advice of counsel is not an affirmative defense to willful infringement, but rather is probative of non-willfulness." *Hydramedia Corp. v. Hydra Media Grp., Inc.*, No. CV0605293DDPJTLX, 2008 WL 11336118, at *3 (C.D. Cal. Dec. 29, 2008).  Ironhawk bears the burden of proving willful infringement. *Stone Creek, Inc. v. Omnia Italian Design, Inc.*, 875 F.3d 426, 442 (9th Cir. 2017) (holding that the plaintiff must prove willful infringement).

2.      The Instruction improperly cherry-picks a list of purported elements that "must" be demonstrated to show reasonable reliance on the advice of counsel.  Ironhawk's own authorities concede that "willfulness," of which the advice of counsel is probative, "must be determined by looking at the totality of the circumstances." *Chiron Corp. v. Genentech, Inc.*, 268 F. Supp. 2d 1117, 1125 (E.D. Cal. 2002).  In line with the totality-of-circumstances test, the purported list of elements are plucked from "factors," not requirements. *Id.* at 1121.  The proper inquiry is whether Dropbox reasonably relied on the advice of counsel that it was not infringing by using the "Smart Sync" phrase. *See San Miguel Pure Foods Co. v. Ramar Int'l Corp.*, 625 F. App'x 322, 325 (9th Cir. 2015) ("Infringement is not willful if the party reasonably believes its usage of a trademark is not barred by law.").

3.      The Instruction is inaccurate, confusing, and misleading insofar as it implies that Dropbox's reliance on advice of counsel is the only basis on which the jury may find that Dropbox did not willfully infringe.

4.      The Instruction wrongly states that the trademark at issue is "SmartSync," as opposed to "SMARTSYNC" (in all caps).  Dropbox reincorporates by reference its objection to Ironhawk's Proposed Jury Instruction No. 1 regarding the same.

5.      The Instruction improperly uses the "®" symbol.  Dropbox reincorporates by reference its objection to Ironhawk's Proposed Jury Instruction No. 1 regarding the same.

## IRONHAWK'S PROPOSED JURY INSTRUCTION NO. 12.
### PUNITIVE DAMAGES

If you find for the plaintiff, you may, but are not required to, award punitive damages. The purpose of punitive damages are to punish a defendant and to deter similar acts in the future. Punitive damages may not be awarded to compensate a plaintiff.

The plaintiff has the burden of proving by clear and convincing evidence that punitive damages should be awarded, and, if so, the amount of any such damages.

You may award punitive damages only if you find that the defendants' conduct that harmed the plaintiff was malicious, oppressive or in reckless disregard of the plaintiff's rights. Conduct is malicious if it is accompanied by ill will, or spite, or if it is for the purpose of injuring the plaintiff. Conduct is in reckless disregard of the plaintiff's rights if, under the circumstances, it reflects complete indifference to the plaintiff's safety or rights, or if the defendant acts in the face of a perceived risk that its actions will violate the plaintiff's rights under law. An act or omission is oppressive if the defendant injures or damages or otherwise violates the rights of the plaintiff with unnecessary harshness or severity, such as by the misuse or abuse of authority or power or by the taking advantage of some weakness or disability or misfortune of the plaintiff.

If you find that punitive damages are appropriate, you must use reason in setting the amount. Punitive damages, if any, should be in an amount sufficient to fulfill their purposes but should not reflect bias, prejudice or sympathy toward any party. In considering the amount of any punitive damages, consider the degree of reprehensibility of the defendants' conduct.

## **Ironhawk's Authority in Support of Instruction**

1.      This instruction is based upon the applicable Ninth Circuit model jury instruction, 9th Cir. Civ. Jury Inst. (2017) Instr. No. 5.5, only removing unnecessary bracketed language. This instruction thus comports with the Court's standing order to use Ninth Circuit model instructions where available. Standing Order, at 5 ("When the *Manual of Model Jury Instructions for the Ninth Circuit* provides an applicable jury instruction, the parties should submit the most recent version, modified and supplemented.").

