CLARA J. SHIN (SBN 214809)
cshin@cov.com
JEFFREY M. DAVIDSON (SBN 248620)
jdavidson@cov.com
REBECCA ARIEL JACOBS (SBN 294430)
rjacobs@cov.com
MATTHEW Q. VERDIN (SBN 306713)
mverdin@cov.com
415 Mission Street, Suite 5400
San Francisco, CA 94105
Telephone: 415-591-7058
Facsimile: 415-591-6091

Attorneys for Defendant and Counter-Claimant
DROPBOX, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| IRONHAWK TECHNOLOGIES, INC., a Delaware Corporation,<br><br>Plaintiff and Counterdefendant,<br><br>v.<br><br>DROPBOX, INC., a Delaware corporation,<br><br>Defendant and Counterclaimant. | Case No. 2:18-cv-01481-DDP-JEM<br><br>**[PROPOSED] FINAL PRETRIAL CONFERENCE ORDER**<br><br>Judge: Hon. Dean D. Pregerson<br>Trial Date: October 22, 2019<br>Final Pre-Trial Conf.: October 7, 2019 |

Following pretrial proceedings, pursuant to Fed. R. Civ. P. 16 and L.R. 16, IT IS HEREBY ORDERED:

1. The parties are: Plaintiff and Counterdefendant Ironhawk Technologies, Inc. ("Ironhawk") and Defendant and Counterclaimant Dropbox, Inc. ("Dropbox").

Each of these parties has been served and has appeared. All other parties named in the pleadings and not identified in the preceding paragraph are now dismissed.

The pleadings which raise the issues are: Ironhawk's Complaint. (Dkt. No. 1); Dropbox's Answer and Counterclaim. (Dkt. No. 17); and Ironhawk's Answer to Counterclaim. (Dkt. No. 18.)

2. Federal jurisdiction and venue are invoked upon the grounds: Ironhawk brings a claim for trademark infringement under the Lanham Act (15 U.S.C. § 1051, et seq.), creating federal jurisdiction pursuant to 28 U.S.C. § 1331. Venue is proper pursuant to 28 U.S.C. § 1391(b) as a substantial part of the events giving rise to the claims alleged occurred in this judicial district. These facts are admitted by the parties.

3. The trial is estimated to take 5–7 trial days.

4. The trial is to be a jury trial. At least seven (7) days prior to the trial date the parties shall file and serve by e-mail, fax, or personal delivery: (a) proposed jury instructions as required by L.R. 51-1 and (b) any special questions requested to be asked on voir dire.

5. The following facts are admitted and require no proof:

- Dropbox is a cloud-based file-sharing company founded in 2007.

- Dropbox was founded to create a service that allowed customers to access and work on their computer files wherever they were in the world.

6. The following facts, though stipulated, shall be without prejudice to any evidentiary objection: The parties have not stipulated to any facts without prejudice to any evidentiary objection.

7. **Plaintiff's Position**:

(a) Ironhawk plans to pursue the following claims against Dropbox:

- Claim 1: Dropbox infringes upon Ironhawk's SmartSync® trademark in violation of the Lanham Act, 15 U.S.C. § 1051, et seq.

- Claim 2: Dropbox's infringement further constitutes unfair competition under California common law.

(b) The elements required to establish Plaintiff's claims are:

- Claim 1: To establish a claim for trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1051, et seq., Ironhawk must demonstrate the following: (1) SmartSync® is a valid, protectable trademark; (2) Ironhawk owns SmartSync® as a trademark; and (3) Dropbox used Smart Sync without the consent of the plaintiff in a manner that is likely to cause confusion among ordinary consumers as to the source, sponsorship, affiliation, or approval of the goods. *See* 9th Cir. Civ. Jury Inst. (2017) Instr. No. 15.6.

