O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| IRONHAWK TECHNOLOGIES, INC., | ) | Case No. CV 18-01481 DDP (JEMx) |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER GRANTING DEFENDANT'S MOTION** |
| | ) | **FOR SUMMARY JUDGMENT** |
| DROPBOX, INC., | ) | |
| | ) | |
| Defendants. | ) | [Dkt 91] |
| | ) | |

Presently before the court is Defendant Dropbox, Inc.
("Dropbox")'s Motion for Summary Judgment.  Having considered the
submissions of the parties and heard oral argument, the court
grants the motion and adopts the following Order.

**I.    Background**

Plaintiff Ironhawk Technologies, Inc., ("Ironhawk") developed
software that uses compression and replication to transfer data
efficiently in "bandwidth-challenged environments."  (Declaration
of David Gomes in Support of Opposition, ¶¶ 2-3.)  Since 2004,
Ironhawk has marketed this software under the name "SmartSync."
(Id. ¶ 5.)  Ironhawk obtained a trademark registration for
SmartSync in 2007.  (Id. ¶ 7.)

Dropbox provides cloud-based file storage and synchronization services that allow users to access files from anywhere on any device. (Declaration of Genevieve Sheehan, ¶ 2.) In 2017, Dropbox launched a feature it dubbed "Smart Sync." (Id. ¶ 3.) Dropbox's Smart Sync feature allows users to choose whether files are stored locally or, in the interest of saving hard drive space, online only. (Id. ¶ 3.) Dropbox's Smart Sync is not a stand-alone product, but rather a feature of certain paid prescription plans. (Id. ¶ 4.)

Ironhawk's Complaint alleges that Dropbox's use of the name "Smart Sync" intentionally infringes upon Ironhawk's "SmartSync" trademark, is likely to cause confusion among consumers as to the affiliation of Dropbox's product with Ironhawk, and has actually confused Ironhawk's customers as to the relationship between Ironhawk and Dropbox's product. (Complaint ¶¶ 38, 40-41.) Dropbox now moves for summary judgment.

## II. Legal Standard

Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). All reasonable inferences from the evidence must be drawn in favor of the nonmoving party. See

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 242 (1986). If the moving party does not bear the burden of proof at trial, it is entitled to summary judgment if it can demonstrate that "there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 323.

Once the moving party meets its burden, the burden shifts to the nonmoving party opposing the motion, who must "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. Summary judgment is warranted if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. A genuine issue exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and material facts are those "that might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. There is no genuine issue of fact "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

It is not the court's task "to scour the record in search of a genuine issue of triable fact." *Keenan v. Allan*, 91 F.3d 1275, 1278 (9th Cir. 1996). Counsel have an obligation to lay out their support clearly. *Carmen v. San Francisco Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001). The court "need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposition papers with adequate references so that it could conveniently be found." *Id.*

3

**III. Discussion**

    A.    Likelihood of Confusion

    A plaintiff alleging trademark infringement must demonstrate (1) an ownership interest in a mark and (2) that the defendant's use of the mark is likely to cause consumer confusion. <u>Dep't of Parks and Recreation v. Bazaar Del Mundo, Inc.</u>, 448 F.3d 1118, 1124 (9th Cir. 2006). "The core element of trademark infringement is the likelihood of confusion, i.e., whether the similarity of the marks is likely to confuse customers about the source of the products." <u>Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.</u>, 174 F.3d 1036, 1053 (9th Cir. 1999). Likelihood of confusion may turn on factors including, but not limited to, the strength of the mark, the similarity of the marks, the relatedness of the parties' products, marketing channels used, the degree of care consumers are likely to use in purchasing goods, the defendant's intent in selecting its mark, evidence of actual confusion, and the likelihood of expansion in product lines (collectively, the "<u>Sleekcraft</u> factors"). <u>Id.</u> at 1053-54 (citing <u>AMF Inc. v. Sleekcraft Boats</u>, 599 F.2d 341, 348-49 (9th Cir. 1979).