2.      Dropbox's competing proposed instruction is a combination of two different state court model instructions, which Dropbox then modifies in an effort to have the Court convey Dropbox's arguments in an improper manner, and should be rejected.

1347943.1

PLAINTIFF AND COUNTER-DEFENDANT IRONHAWK TECHNOLOGIES, INC.
[PROPOSED] JURY INSTRUCTIONS

**<u>Dropbox's Objections to the Instruction</u>**

Dropbox objects to Ironhawk's Proposed Jury Instruction No. 12, which modifies Ninth Circuit Model Civil Jury Instruction § 5.5.  Dropbox's specific objections are as follows:

1.      Ironhawk should be precluded from seeking punitive damages at trial. *See* Dkt. 190 (Dropbox's Motion in Limine No. 1).  Should the Court grant this Motion, the jury would not consider any request for punitive damages.  If the Court were to deny this Motion, Dropbox's Proposed Jury Instruction No. 15 should be given instead.

2.      The Instruction violates the Court's Standing Order to use, "[w]here California law applies," applicable "Judicial Council of California Civil Jury Instruction."  Standing Order, at 5.  If Ironhawk is permitted to seek punitive damages, Ironhawk may only do so under its claim for unfair competition under California common law.  *See Duncan v. Stuetzle*, 76 F.3d 1480, 1490 (9th Cir. 1996) (holding that "punitive damages are not available under the Lanham Act," but are available under California common law).  Because California law applies to any claim for punitive damages, Ironhawk must submit the applicable California instruction, "modified and supplemented to fit the circumstances of this case."  *See* Judicial Council of California Civil Jury Instruction § 3945 (punitive damages instruction).

3.      The Instruction incorrectly states the legal requirements for awarding punitive damages under California law.  For example, "reckless disregard" of a plaintiff's rights is insufficient to obtain punitive damages under California law.  *In re Moore*, 186 B.R. 962, 973 (Bankr. N.D. Cal. 1995) ("'[R]eckless disregard' is no longer sufficient to sustain a punitive damage award under California law."); *see, e.g., Laurel v. Allstate Ins. Co.*, No. CV 09-3990 SVW (CTX), 2010 WL 11235326, at *14 (C.D. Cal. Feb. 3, 2010) (holding that "'reckless disregard' falls short of the 'conscious disregard' required for punitive damages under California law).  The

express language of California's punitive damages statute requires "conscious disregard" of the rights of others.  Cal. Civ. Code § 3294.

4.      The Instruction fails to use the parties' names in place of "plaintiff" and "defendant."  Dropbox reincorporates by reference its objection to Ironhawk's Proposed Jury Instruction No. 1 regarding the same.

**IRONHAWK'S PROPOSED JURY INSTRUCTION NO. 13.**

**INFRINGEMENT – ELEMENTS – LIKELIHOOD OF CONFUSION –**

**SOURCE, AFFILIATION, OR SPONSORSHIP**

A "likelihood of confusion" exists when a substantial number of consumers believe that defendant's goods are produced by plaintiff. A "likelihood of confusion" also exists when the defendant's trademark is likely to cause confusion as to an affiliation, connection, or association between the defendant and plaintiff, such that the plaintiff sponsors or approves of the defendant's goods or activities.

## Ironhawk's Authority in Support of Instruction

1.     This specially prepared instruction is appropriate because the information contained therein is not fully captured by any of the Ninth Circuit model instructions.

2.     The instruction is noncontroversial, pulled directly from applicable statutory language. 15 U.S.C. § 1125(a)(1)(A) ("Any person who . . . uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin . . . which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person  . . .").