- Claim 2: To establish a claim for common law unfair competition under California law, Ironhawk must satisfy the same elements as required to establish a claim for trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1051, et seq. *Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 632 (9th Cir. 2007) ("All of Mattel's infringement claims are subject to the same test"); *International Order of Job's Daughters v. Lindbeburg & Co.*, 633 F.2d 912, 916 (9th Cir. 1980) (elements of state law unfair competition and unfair competition under federal Lanham Act are "substantially congruent").[1]

---

[1] Dropbox objects that Ironhawk has not set forth all elements of an unfair competition claim. To prevail on its unfair competition claim, Dropbox asserts that Ironhawk must prove all the elements of a Lanham Act claim, *and* also prove that: (1) Ironhawk and Dropbox are existing business competitors; (2) Dropbox intended to "pass off" its Smart Sync feature as if it were Ironhawk's product; and (3) Dropbox's conduct in passing off its feature as Ironhawk's product has caused Ironhawk competitive injury. *See Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1153 (9th Cir. 2008) ("The common law tort of unfair competition is generally thought to be synonymous with the act of 'passing off' one's goods as those of another." (quoting *Bank of the W. v. Superior Court*, 2 Cal. 4th 1254, 1263–64 (1992) (holding that the claim extends only to "business competitors" and requires "a showing of competitive injury")).

(b) In brief, the key evidence Ironhawk relies on for each of the claims is:

**Claim 1:**

- Evidence, including e-mails, correspondence, documents, and testimony demonstrating the history of Ironhawk and the SmartSync® software, including but not limited to SmartSync®'s technical characteristics and the historical and current sales, marketing, and customers of SmartSync®.
- Evidence, including e-mails, correspondence, documents, and testimony showing Ironhawk has marketed its data management software under the SmartSync trademark continuously since 2004.
- Evidence, including e-mails, correspondence, documents, and testimony demonstrating Ironhawk's process in creating the SmartSync name.
- Evidence, including e-mails, correspondence, documents, and testimony demonstrating Ironhawk applied for and received a federal trademark registration for SmartSync®, without proof of secondary meaning.
- Evidence, including e-mails, correspondence, documents, and testimony demonstrating the name recognition and value of the SmartSync® mark.
- Evidence, including e-mails, correspondence, documents, and testimony demonstrating that Oppenheimer & Co. ("Oppenheimer") introduced Ironhawk to Dropbox as a potential acquisition target, that there was a pitch call with representatives of Ironhawk and Dropbox, and Dropbox thereafter internally discussed and considered an acquisition of Ironhawk and SmartSync®.
- Evidence, including e-mails, correspondence, documents, and testimony demonstrating that Dropbox destroyed key evidence concerning such deliberations.
- Evidence, including e-mails, correspondence, documents, and testimony concerning Dropbox's internal process in selecting the Smart Sync name, including but not limited to the actions of Dropbox's in-house legal team and Dropbox's prior knowledge of Ironhawk's SmartSync® mark.
- Evidence, including e-mails, correspondence, documents, and testimony demonstrating Dropbox's intent when selecting the Smart Sync name.
- Evidence, including e-mails, correspondence, documents, and testimony concerning the technical characteristics and nature of Dropbox's Smart Sync feature.

- Evidence, including e-mails, correspondence, documents, and testimony demonstrating the nature and extent Dropbox's use of Smart Sync in the marketplace.

- Evidence, including e-mails, correspondence, documents, and testimony demonstrating the nature and extent of Dropbox's advertising and marketing of its Smart Sync, including but not limited to SEO and SEM.

- Evidence, including e-mails, correspondence, documents, expert reports, and testimony demonstrating the strength of the Dropbox mark and the strength of the association between "Dropbox" and "Smart Sync."

- Evidence, including e-mails, correspondence, documents, expert reports, and testimony demonstrating the strength of the Dropbox's Smart Sync mark.

- Evidence, including e-mails, correspondence, documents, and testimony showing instances of actual confusion between Ironhawk's SmartSync® and Dropbox's Smart Sync.

- Evidence, including e-mails, correspondence, documents, and testimony concerning Ironhawk's attempts to market SmartSync® in the commercial sector and demonstrating that Dropbox's use of Smart Sync has devastated those efforts.