    1.    Strength of Ironhawk's SmartSync mark

    a.    Conceptual Strength

    The level of protection afforded to a particular trademark is dependent upon the mark's conceptual and commercial strength, with stronger marks receiving more protection. <u>JL Beverage Co., LLC v. Jim Beam Brands Co.</u>, 828 F.3d 1098, 1107 (9th Cir. 2016). The spectrum of strength, and concomitant trademark protection, ranges from generic marks, at the very low end, through descriptive, suggestive, fanciful, and, at the high end, arbitrary marks. <u>Id.</u>

4

Arbitrary and fanciful marks have no obvious connection to the related products, and are thus deserving of the highest degree of protection.  Surfvivor Media, Inc., v. Survivor Productions, 406 F.3d 625, 631-32 (9th Cir. 2005).  Generic and descriptive marks do no more than define a product, either in whole or in part, and are therefore entitled to no trademark protection.  Id. at 632. Suggestive marks, which require some "mental leap" from the mark to the product in question, enjoy some trademark protection, but are presumptively weak.  Brookfield, 174 F.3d at 1058.  A "mental leap" that is "almost instantaneous," however, is indicative of descriptiveness rather than suggestiveness.  Self-Realization Fellowship Church v. Ananda Church of Self-Realization, 59 F.3d 902, 911 (9th Cir. 1995).  A suggestive mark may nevertheless warrant protection "if the infringing mark is quite similar and the goods or services [the two marks] connote are closely related." Nutri/Sys., Inc. v. Con-Stan Indus., Inc., 809 F.2d 601, 605 (9th Cir. 1987).

Here, Ironhawk's "SmartSync" mark appears to be descriptive. "Descriptive marks define qualities or characteristics of a product in a straightforward way that requires no exercise of the imagination to be understood."  Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery, 150 F.3d 1042, 1047 n.8 (9th Cir. 1998); see also Brookfield, 174 F.3d at 1058, n.19 ("Descriptive terms directly describe the quality or features of the product."). Ironhawk's CEO and person most knowledgeable testified that Ironhawk's SmartSync software performs "synchronization, replication, and distribution" of data, and that it does so in a "bandwidth-efficient" manner "by intelligently meeting three

fundamental capabilities . . . .: [t]ransport, content repository, (sync implied) [sic] and compression." (Ray Decl., Ex. 4 at 138; Ex. 7 at 157-58.) The term "SmartSync," therefore, appears to describe at least some of the characteristics of Ironhawk's product, namely synchronization and "intelligent" transport, compression, and synchronization. Accordingly, Ironhawk's mark is entitled to no protection.[1]

Even if Ironhawk's Smartsync mark were suggestive rather than descriptive, the mark would still be weak.[2] A suggestive mark is presumptively weak. Brookfield, 174 F.3d at 1058. Ironhawk attempts to rebut this presumption with evidence that, according to Ironhawk, demonstrates that the SmartSync mark "enjoys commercial strength at the very least within its historical niche market of United States military software." (Opp. at 13:16-17.) Indeed, commercial strength, or actual marketplace recognition, may transform an otherwise weak suggestive mark into a strong mark. JL Beverage, 828 F.3d at 1107. Ironhawk has not, however, put forth

---

[1] Even descriptive marks may be protectable if they have acquired "secondary meaning," such that consumers begin to associate the mark with a single source. See, e.g. Filipino Yellow Pages, Inc. v. Asian Journal Publications, Inc., 198 F.3d 1143, 1147 (9th Cir. 1999). Here, however, there appears to be no dispute that Ironhawk's mark has not gained secondary meaning in the minds of consumers.

[2] A trier of fact could, perhaps, conclude that the isolated term "smart," even to the extent it refers to "intelligent" features of Ironhawk's product, is nevertheless sufficiently vague to require a "mental leap" to Ironhawk's software. Indeed, Dropbox itself has submitted evidence that the term "Smart Sync" is used with reference to a wide variety of products, including non-technological applications such as skin cream, and the word is commonly used in connection with products ranging from automobiles to audio speakers. (Ray Decl., Ex 8 at 88.) Marks must, however, be considered in their entirety. Nutri/System Inc., 809 F.2d at 605. The evidence that Ironhawk's SmartSync software synchronizes data is unavoidable.

any evidence of such recognition within the market (niche or otherwise) for military software. Evidence of Ironhawk's total aggregate revenue over a 15-year period, for example, does little to establish market visibility in the absence of any evidence of the size of the market or Ironhawk's share of the market. See, e.g., Aurora World, Inc. v. Ty Inc., 719 F. Supp. 2d 1115, 1159 (C.D. Cal. 2009); c.f. Troy Healthcare, LLC v. Nutraceutical Corp., No. C11-844-RSM, 2011 WL 13127843, at *8 (W.D. Wash. June 6, 2011). Nor could a reasonable finder of fact conclude that Ironhawk's SmartSync is recognized in the marketplace based upon Ironhawk's CEO's vague references to "countless face to face meetings with United States military officials and trade shows," "countless hours of sweat equity," the "development of a website [and] employment of salespeople," of whom only two are named, including the CEO himself, and a marketing budget that averages only $16,000 per year. (Gomes Decl. ¶ 9. ) Because Ironhawk has put forth no evidentiary basis sufficient to rebut a presumption of weakness, Ironhawk's SmartSync mark warrants little to no trademark protection.