## **Dropbox's Objections to the Instruction**

Dropbox objects to Ironhawk's Proposed Jury Instruction No. 13, which was specially prepared.  Dropbox's specific objections are as follows:

1. The Instruction violates the Court's Standing Order because the likelihood-of-confusion element is addressed in Ninth Circuit Model Civil Jury Instructions §§ 15.6, 15.18-.19.  Standing Order, at 5 ("When the *Manual of Model Jury Instructions for the Ninth Circuit* provides an applicable jury instruction, the parties should submit the most recent version, modified and supplemented.").

2. The Instruction's first sentence misstates the law because the test for trademark infringement is "likelihood of confusion" (*i.e.*, potential confusion); it is not solely based on instances of actual confusion.  *Halo Mgmt., LLC v. Interland, Inc.*, 308 F. Supp. 2d 1019, 1038 (N.D. Cal. 2003) ("[T]he relevant question is likelihood of confusion (*i.e.*, potential confusion), not actual confusion.").  None of the authority Ironhawk cites supports the proposition in the Instruction's first sentence.

## <u>IRONHAWK'S PROPOSED JURY INSTRUCTION NO. 14.</u>

## TRADEMARK DAMAGES – DEFENDANT'S PROFITS – WILLFULNESS

To disgorge Dropbox's profits, you must first find by a preponderance of the evidence that Dropbox's infringement of the SmartSync® was willful.

Dropbox's infringement of the SmartSync® was willful if Dropbox's infringing actions were undertaken either with knowledge that the conduct constitutes infringement or with reckless disregard for Ironhawk's rights.

1347943.1

PLAINTIFF AND COUNTER-DEFENDANT IRONHAWK TECHNOLOGIES, INC.
[PROPOSED] JURY INSTRUCTIONS

## Ironhawk's Authority in Support of Instruction

1.      This specially prepared instruction is appropriate because the information contained therein is not fully captured by any of the Ninth Circuit model instructions.

2.      Ironhawk recognizes the current Ninth Circuit law on willfulness, however with the issue being before the Supreme Court, proposes this instruction as potentially correct pending the Supreme Court's resolution of the issue. *See Autodesk, Inc. v. Flores*, 2011 WL 337836, at *8 (N.D. Cal. Jan. 31, 2011) ("Under the Copyright and Lanham Acts, willfulness may be found where the defendant's infringing actions are undertaken either with knowledge that the conduct constitutes infringement or with reckless disregard for the copyright or trademark owner's rights"), *citing In re Barboza*, 545 F.3d 702, 707–08 (9th Cir. 2008) (discussing willfulness standard in copyright case).

## **Dropbox's Objections to the Instruction**

Dropbox objects to Ironhawk's Proposed Jury Instruction No. 14, which was specially prepared, and Dropbox's Proposed Jury Instruction No. 11 should be given instead.  Dropbox's specific objections are as follows:

1.     The Instruction wrongly suggests that the jury can decide the issue of profit disgorgement.  Ironhawk's request for disgorgement of profits is equitable and will be decided (if at all) by the Court after trial, not the jury.  *See* Dkt. 192 (Dropbox's Motion in Limine No. 3) (moving to exclude evidence of profits because profit disgorgement will not be decided by the jury).

2.     The Instruction wrongly states that "knowledge that the conduct constitutes infringement" or "reckless disregard for Ironhawk's rights" is sufficient to prove willful infringement.  To prove willful infringement, the Ninth Circuit requires that Ironhawk must prove that (1) Dropbox deliberately intended to deceive its customers into confusing Dropbox's Smart Sync feature with Ironhawk's SMARTSYNC porduct, and (2) Dropbox intended this confusion so that it would benefit from the reputation and goodwill of Ironhawk's SMARTSYNC mark.  *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1405 (9th Cir. 1993) (holding that infringement is willful "only in those cases where the infringement is willfully calculated to exploit the advantage of an established mark"); *id.* at 1406 ("Willful infringement carries a connotation of deliberate intent to deceive.").  Ironhawk's sole authority for the contrary proposition relies on a decision discussing the willfulness standard in a copyright case, not a trademark case.  *See Autodesk, Inc. v. Flores*, 2011 WL 337836, at *8 (N.D. Cal. Jan. 31, 2011) (stating that knowledge is sufficient to find willfulness (citing *In re Barboza*, 545 F.3d 702, 707–08 (9th Cir. 2008) (copyright case)).