- Evidence, including e-mails, correspondence, documents, and testimony showing that Dropbox's use of Smart Sync has damaged the value of Ironhawk's SmartSync® mark.

- Evidence, including e-mails, correspondence, documents, reports and testimony concerning the importance of the Smart Sync feature to Dropbox's sales.

- Evidence, including e-mails, correspondence, documents, reports and testimony demonstrating Dropbox's revenues, amount of paid users by plan, and feature offerings by plan, particularly which plans offer Smart Sync.

- Daniel Cislo's expert testimony concerning Ironhawk's registration process for its Smart Sync® mark, Dropbox's clearance process, and Dropbox's commercial use of Smart Sync as a mark.

- Jessie Stricchiola's expert testimony concerning the online presence of Dropbox's Smart Sync and exposure to those looking for SmartSync® online.

- Robert Wunderlich's expert testimony concerning the reasonable royalty and amount of disgorged profits required to compensate Ironhawk for the injury caused by Dropbox's actions.

- Hal Poret's expert report and testimony that survey respondents strongly link "Smart Sync" to Dropbox.

- Dr. Pham's expert report and testimony that consumers are likely to associate "Smart Sync" with Dropbox.

**Claim 2:**

- The key evidence that Ironhawk will introduce in support of Claim 2 is the same as the evidence it will introduce in support of Claim 1.

**Defendant's Position**:

(a) Dropbox plans to pursue the following counterclaims and affirmative defenses:

- Counterclaim 1: Dropbox seeks a declaratory judgment that its use of the "Smart Sync" phrase did not infringe on Ironhawk's SMARTSYNC mark.[2]

- Affirmative Defense 1 (Failure to State a Claim): Ironhawk's claims are barred in whole or in part because Ironhawk has failed to adequately state a claim for relief.

- Affirmative Defense 2 (Fair Use): Ironhawk's claims are barred in whole or in part by the doctrine of fair use. Dropbox does not use the phrase "Smart Sync" as a trademark but rather as a descriptive term.

- Affirmative Defense 3 (Unclean Hands): Ironhawk's claims are barred by the doctrine of unclean hands. Because this is an equitable defense, it would be decided by the Court after trial, if necessary. *See JIPC Mgmt. Inc. v. Incredible Pizza Co*., No. CV 08-04310, 2009 WL 8591607, at *19 (C.D. Cal. July 14, 2009) (noting that "unclean hands defense is equitable" and subject to the court's discretion).

- Affirmative Defense 5 (Laches): Ironhawk's claims are barred by the doctrine of laches because Ironhawk unreasonably delayed in filing its Complaint. Because this is an equitable defense, it would be decided by the Court after trial, if necessary. *See Toyota Motor Sales, U.S.A., Inc. v. Tabari*, 610 F.3d 1171, 1183 (9th Cir. 2010) (noting that the laches affirmative defense is

---

[2] Ironhawk objects to the inclusion of this counterclaim as wholly duplicative of Ironhawk's affirmative claims.

equitable).

- Affirmative Defense 12 (Failure to Mitigate): Ironhawk has failed to mitigate its damages, if any, and any recovery should be reduced or denied accordingly.

(b) The elements required to establish Defendant's counterclaims and affirmative defenses are:

- Counterclaim 1: For Dropbox's declaratory judgment counterclaim, the burden remains on Ironhawk to prove all the same elements of the Lanham Act claim. *See Medtronic, Inc. v. Mirowski Family Ventures*, LLC, 571 U.S. 191, 198-201 (2014) (owner of a patent retains the burden to establish infringement in a declaratory judgment action seeking a declaration of noninfringement); *Classic Liquor Imps.,, Ltd. v. Spirits Int'l B.V.*, 201 F. Supp. 3d 428, 440 (S.D.N.Y. 2016) (extending *Medtronic* to the trademark context).