b.    Conceptual Strength of Dropbox's Smart Sync name

Ironhawk has alleged both forward and reverse confusion theories of trademark infringement. In reverse confusion cases, a junior user's infringing use of a mark may mislead the senior user's customers into believing they are doing business with the junior user. See JL Beverage, 828 F.3d at 1107. Although palming off is not the concern in a reverse confusion case, the less well-known senior user may nevertheless lose its goodwill when an

infringing junior user saturates the market.  <u>M2 Software, Inc. v.</u>

<u>Madacy Entm't</u>, 421 F.3d 1073, 1089 (9th Cir. 2005) (citing

<u>Dreamwerks Prod. Grp., Inc. v. SKG Studio</u>, 142 F.3d 1127, 1130 n.5

(9th Cir. 1998).)  Whether a junior user has, in fact, saturated

the market will depend on the commercial strength of the alleged

infringer's use of a mark in comparison to the conceptual strength

of the senior user's mark.

<u>JL Beverage Co.</u>, 828 F.3d at 1107; <u>Moose Creek, Inc. v. Abercrombie</u>

<u>& Fitch Co.</u>, 331 F. Supp. 2d 1214, 1224 (C.D. Cal. 2004) (citing

<u>Glow Indus., Inc. v. Lopez</u>, 252 F.Supp.2d 962, 987 n. 112 (C.D.Cal.

2002).  Of course, where a mark is conceptually weak, it is less

likely that consumers will associate it with any source, even a

commercially strong junior user.  <u>See</u>, <u>e.g.</u>, <u>Glow Indus.</u>, 252

F.Supp.2d at 292.  Thus, "[a]bsent a conceptually strong senior

mark, the reverse confusion plaintiff will be unable to establish a

likelihood of confusion, even if the junior user's commercial

strength is likely to overwhelm the plaintiff in the marketplace."

<u>Instant Media, Inc. v. Microsoft Corp.</u>, No. C 07-02639 SBA, 2007 WL

2318948, at *12 (N.D. Cal. Aug. 13, 2007).

Here, as discussed above, Ironhawk's SmartSync mark is

conceptually weak.  The commercial strength of Dropbox's Smart Sync

name is, therefore, of little import.  Furthermore, a reasonable

jury could not conclude that Dropbox has flooded the marketplace

with the term "Smart Sync," such that consumers associate that term

or mark with Dropbox.  Although Ironhawk points to evidence that

Dropbox allocates $7,000 per month to Google keyword advertising

related to "Smart Sync," there is no evidentiary support for

Ironhawk's assertion that Dropbox's effort "has resulted in a

strong association between Dropbox and 'Smart Sync.'"[3] (Opp. at 14:3-4.)

Because Ironhawk's SmartSync mark is conceptually weak, and for the additional reason that there is no evidence that Dropbox's use of "Smart Sync" is commercially strong, the strength factor weighs heavily against a likelihood of confusion.

### 2. Similarity of the Parties' Products

The less similar the parties' products, the less likely it is that consumers will confuse the parties' marks. Dropbox has produced evidence that its Smart Sync product is designed to help users conserve computer hard drive space by allowing files to be stored solely online. Dropbox markets its product to individuals and businesses. Ironhawk's SmartSync, in contrast, "allow[s] for efficient data transfer by using compression and replication" in "limited bandwidth environments." (Gomes Decl. ¶¶ 2-3.) It is undisputed that the United States Navy is the only user of Ironhawk's product. Nevertheless, Ironhawk argues that the parties' products are similar because "both Dropbox's and Ironhawk's data management software facilitate access to files by multiple users in multiple locations." (Opp. at 17:4-5.) Ironhawk cannot establish meaningful similarity at such a high level of abstraction. Indeed, ZIP files, USB drives, e-mail attachments, and a plethora of other products "facilitate access to files by multiple users in multiple locations," but are hardly similar to

_____

[3] Ironhawk's attempt to use Dropbox's expert reports to establish an association in consumers' minds between "Smart Sync" and Dropbox is not sufficient to establish a triable issue where those experts did not examine the term in isolation, but rather alongside references to Dropbox.

either product at issue here. The mere fact that both products deal in some manner with the transfer of electronic data is not enough to render the products similar for purposes of a trademark analysis.  The dissimilarity of the parties' products weighs against a likelihood of confusion.