3.     The Instruction wrongly states that the trademark at issue is "SmartSync," as opposed to "SMARTSYNC" (in all caps).  Dropbox reincorporates

1  by reference its objection to Ironhawk's Proposed Jury Instruction No. 1 regarding

2  the same.

3       4.     The Instruction improperly uses the "®" symbol.  Dropbox

4  reincorporates by reference its objection to Ironhawk's Proposed Jury Instruction

5  No. 1 regarding the same.

**<u>IRONHAWK'S PROPOSED JURY INSTRUCTION NO. 15.</u>**

**INFRINGEMENT – ELEMENTS – PRESUMED VALIDITY AND**

**OWNERSHIP – REGISTERED TRADEMARK (15 U.S.C. §§ 1057, 1065 and**

**1115)**

I gave you instruction number __ that requires the plaintiff to prove by a preponderance of the evidence that the SmartSync ® trademark is valid and protectable and that the plaintiff owns the trademark. A valid trademark is a word, name, symbol, device, or any combination of these, that indicates the source of goods and distinguishes those goods from the goods of others. A trademark becomes protectable after it is used in commerce.

One way for the plaintiff to prove trademark validity is to show that the trademark is registered. An owner of a trademark may obtain a certificate of registration issued by the United States Patent and Trademark Office and may submit that certificate as evidence of the validity and protectability of the trademark and of the certificate holder's ownership of the trademark covered by that certificate.

Exhibit 431 includes a certificate of registration from the United States Patent and Trademark Office. It was submitted by the plaintiff as proof of the validity of the trademark and that the plaintiff owns the trademark.

The facts recited in this certificate are: Ironhawk's SmartSync® mark is federally registered for computer software for replicating files, being placed on the Principal Register by the United States Patent and Trademark Office on January 16, 2007. The certificate further identifies Integrated Data Corporation—Ironhawk's former name—as the owner of the trademark.

Accordingly, you must consider the trademark to have been conclusively proved to be valid and owned by Ironhawk.

**<u>Ironhawk's Authority in Support of Instruction</u>**

1,      This instruction is the applicable Ninth Circuit model jury instruction, 9th Cir. Civ. Jury Inst. (2017) Instr. No. 15.8. This instruction thus comports with the Court's standing order to use Ninth Circuit model instructions where available.

2.      To the extent Dropbox's argument has any merit that Exhibit 431 does not include the correct certification, that certification will be obtained from the USPTO and un updated exhibit number will be provided prior to the reading of this instruction.

## **Dropbox's Objections to the Instruction**

Dropbox objects to Ironhawk's Proposed Jury Instruction No. 15.[2]  Dropbox's specific objections are as follows:

1.      The Instruction wrongly states that Exhibit 431 includes a "certificate" of registration.  Exhibit 431 appears to be a status printout from the United States Patent and Trademark Office's Trademark Status and Document Retrieval database. It contains what appears to be a copy of the SMARTSYNC registration, *not* a "certificate," *i.e.*, it is not certified.  Exhibit 431 does not contain an original "certificate of registration," which must be issued "in the name of the United States of America, under the seal of the United States Patent and Trademark Office, and shall be signed by the Director."  15 U.S.C. § 1057(a).  Nor does Exhibit 431 contain a copy of a certificate of registration, which "shall be evidence in all cases wherein the originals would be evidence" and must be "authenticated by the seal of the United States Patent and Trademark Office and certified by the Director, or in his name by an employee of the Office duly designated by the Direct."  *Id.* § 1057(f).  Accordingly, Exhibit 431 cannot serve as prima facie evidence of validity and ownership of the SMARTSYNC trademark.  *See id.* § 1057(b) (stating effect of certificate of registration).