- Affirmative Defense 1: To establish the affirmative defense of failure to state a claim, a defendant must show that a plaintiff does not make sufficient factual allegations to establish a plausible entitlement to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

- Affirmative Defense 2: To establish the equitable affirmative defense of fair use: "a defendant must show that its use is (1) other than as a trademark, (2) descriptive of the defendant's goods, and (3) in good faith." *Marketquest Grp., Inc. v. BIC Corp.*, 862 F.3d 927, 935 (9th Cir. 2017), *cert. denied*, 138 S. Ct. 1988 (2018) (citing 15 U.S.C. § 1115(b)(4)). "Additionally, 'the degree of customer confusion is a factor in evaluating fair use.'" *Id.* (citing *KP Permanent Make-Up*, 408 F.3d at 602).

- Affirmative Defense 3: To establish the equitable affirmative defense of unclean hands: "a defendant must demonstrate by clear and convincing evidence (1) that the plaintiff's conduct is inequitable; and (2) that the conduct relates to the subject matter of the plaintiff's claims." *POM Wonderful LLC v. Coca Cola Co.*, 166 F. Supp. 3d 1085, 1091-92 (C.D. Cal. 2016) (internal quotation marks and citation omitted).

- Affirmative Defense 5: "The limitations period for laches starts from the time the plaintiff knew or should have known about its potential cause of action." *Tillamook Country Smoker, Inc. v. Tillamook Cty. Creamery Ass'n*, 465 F.3d 1102, 1108 (9th Cir. 2006) (internal quotation marks and citations omitted). Courts first look to whether the "statute of limitations period expired for the most closely analogous action under state law. If the plaintiff filed within that period, there is a strong presumption against laches." *Id.* (internal quotation marks and citations omitted). California has a four-year statute of limitations for trademark infringement actions. *See Pinkette Clothing, Inc. v. Cosmetic Warriors Ltd.*, 894 F.3d 1015, 1025 (9th Cir. 2018). The Ninth Circuit then balances six factors "to determine whether the trademark owner's delay in filing suit was unreasonable and, therefore barred: (1) strength and value of the trademark rights asserted; (2) plaintiff's diligence in enforcing mark; (3) harm to senior user if relief is denied; (4) good faith ignorance by junior user; (5) competition between senior and junior users; and (6) extent of harm suffered by the junior user because of senior user's delay." *Tillamook Country Smoker, Inc.*, 465 F.3d at 1108.

- Affirmative Defense 12: Dropbox must show that Ironhawk's losses, if any, could have been avoided through reasonable efforts. *See Binder v. Disability Grp., Inc.*, 772 F. Supp. 2d 1172, 1184 (C.D. Cal. 2011) (citing *Thrifty-Tel, Inc. v. Bezenek, 46 Cal. App.* 4th 1559, 1568 (1996)).

(c) In brief, the key evidence Defendant relies on for each counterclaim and affirmative defense is:

**Counterclaim 1:**

- Dropbox will rebut Ironhawk's Lanham Act claim with the evidence below:

- Evidence, including e-mails, correspondence, documents, and testimony showing that "SMARTSYNC" is descriptive or suggestive of Ironhawk's product, which makes it weaker than a mark that is fictitious, fanciful, or arbitrary.

- Evidence, including e-mails, correspondence, documents, and testimony showing that the field is crowded with other uses of,

and trademark applications for, "smart sync," or close variations, and that many other software companies use "smart sync" for products and services that perform syncing.

- Professor Michel Tuam Pham's expert testimony that Ironhawk's SMARTSYNC is a weak mark and that multiple marketplace factors make it unlikely that Dropbox's Smart Sync feature name will cause confusion.

- Douglas Huffman's expert testimony rebutting Ironhawk witness Jessie Stricchiola's testimony concerning the online presence of Dropbox's Smart Sync feature name.

- Evidence, including e-mails, correspondence, documents, and testimony showing the USPTO has disclaimed a number of uses of the words "smart" and "sync" in trademark applications or registrations that include these words for software-related goods or services.

- Evidence, including e-mails, correspondence, documents, and testimony showing Ironhawk's SMARTSYNC product is integrated into other companies' products and is not visible to the end user.