### 3.    Similarity of the Marks

There can be no dispute that Dropbox's "Smart Sync" feature bears a name almost identical to Ironhawk's "SmartSync" product. Notwithstanding the close proximity of the two marks, however, "their similarity must be considered in light of the way the marks are encountered in the marketplace and the circumstances surrounding the purchase . . . ."  Lindy Pen Co. v. Bic Pen Corp., 725 F.2d 1240, 1245 (9th Cir. 1984).  Dropbox argues that its "Smart Sync" feature name is only "superficially' similar to Ironhawk's "SmartSync" mark because neither Dropbox nor Ironhawk uses its respective mark in isolation.  Rather, each party consistently includes its business name or house mark alongside its version of the disputed mark.

Dropbox looks to Cohn v. Petsmart, Inc., 281 F.3d 837 (9th Cir. 2002) to support its argument.  In Cohn, a pet supply store called Petsmart and a veterinary clinic called the Critter Clinic both used the trademarked tagline, "Where pets are family."  Cohn, 281 F.3d at 837.  As here, neither party used the tagline in isolation, and both always placed their respective business names before the trademarked term.  In determining that there was no likelihood of confusion, the Ninth Circuit observed that the two users "present[ed] distinct commercial identities by placing their greatest emphasis on their unique business names."  Cohn v.

10

Petsmart, Inc., 281 F.3d 837, 843 (9th Cir. 2002). The court

further stated that "[t]he emphasis on [the parties' respective]

housemarks has the potential to reduce or eliminate likelihood of

confusion." Id. at 842 (internal quotation marks omitted) (citing

Norm Thompson Outfitters, Inc. v. Gen. Motors Corp., 448 F.2d 1293,

1298 (9th Cir. 1971).

The same logic applies here. Although the trademarked term is

not a slogan or tagline, as in Cohn or Norm Thompson Outfitters,

the names of the parties "invariably accompan[y]" the marks. Norm

Thompson Outfitters, 448 F.2d at 1298. Indeed, Dropbox's Smart

Sync is not a freestanding offering, and the term is only

encountered in the marketplace in conjunction with the Dropbox

products of which it is a component part. Accordingly, the

similarity of the marks factor weighs against likelihood of

confusion.

4. Actual Confusion

"Evidence that use of the two marks has already led to

confusion is persuasive proof that future confusion is likely."

Sleekcraft, 599 F.2d at 352. Dropbox argues that Ironhawk has

produced no evidence of actual confusion.[4] As an initial matter,

the Ninth Circuit has rejected Dropbox's argument that evidence of

confusion must come from "purchasing consumers." In Rearden LLC v.

Rearden Commerce, Inc., the court explained that courts must take

"relevant non-consumer confusion" into account. Rearden, 683 F.3d

---

[4] Dropbox also cites to its own expert's opinion to support
the argument that there is no confusion. In light of Ironhawk's
criticisms of the validity of that study, however, the survey issue
would be better suited to a separate motion or to determination by
a trier of fact.

1190, 1213 (9th Cir. 2012). Although the focus of a trademark

analysis is indeed the likelihood of confusion among actual

consumers, non-consumer confusion may be relevant where it could

> (1) turn into actual consumer confusion (i.e., potential consumers); (2) serve as an adequate proxy or substitute for evidence of actual consumer confusion (i.e., non-consumers whose confusion could create an inference of consumer confusion); or (3) otherwise contribute to confusion on the part of the consumers themselves (i.e., non-consumers whose confusion could influence consumer perceptions and decision-making).

Rearden, 683 F.3d at 1216.

Here, Ironhawk references e-mails from two of its resellers

expressing some degree of concern about the possibility of

confusion. It is undisputed that Ironhawk's CEO drafted both e-

mails, which the re-sellers then sent back to Ironhawk. Although

Dropbox suggests that no jury could credit those messages because

they were not independently drafted, Ironhawk has introduced

evidence that its CEO drafted the messages at the re-sellers'

request. In any event, however, both re-sellers later testified

that they were unaware of any instances of consumer confusion

between Dropbox's Smart Sync feature and Ironhawk's SmartSync

software. Accordingly, the evidence of actual confusion factor

weighs against likelihood of confusion or is, at best, neutral.