2.      The Instruction mischaracterizes the document in Exhibit 431 as identifying "Integrated Data Corporation" as Ironhawk under a "former name." According to Ironhawk's own Exhibit 431, Integrated Data Corporation is a Nevada corporation and Ironhawk is a Delaware corporation.  Exhibit 431-3.  Integrated Data Corporation could not be a "former name" because it is a different corporation.

3.      The Instruction wrongly states that the trademark at issue is "SmartSync," as opposed to "SMARTSYNC" (in all caps).  Dropbox reincorporates

---

[2] Should the Court provide Ironhawk's Proposed Instruction No. 15 to the jury, Dropbox reserves the right to insert into the Instruction any applicable defenses under 15 U.S.C. § 1115(b), as contemplated by the Model Instruction.

1347943.1

by reference its objection to Ironhawk's Proposed Jury Instruction No. 1 regarding the same.

     4.     The Instruction improperly uses the "®" symbol. Dropbox reincorporates by reference its objection to Ironhawk's Proposed Jury Instruction No. 1 regarding the same.

     5.     The Instruction fails to use the parties' names in place of "plaintiff" and "defendant." Dropbox reincorporates by reference its objection to Ironhawk's Proposed Jury Instruction No. 1 regarding the same.

## <u>IRONHAWK'S PROPOSED JURY INSTRUCTION NO. 16.</u>

## INFRINGEMENT – LIKELIHOOD OF CONFUSION – FACTOR – STRENGTH OF TRADEMARK

### Strength as a Factor for Evaluating Likelihood of Confusion

How strongly the plaintiff's trademark indicates that the goods or services come from a particular source is an important factor to consider in determining whether the trademark used by the defendant is likely to create confusion with the plaintiff's mark.

The plaintiff asserts that SmartSync® is a trademark for its software. The plaintiff contends that the defendant's use of Smart Sync in connection with the defendant's software infringes plaintiff's trademark because it is likely to cause confusion.

### The Strength of Marks

The more distinctive and strong a trademark is, the greater the scope of protection the law provides. The law measures trademark strength by considering two prongs:

1. Commercial Strength: This is the amount of marketplace recognition of the mark; and

2. Conceptual Strength: This is the placement of the mark on the spectrum of marks.

**Commercial Strength**: What is "commercial strength?" Not all marks are equally well known. Trademark strength is somewhat like the renown of people. Only a few very famous people are widely known and recognized around the world. Most people are known and recognized only by a small circle of family and friends.

Some trademarks are relatively "strong," in the sense they are widely known and recognized. A few trademarks are in the clearly "famous" category. These "famous" marks are those like "Apple" for computers and mobile phones, "Google" for a search engine, "Coca-Cola" for beverages and "Toyota" for vehicles. Some

trademarks may be strong and well known only in a certain market niche such as mountain climbing gear, plumbing supplies, or commercial airplane electronics equipment, but relatively weak outside that field.

**Conceptual Strength**: What is "conceptual strength?" All trademarks are grouped into two categories: either inherently distinctive or not inherently distinctive. If a mark is inherently distinctive it is immediately protected when first used. If it is not inherently distinctive, to become a legally protected mark, a designation must acquire distinctiveness in people's minds by becoming known as an indication of source of goods or services. The law calls this "secondary meaning."

For determining the conceptual strength of a mark, trademarks are grouped on a spectrum according to the nature of the mark. In the spectrum, there are three categories of word marks that the law regards as being inherently distinctive: coined, arbitrary and suggestive. Descriptive word marks are regarded as not being inherently distinctive and require a secondary meaning to become a valid trademark.

**Coined** and arbitrary words are regarded as being relatively strong marks. A coined word mark is a word created solely to serve as a trademark. For example, "Clorox" for cleaning products and "Exxon" for gasoline are coined marks.