- Evidence, including e-mails, correspondence, documents, and testimony showing Ironhawk currently has only two paying customers and has had a very limited number of past customers.

- Evidence, including e-mails, correspondence, documents, and testimony showing Ironhawk conducts virtually no advertising.

- Evidence, including e-mails, correspondence, documents, and testimony showing Ironhawk and Dropbox serve distinct customer bases.

- Evidence, including e-mails, correspondence, documents, and testimony showing Ironhawk's SMARTSYNC product and Dropbox's Smart Sync feature are different in functionality and serve different purposes.

- Evidence, including e-mails, correspondence, documents, and testimony showing Ironhawk's product must be customized for a particular use, while Dropbox's feature is ready "off-the-shelf."

- Evidence, including e-mails, correspondence, documents, and testimony showing Ironhawk and Dropbox are not regarded as competitors, including by one of Ironhawk's only current customers, the United States Navy.

- Evidence, including e-mails, correspondence, documents, and testimony showing there is no evidence that Ironhawk's SMARTSYNC and Dropbox's Smart Sync have ever been promoted or sold together.

- Evidence, including e-mails, correspondence, documents, and testimony showing Dropbox's Smart Sync feature name is not similar to Ironhawk's mark because it appears in proximity to the "DROPBOX" word mark or Dropbox logo when displayed on Dropbox's website and marketing.

- Evidence, including e-mails, correspondence, documents, and testimony showing Ironhawk likewise brands its SMARTSYNC product in close proximity to its house mark, IRONHAWK, or to the company name, "Ironhawk Technologies," in marketing materials and on its website.

- Evidence, including e-mails, correspondence, documents, and testimony showing Dropbox has never encountered confusion between its Smart Sync feature and Ironhawk's SMARTSYNC product.

- Evidence, including e-mails, correspondence, documents, and testimony showing Ironhawk's CEO David Gomes has fabricated evidence of confusion by ghostwriting emails describing purported confusion between "smart sync" marks used by Salesforce, Dropbox, and unspecified others that biased third-party recipients—two Ironhawk business partners and an Ironhawk sales agent—then resent to him.

- Dr. Hal Poret's expert testimony about a forward confusion survey he conducted that found no evidence of confusion between Ironhawk's mark and Dropbox's feature name.

- Evidence, including e-mails, correspondence, documents, and testimony showing there is no overlap between the parties' marketing channels.

- Evidence, including e-mails, correspondence, documents, and testimony showing Ironhawk primarily sells its product to the military in contracts secured through a lengthy bidding process, and markets through word of mouth and military industry trade shows.

- Evidence, including e-mails, correspondence, documents, and testimony showing Ironhawk has never acquired a customer through its website, its SMARTSYNC product cannot be purchased on the Internet, and it has never paid to advertise its product on the Internet.

- Evidence, including e-mails, correspondence, documents, and testimony showing Dropbox's marketing and sales take place overwhelmingly on the Internet, and that the vast majority of its customers purchased services at Dropbox's website. In addition, Dropbox pays for Internet search advertising that targets ordinary customers who, unlike the government or military, shop for products and services on the Internet.

- Evidence, including e-mails, correspondence, documents, and testimony showing Ironhawk's customers are primarily the military and other government agencies who are able to distinguish Ironhawk and Dropbox. These government agencies employ highly-trained contracting officers who are required by law to adhere to strict bidding and procurement processes before making purchase decisions.

- Evidence, including e-mails, correspondence, documents, and testimony showing no customer purchased Ironhawk's product with the belief that it was Dropbox's, or purchased Dropbox's service feature with the belief that it was Ironhawk's.

- Evidence, including e-mails, correspondence, documents, and testimony showing Dropbox's customers are consumers and businesses who are sophisticated enough to recognize that Ironhawk's product is not the same as Dropbox's feature, which is designed for everyday file storage and organization.