### 5. Marketing Channels

Dropbox argues that the parties' disparate marketing efforts

also weigh against a likelihood of confusion. Dropbox markets via

the internet to customers who self-register on Dropbox's website,

while Ironhawk attends military trade shows and obtains contracts

through military bidding processes. Ironhawk responds that both

parties "utilize sales people" and "maintain websites," and thus

the marketing channels are the same.  (Opp. at 20:26-27, 21:2-3.)
Ironhawk's arguments fail.  "Today, it would be the rare commercial
retailer that did not advertise online, and the shared use of a
ubiquitous marketing channel does not shed much light on the
likelihood of consumer confusion."  Network Automation, Inc. v.
Advanced Sys. Concepts, Inc., 638 F.3d 1137, 1151 (9th Cir. 2011).
Nor could any reasonable trier of fact rely upon the mere fact that
both parties employ a sales staff to conclude that the parties'
similar marketing channels increase the chance of confusion.  This
factor weighs against such a likelihood.

        6.    Sophistication of Consumers

     It is undisputed that the only user of Ironhawk's product is
the United States Navy, and that it takes years for the Navy to
approve Ironhawk's proposals, and only then after numerous meetings
with technical crews.  It is also undisputed that some of
Ironhawk's SmartSync licenses cost thousands and tens of thousands
of dollars.  Although the cost of Dropbox services is much more
modest, the high degree of care exercised by the Navy, particularly
for such expensive products as Ironhawk SmartSync licenses, weighs
heavily against likelihood of confusion.

        7.    Intent

     It is undisputed that Dropbox was not aware of Ironhawk when
the former chose the name Smart Sync.  Nor is it disputed that
Dropbox and its trademark counsel were aware of Ironhawk and its
SmartSync product by the time Dropbox launched its Smart Sync
feature.  There is no evidence, however, that in going forward with
the feature under the name Smart Sync, Dropbox had any intention of
capitalizing on Ironhawk's goodwill.  See M2 Software, Inc. v.

Madacy Entm't, 421 F.3d 1073, 1085 (9th Cir. 2005) (finding no evidence of bad intent where alleged infringer had notice of similar mark but chose to proceed with independently-derived name in belief that use was non-infringing).

An intent analysis is slightly different in the reverse confusion context, where neither party seeks to capitalize on the goodwill of the other. Marketquest Grp., Inc. v. BIC Corp., 862 F.3d 927, 934 (9th Cir. 2017). In such a case, bad intent can "be shown by evidence that, for example, the defendant knew of the mark, should have known of the mark, intended to copy the plaintiff, failed to conduct a reasonably adequate trademark search, or otherwise culpably disregarded the risk of reverse confusion." Id. at 934-35. On this record, a jury could find improper intent with respect to reverse confusion. Thus, the intent factor weighs against likelihood of confusion on Ironhawk's forward confusion theory, but slightly in favor of likelihood of reverse confusion.

### 8. Expansion of Product Lines

"[A] 'strong possibility' that either party may expand his business to compete with the other will weigh in favor of finding that the present use is infringing." Sleekcraft, 599 F.2d at 354. It is undisputed that Dropbox has no intention to expand into the military market. Although Ironhawk is not currently used by any commercial customers, it did have a commercial customer in 2013. Ironhawk also argues that it plans to expand beyond the military market and re-enter the consumer market, and Ironhawk's CEO states that he has engaged in discussions with non-military clients regarding SmartSync. Given Ironhawk's lack of success in obtaining

14

non-military clients and the lack of detail regarding recent discussions, however, this court cannot conclude that Ironhawk has presented evidence of a "strong possibility" of expansion into the consumer market. The expansion factor is, therefore, neutral.

### 9. Balance of the <u>Sleekcraft</u> Factors

The overwhelming balance of the <u>Sleekcraft</u> factors weighs against a likelihood of confusion between Ironhawk's SmartSync mark and Dropbox's Smart Sync. Ironhawk's weak mark is entitled to little or no protection. Although the marks are similar, the consistent use of the parties' respective business names alongside the marks weighs against a likelihood of confusion. The parties' products are significantly different, and Ironhawk's sophisticated single user exercises a high degree of care in its SmartSync purchases. The lack of any evidence of actual confusion and the significant difference in the parties' marketing channels further weigh against a likelihood of confusion. Although the intent factor may weigh somewhat in favor of a likelihood of confusion in the reverse confusion context, it is not sufficient to offset the combined weight of the remaining factors, particularly in light of the conceptual weakness of the Ironhawk mark. On this record, a reasonable trier of fact could not conclude that Dropbox's use of Smart Sync is likely to cause consumer confusion. Ironhawk cannot, therefore, prevail on its infringement claims.

**IV. Conclusion**

For the reasons stated above, Dropbox's Motion for Summary Judgment is GRANTED.


IT IS SO ORDERED.

Dated:  10-24, 2019

DEAN D. PREGERSON
United States District Judge