**Arbitrary** marks are words that in no way describe or suggest the nature of the goods or services it is used with. For example, "apple" is a common word, but it does not describe or suggest anything about the nature of "Apple" brand computers or smart phones. It is an arbitrary word when used as a mark on those products and is said to be conceptually strong as a mark.

**Suggestive** word marks are regarded as not being as conceptually strong as coined or arbitrary marks. Suggestive trademarks suggest some characteristic or quality of the goods or services with which they are used. If the consumer must use her imagination or think through a series of steps to understand what the trademark is telling about the product, then the trademark does not directly describe the

product's features, but merely suggests them. For example, the trademark "Tail Wagger" for dog food merely suggests that your dog will like the food. As another example, when "apple" is used in the mark "Apple-A-Day" for vitamins, it is being used as a suggestive trademark. "Apple" does not describe what the vitamins are. However, it suggests the healthfulness of "an apple a day keeping the doctor away" with the supposed benefits of taking "Apple-A-Day" vitamins.

**Descriptive** word marks are not inherently distinctive. These marks directly describe some characteristic, or quality of the goods or services with which they are used in a straightforward way that requires no exercise of imagination. For instance, the word "apple" is descriptive when used in the trademark "CranApple" to designate a cranberry-apple juice. It directly describes one of ingredients of the juice.

1

**<u>Ironhawk's Authority in Support of Instruction</u>**

2      1,      This instruction is the applicable Ninth Circuit model jury instruction,

3   9th Cir. Civ. Jury Inst. (2017) Instr. No. 15.19, only filling in bracketed gaps. This

4   instruction thus comports with the Court's standing order to use Ninth Circuit model

5   instructions where available.

6      2.      Dropbox's competing instruction modifies this model instruction

7   inappropriately and should not be given.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Dropbox's Objections to the Instruction**

Dropbox objects to Ironhawk's Proposed Jury Instruction No. 16, which is based on Ninth Circuit Model Civil Jury Instruction § 15.19. Dropbox's Proposed Jury Instruction No. 8, which is based on the same model jury instruction, should be given instead. Dropbox's specific objections are as follows:

1.      The Instruction is argumentative and misleading because it identifies both parties' offerings as "software," whereas Ironhawk offers a product and Dropbox offers a service. The reference only to "software" will mislead the jury regarding the proximity of the goods.

2.      The Instruction fails to use the parties' names in place of "plaintiff" and "defendant." Dropbox reincorporates by reference its objection to Ironhawk's Proposed Jury Instruction No. 1 regarding the same.

3.      The Instruction is confusing and misleading insofar as it states that "defendant's use of Smart Sync." Dropbox named a feature of its cloud-based services "Smart Sync"; it did not "use" Smart Sync.

4.      The Instruction wrongly states that the trademark at issue is "SmartSync," as opposed to "SMARTSYNC" (in all caps). Dropbox reincorporates by reference its objection to Ironhawk's Proposed Jury Instruction No. 1 regarding the same.

5.      The Instruction improperly uses the "®" symbol. Dropbox reincorporates by reference its objection to Ironhawk's Proposed Jury Instruction No. 1 regarding the same.

1

2

### **IRONHAWK'S PROPOSED JURY INSTRUCTION NO. 17.**

3

### **INFRINGEMENT – ELEMENTS – VALIDITY – DISTINCTIVENESS –**

4

### **SECONDARY MEANING**

5        If you determined in Instruction No. __ that SmartSync® is descriptive, you

6   must consider the recognition that the mark has among prospective consumers in

7   order to determine whether it is valid and protectable even though it is descriptive.

8   This market recognition is called the trademark's "secondary meaning."

9        A word or name acquires a secondary meaning when it has been used in such

10  a way that its primary significance in the minds of the prospective consumers is not

11  the product itself, but the identification of the product with a single source,

12  regardless of whether consumers know who or what that source is. You must find

13  that the preponderance of the evidence shows that a significant number of the

14  consuming public associates the SmartSync® mark with a single source, in order to

15  find that it has acquired secondary meaning.