- Evidence, including e-mails, correspondence, documents, and testimony showing a typical Ironhawk sale is priced in the tens of thousands of dollars. Dropbox's subscription packages including

the Smart Sync feature can be purchased on a monthly or annual basis. Monthly subscription fees per user range from approximately $9.99 to $20. Annual subscription fees per user range from approximately $120 to $240 per year.

- Evidence, including e-mails, correspondence, documents, and testimony showing Dropbox did not intend to create an association or confusion with Ironhawk, to capitalize on its mark, or to push it out of the market.

- Evidence, including e-mails, correspondence, documents, and testimony showing Dropbox's Naming Team employees who came up with the name "Smart Sync" were unaware of both Ironhawk and Ironhawk's SMARTSYNC product when they chose the name.

- Evidence, including e-mails, correspondence, documents, and testimony showing Ironhawk does not provide any evidence that its highly specialized, niche government contracting market overlaps with Dropbox's market of daily-use technology solutions for businesses and consumers.

- Evidence, including e-mails, correspondence, documents, and testimony showing Ironhawk and Dropbox do not compete with respect to any of their product or service offerings.

- Evidence, including e-mails, correspondence, documents, and testimony showing Ironhawk does not provide any evidence that its SMARTSYNC mark has any goodwill or reputation outside its handful of customers within the military.

- Evidence, including e-mails, correspondence, documents, and testimony showing Dropbox reasonably relied on the advice of counsel.

- Evidence, including e-mails, correspondence, documents, and testimony showing Dropbox counsel's advice was competent.

- Antonio Sarabia's expert testimony rebutting Ironhawk witness Daniel Cislo's testimony about Ironhawk's trademark registration and Dropbox's naming and trademark clearance process.

- Evidence, including e-mails, correspondence, documents, and

- testimony showing Ironhawk does not intend to expand its product line to compete with Dropbox's cloud storage services, and its "current efforts" to pursue business deals with commercial customers are fictitious or speculative. Nor has Ironhawk been successful in selling to commercial customers in the past.

- Evidence, including e-mails, correspondence, documents, and testimony showing Ironhawk has provided no evidence that Dropbox intends to seek the necessary approvals to sell to the military.

- Dr. Patrick Kennedy's expert testimony rebutting Ironhawk witness Dr. Robert Wunderlich's testimony concerning the reasonable royalty and amount of disgorged profits Ironhawk seeks as compensation.

Affirmative Defense 1 (Failure to State a Claim):

- Dropbox reincorporates the evidence it will use to rebut Ironhawk's Lanham Act claim, and specifically the below:

- Evidence, including e-mails, correspondence, documents, and testimony showing Ironhawk and Dropbox are not existing or past competitors.

- Evidence, including e-mails, correspondence, documents, and testimony showing Dropbox did not intent to confuse customers as to the source of its service feature.

- Evidence, including e-mails, correspondence, documents, and testimony showing Dropbox has greater brand recognition and goodwill among its distinct customer base, and any customer confusion between Dropbox's feature and Ironhawk's product would have harmed Dropbox, not Ironhawk.

- Evidence, including e-mails, correspondence, documents, and testimony showing Ironhawk has not suffered any lost profits as a result of Dropbox's use of the "Smart Sync" phrase.

Affirmative Defense 2 (Fair Use):

- Dropbox reincorporates the evidence it will use to rebut Ironhawk's Lanham Act Claim, plus the below:

- Evidence, including e-mails, correspondence, documents, and testimony showing Dropbox did not use "smart sync" as a trademark. Dropbox Smart Sync cannot be purchased on its own; it is provided as one feature of many under the banner of a Dropbox subscription package. The source of the Dropbox Smart Sync feature is indicated by prominent use of the DROPBOX trademark and logo in Dropbox's marketing materials and on its website, where Dropbox's subscription packages are sold.

- Evidence, including e-mails, correspondence, documents, and testimony showing that the "Smart Sync" name is used to distinguish Dropbox service features from each other, not to distinguish a Dropbox service from a third-party product.

- Evidence, including e-mails, correspondence, documents, and testimony showing Dropbox uses "Smart Sync" to describe the feature's function and benefits.