16        When you are determining whether the SmartSync® mark has acquired a

17  secondary meaning, consider the following factors:

18        (1) Consumer Perception. Whether the people who purchase the product that

19  bears the claimed trademark associate the trademark with the owner;

20        (2) Advertisement. To what degree and in what manner the owner may have

21  advertised under the claimed trademark;

22        (3) Demonstrated Utility. Whether the owner successfully used this trademark

23  to increase the sales of its product;

24        (4) Extent of Use. The length of time and manner in which the owner used the

25  claimed trademark;

26        (5) Exclusivity. Whether the owner' s use of the claimed trademark was

27  exclusive;

28        (6) Copying. Whether the defendant intentionally copied the owner's

1 │ trademark; and

2 │       (7) Actual Confusion. Whether the defendant's use of the plaintiff's

3 │ trademark has led to actual confusion among a significant number of consumers.

4 │       The presence or absence of any particular factor should not necessarily

5 │ resolve whether the SmartSync® mark has acquired secondary meaning.

6 │       Descriptive marks are protectable only to the extent you find they acquired

7 │ distinctiveness through secondary meaning by the public coming to associate the

8 │ mark with the owner of the mark. Descriptive marks are entitled to protection only

9 │ as broad as the secondary meaning they have acquired, if any. If they have acquired

10 │ no secondary meaning, they are entitled to no protection and cannot be considered a

11 │ valid mark.

12 │       The defendant has the burden of proving that the SmartSync® mark lacks a

13 │ secondary meaning.

14 │       The mere fact that the plaintiff is using the SmartSync® mark, or that the

15 │ plaintiff began using it before the defendant, does not mean that the trademark has

16 │ acquired secondary meaning. There is no particular length of time that a trademark

17 │ must be used before it acquires a secondary meaning.

18

19

20

21

22

23

24

25

26

27

28

## __Ironhawk's Authority in Support of Instruction__

1,      This instruction is the applicable Ninth Circuit model jury instruction, 9th Cir. Civ. Jury Inst. (2017) Instr. No. 15.11. This instruction thus comports with the Court's standing order to use Ninth Circuit model instructions where available.

2.      Ironhawk's selection of the bracketed language placing the burden on Dropbox to demonstrate that SmartSync® has not acquired secondary meaning is appropriate where SmartSync® is a federally registered incontestable mark.

**<u>Dropbox's Objections to the Instruction</u>**

Dropbox objects to Ironhawk's Proposed Jury Instruction No. 17.  Dropbox's specific objections are as follows:

1.     The Instruction is argumentative and misleading because it omits the bracketed instruction that states, "The plaintiff has the burden of proving that the [SMARTSYNC trademark] has acquired a secondary meaning," while including the bracketed instruction relating to the defendant's burden.

2.     The Instruction wrongly states that the trademark at issue is "SmartSync," as opposed to "SMARTSYNC" (in all caps).  Dropbox reincorporates by reference its objection to Ironhawk's Proposed Jury Instruction No. 1 regarding the same.

3.     The Instruction improperly uses the "®" symbol.  Dropbox reincorporates by reference its objection to Ironhawk's Proposed Jury Instruction No. 1 regarding the same.

Dated:  September 30, 2019

BROWNE GEORGE ROSS LLP
    Keith J. Wesley
    Lori Sambol Brody
    Matthew L. Venezia

By: _____ /s/ Keith J. Wesley _____
    Keith J. Wesley
Attorneys for Plaintiff and Counterdefendant Ironhawk Technologies, Inc.

1347943.1

PLAINTIFF AND COUNTER-DEFENDANT IRONHAWK TECHNOLOGIES, INC.
[PROPOSED] JURY INSTRUCTIONS