Affirmative Defense 3 (Unclean Hands):

- Dropbox reincorporates the evidence it will use to rebut Ironhawk's Lanham Act Claim, and specifically the evidence relating to Gomes's fabricated evidence of confusion.

- Dropbox will also present the following key evidence:

- Evidence, including e-mails, correspondence, documents, and testimony showing Ironhawk's conduct in pursuing its claims against Dropbox is in bad faith and it would be inequitable to permit Ironhawk to recover.

Affirmative Defense 5 (Laches):

- Dropbox reincorporates the evidence it will use to rebut Ironhawk's Lanham Act Claim, and specifically the evidence relating to:

  o the weakness of Ironhawk's mark;

  o the *Sleekcraft* intent factor;

  o Ironhawk's failure to pursue claims against other companies that use "smart sync" or a close variation thereof;

  o the fact that Ironhawk and Dropbox are not existing or past competitors.

- Dropbox will also present the following key evidence:

  - Evidence, including e-mails, correspondence, documents, and testimony showing Ironhawk did not diligently enforce its mark, instead allowing other companies' use of "smart sync" or a close variation thereof to go unchallenged.

  - Evidence, including e-mails, correspondence, documents, and testimony showing Ironhawk will not be harmed if relief is denied because there is no confusion or risk of confusion between Ironhawk's SMARTSYNC and Dropbox's use of the "Smart Sync" phrase.

  - Evidence, including e-mails, correspondence, documents, and testimony showing Ironhawk became aware of Dropbox's Smart Sync feature by the beginning of 2017. Ironhawk did not send a cease and desist letter to Dropbox, or request that Dropbox stop using Smart Sync, prior to filing this lawsuit.

  - Evidence, including e-mails, correspondence, documents, and testimony showing Ironhawk waited to file this lawsuit until February 23, 2018.

  - Evidence, including e-mails, correspondence, documents, and testimony showing Dropbox has been harmed by Ironhawk's delay in pursuing these claims.

Affirmative Defense 12 (Failure to Mitigate):

- The key evidence that Dropbox will introduce in support of Affirmative Defense 5 is the same as the evidence it will introduce in support of Affirmative Defense 12.

8. In view of the admitted facts and the elements required to establish the claims, counterclaims and affirmative defenses, the following issues remain to be tried: (1) Whether Dropbox is liable for trademark infringement under the federal Lanham Act or for unfair competition under California common law; (2) whether Dropbox's affirmative defenses are meritorious; (3) whether Ironhawk is entitled to a reasonable royalty as actual damages for any infringement by Dropbox, and if so, in what amount; (4) whether any infringement by Dropbox was willful; (5) whether

Ironhawk is entitled to a disgorgement of Dropbox's profits, and if so, in what amount; (6) whether Ironhawk is entitled to punitive damages, and if so, in what amount; (7) whether Ironhawk is entitled to injunctive relief against further use of "Smart Sync" by Dropbox; (8) whether Ironhawk is entitled to recover its attorneys' fees and costs; (9) whether Dropbox is entitled to recover its attorneys' fees and costs.

    9.    All discovery is complete.

    10.    All disclosures under Fed. R. Civ. P. 26(a)(3) have been made.

The joint exhibit list of the parties has been filed under separate cover as required by L.R. 16-6.1. The parties have since amended the Joint Exhibit List, and shall use the amended Joint Exhibit List at trial. Unless all parties agree that an exhibit shall be withdrawn, all exhibits will be admitted without objection at trial, except those exhibits listed below:

Ironhawk objects to the admission of all exhibits referenced in its Motions *in Limine* Nos. 1-5. Ironhawk further incorporates its objections to certain exhibits contained on the Joint Exhibit List as set forth in Exhibit A.

Dropbox objects to the admission of all exhibits that it is seeking to exclude in its Motions *in Limine* Nos. 1–5. Dropbox further incorporates its objections to certain exhibits contained on the Joint Exhibit List as set forth in Exhibit B.

    11.    Witness lists of the parties have been filed with the Court.

Only the witnesses identified in the lists will be permitted to testify (other than solely for impeachment).

Each party intending to present evidence by way of deposition testimony has marked such depositions in accordance with L.R. 16-2.7.

For this purpose, the following depositions shall be lodged with the Clerk by Ironhawk as required by L.R. 32-1: Patrick Rowell, Jason Lyman, Lan Xuezhao, Bradford Lightcap, Susan T. Indermill, Prof. Michel Tuan Pham, Dr. Hal Poret, David B. Peyton, and David B. Peyton (Salesforce Case).

1  For this purpose, the following depositions shall be lodged with the Clerk by
2  Dropbox as required by L.R. 32-1: Patrick Rowell, Jason Lyman, Sheila Vashee,
3  Bradley Hirou, Susan Indermill, Susan Indermill (Salesforce Litigation), and David
4  Peyton.

5  Ironhawk objects to the presentation of testimony by deposition of the
6  following witnesses: Nina Han, Oliver Jay, Douglas Stanley, Sheila Vashee, and
7  Bradley Hirou.

8  Dropbox objects to the presentation of testimony by deposition, in full or in
9  part, of the following witnesses, including on the ground that certain of these
10 witnesses will be present at trial: Bradford Lightcap, David B. Peyton (Dropbox),
11 David B. Peyton (Salesforce Case), Dr. Hal Poret, Jason Lyman, Prof. Michel Tuan
12 Pham, Patrick Rowell, Susan T. Indermill.

13      12.  The following law and motion matters and motions in limine, and no
14 others, are pending or contemplated:

- Dropbox's Motion for Summary Judgment, Dkt. No. 91
- Ironhawk's Motion for Partial Summary Judgment, Dkt. No. 89.
- Dropbox's Motion to Preclude Testimony from Plaintiff's Expert Witness Robert Wunderlich, Dkt. No. 85.
- Dropbox's Motion to Preclude Testimony from Plaintiff's Trademark Law Expert Witness Daniel M. Cislo, Dkt. No. 84.
- Ironhawk's Motions in Limine Nos. 1-5, Dkt. Nos. 180-183.
- Dropbox's Motions in Limine Nos. 1-5, Dkt. Nos. 190-194.

13.  Bifurcation of the following issues for trial is ordered.

Ironhawk's position: None.

Dropbox's position: Profit disgorgement under the Lanham Act is an equitable remedy to be decided by the Court after trial if the jury finds that Dropbox is liable for trademark infringement and that such infringement was willful. Likewise, Dropbox's equitable affirmative defenses (fair use, unclean hands, and laches),

Ironhawk's request for injunctive relief, and the parties' requests for attorneys' fees and costs, will be taken up, if at all, after trial. These positions are also reflected in Dropbox's Motion in Limine No. 3 (Dkt. No. 189-5), Memorandum of Contentions of Fact and Law (Dkt. No. 189-11), and Proposed Jury Instructions.

14.  The foregoing admissions having been made by the parties, and the parties having specified the foregoing issues remaining to be litigated, this Final Pretrial Conference Order shall supersede the pleadings and govern the course of the trial of this cause, unless modified to prevent manifest injustice.

Dated: _____

_____
Honorable Dean D. Pregerson
Judge United States District Court

Approved as to form and content:

  */s/ Matthew L. Venezia*
Attorney for Plaintiff

  */s/ Clara J. Shin*
Attorney for Defendant

**FILER'S ATTESTATION**

I, Clara J. Shin, am the ECF user whose identification and password are being used to file this [PROPOSED] FINAL PRETRIAL CONFERENCE ORDER. Pursuant to Civil Local Rule 5-4.3.4(a)(2)(i), I hereby attest that the above–named signatories concur in this filing.

Dated: September 30, 2019        COVINGTON & BURLING LLP

By: */s/ Clara J. Shin*
   Clara J. Shin

   Attorneys for Defendant-Counterclaimant
   DROPBOX, INC.